STATE OF WISCONSIN          CIRCUIT COURT          WALWORTH COUNTY

RUDOLPH RAAB d/b/a RAAB INVESTMENTS and
R & W LODGING,
LIMITED LIABILITY COMPANY,

          Plaintiffs,

   v.

MICHAEL C. WENDEL, individually and d/b/a THE
WENDEL GROUP, INC., WENDEL COMPANIES,
LLC, WENDEL ENTERPRISES, LLC, WENDEL
INVESTMENTS, LLC, WENDEL HOSPITALITY,
LLC, WENDEL INVESTMENTS, INC., SAND
COMPANIES, INC., SAND HOSPITALITY, LLC, SCI        **Case No. 14-CV-657**
HOTELS, LLC and

MICHAEL C. WENDEL d/b/a WEST BEND
HOSPITALITY, INC.,
705 9th Street N
Sartell, MN 56377,

WEST BEND HOSPITALITY, INC.,
705 9th Street N
Sartell, MN 56377,

LEO M. SAND, individually and
d/b/a SAND HOSPITALITY, LLC, SAND
COMPANIES, INC., and SCI HOTELS, LLC
366 South 10th Avenue
Waite Park, MN 56387

SAND HOSPITALITY, LLC,
366 South 10th Avenue
Waite Park, MN 56387,

SAND COMPANIES, INC.,
366 South 10th Avenue
Waite Park, MN 56387,

and

SCI HOTELS, LLC,
366 South 10th Avenue
Waite Park, MN 56387,

          Defendants.

## FIRST AMENDED COMPLAINT

NOW COME the Plaintiffs, Rudolph Raab d/b/a Raab Investments and R & W Lodging, LLC, by their attorneys, DeWitt Ross & Stevens S.C., by Shawn M. Govern and Olivia M. Kelley, and for a First Amended Complaint against the Defendants, alleges as follows:

### PARTIES

1.      Rudolph Raab d/b/a Raab Investments ("Raab") is an individual Wisconsin resident doing business in Wisconsin as Raab Investments. Raab resides at S76 W13502 Fairfield Court, Muskego, WI 53150 and does business as Raab Investments at 1516 S. West Ave, Waukesha, WI 53189.

2.      R & W Lodging, LLC ("R&W") is a Wisconsin limited liability company organized effective March 9, 1998 by and between Raab and Wendel Investments, Inc., a Minnesota corporation that, subsequent to organizing R&W, has been administratively dissolved. R&W's initial and only Members to date are Raab and Wendel Investments, Inc. The Members formed R&W for the purpose of constructing and owning a hotel in East Troy, Wisconsin, located at 2921 O'Leary Lane, East Troy, Wisconsin 53120 ("Hotel"). Attached to this Complaint as **Exhibit A** and incorporated herein by reference is a true and correct of the R&W Operating Agreement.

3.      Upon information and belief, Defendant Michael C. Wendel ("Michael") is an individual Minnesota resident that has done or is currently doing business in Wisconsin, either as an individual or as one or more of the following entities: The Wendel Group, Inc., Wendel Investments, Inc., Wendel Companies, LLC, Wendel Enterprises, LLC, Wendel Investments,

2

LLC, West Bend Hospitality, Inc. and/or Wendel Hospitality, LLC (collectively, "Wendel Entities"), each of which is a Minnesota corporation or limited liability company, respectively. Upon information and belief, Michael is a director of The Wendel Group, Inc. and a director and shareholder of Sand Companies, Inc. Upon further information and belief, at all times material to this Complaint, Michael was the Chief Executive Officer of West Bend Hospitality, Inc. Upon further information and belief, Michael resides at 705 9th Street N, Sartell, MN 56377, and does business both from that address and from the Hotel, located at 2921 O'Leary Lane, East Troy, Wisconsin 53120.

4.     Upon information and belief, Defendant Wendel Investments, Inc. ("Wendel Investments") was a Minnesota corporation organized on or about May 15, 1998. Wendel Investments was a Member of R&W. Upon information and belief and according to the records published on the Minnesota Secretary of State Business and Lien System website, Wendel Investments was administratively dissolved on or about March 23, 2003. Upon further information and belief and according to the records published on the Wisconsin Department of Financial Institutions Corporate Records Search website, Wendel Investments has not registered to do business in Wisconsin.

5.     Upon information and belief, Defendant The Wendel Group Inc. ("WGI") is a Minnesota corporation, with a principal place of business located at 366 S. 10th Avenue, Waite Park, Minnesota 56387. WGI does or has done business in Wisconsin, including without limitation, entering into at least one Management Consulting Agreement, wherein WGI agreed to supervise and direct the management and operation of the Hotel. Attached to this Complaint as **Exhibit B** and incorporated herein by reference is a true and correct of the Management Consulting Agreement.

3

6. Upon information and belief, Defendant West Bend Hospitality, Inc. ("West Bend Hospitality") is a Minnesota corporation organized on or about June 25, 1996, with a principal place of business located at 705 9th Street N, Sartell, Minnesota 56377. Upon information and belief and according to the records published on the Minnesota Secretary of State Business and Lien System website, West Bend Hospitality's Chief Executive Officer is or was Michael Wendel. Upon further information and belief and according to the records published on the Minnesota Secretary of State Business and Lien System website, West Bend Hospitality filed a Dissolution – Business Corporation (Domestic) on or about December 5, 2007. Upon further information and belief and according to the records published on the Wisconsin Department of Financial Institutions Corporate Records Search website, West Bend Hospitality registered to do business in Wisconsin as a Foreign Business Corporation on January 7, 1998 and filed a withdrawal on November 8, 2007.

7. Upon information and belief, Defendant Leo Sand ("Leo") is an individual Minnesota resident that has done or is currently doing business in Wisconsin, either as an individual or as one or more of the following entities: Sand Hospitality LLC; Sand Companies Inc.; SCI Hotels, LLC (collectively, "Sand Entities"), each of which is a Minnesota corporation or limited liability company, respectively. Upon information and belief, Leo is a director, manager, or president of the Sand Entities. Upon further information and belief, Leo resides at and the Sand Entities' principal place of business is located at 366 South 10th Avenue, Waite Park, MN 56387.

8. Upon information and belief, Defendant Sand Hospitality, LLC ("Sand Hospitality") is a Minnesota limited liability company, with a principal place of business located at 366 S. 10th Avenue, Waite Park, Minnesota 56387, and a registered agent located at National

4

Registered Agents Inc., 8040 Excelsior Drive, Suite 200, Madison, Wisconsin 53717. Upon information and belief, Sand Hospitality does or has done business in Wisconsin, including but not limited to: receiving payments from R&W in 2007; engaging in management services for the Hotel since 2008; entering into a Hotel Management Agreement in 2012 wherein Sand Hospitality agreed to manage, supervise and oversee the operation and maintenance at the Hotel. Attached to this Complaint as **Exhibit C** and incorporated herein by reference is a true and correct of the Hotel Management Agreement dated January 1, 2012, executed by Sand Hospitality.

9. Upon information and belief, Defendant Sand Companies, Inc. ("Sand Companies") is a Minnesota corporation, with a principal place of business located at 366 S. 10th Avenue, Waite Park, Minnesota 56387, and a registered agent located at National Registered Agents Inc., 8040 Excelsior Drive, Suite 200, Madison, Wisconsin 53717. Upon information and belief, Sand Companies is an affiliate of Sand Hospitality or Sand Entities and does or has done business in Wisconsin, including but not limited to, employment of Hotel staff and receiving payment or reimbursement for providing employees to the Hotel.

10. Upon information and belief, Defendant SCI Hotels, LLC ("SCI") is a Minnesota limited liability company, with a principal place of business located at 366 S. 10th Avenue, Waite Park, Minnesota 56387, and a registered agent located at National Registered Agents Inc., 8040 Excelsior Drive, Suite 200, Madison, Wisconsin 53717. Upon information and belief, SCI's registered Manager in the state of Minnesota is Defendant Sand Companies. Upon information and belief, SCI is an affiliate of Sand Hospitality or Sand Entities and does or has done business in Wisconsin, including but not limited to, employment of Hotel staff and receiving payment or reimbursement for providing employees to the Hotel.

5

## FACTUAL ALLEGATIONS

### HOTEL OWNERSHIP AND MANAGEMENT; RELATED AGREEMENTS

11. On or about March 9, 1998, Raab and Wendel Investments formed and organized R&W.

12. Raab and Wendel Investments were the sole original Members of R&W.

13. R&W has not had any other members, other than Raab and Wendel Investments.

14. R&W was formed to purchase, construct and operate the Hotel.

15. Pursuant to the R&W Operating Agreement, dated September 16, 1998 (Exhibit A), Raab contributed eighty percent (80%) of the capital necessary to purchase, construct and operate the Hotel, and consequently retained an eighty percent (80%) interest in R&W.

16. Pursuant to the R&W Operating Agreement (Exhibit A), Wendel Investments contributed twenty percent (20%) of the capital necessary to purchase, construct and operate the Hotel, and was to provide the daily operation and management for the Hotel; consequently, Wendel Investments retained a twenty percent (20%) interest in R&W.

17. On or about September 16, 1998, R&W and WGI entered into a Management Consultant Agreement (Exhibit B).

18. Pursuant to the Management Consultant Agreement, WGI agreed to supervise and direct the management and operation of the Hotel, including, without limitation:

      a. determine operating policies, quality of service and customer relations, promotion and publicity;

6

b. operate in accordance with the License Agreement with Country Inn & Suites by Carlson;

c. hire, pay, supervise and discharge all employees, with all employees being an employee of WGI, including determining employee benefits, and negotiate and enter into agreements with labor unions representing WGI employees;

d. maintain the Hotel;

e. establish price and rate schedules for all Hotel spaces;

f. negotiate and execute leases, as well as enter into service contracts for the Hotel operation;

g. apply for, obtain and maintain all Hotel licenses and permits;

h. attend to tenant and guest complaints and process and resolve any claims relating to the Hotel, including insurance claims;

i. supervise and purchase all inventory and supplies;

j. prepare all necessary tax documentation for the Hotel and WGI employees and make any and all necessary tax payments;

k. prepare and comply with an annual budget;

l. execute all documents necessary or convenient in the management, administration and operation of the Hotel; and

m. obtain approval of both R&W's members, Raab and Wendel Investments, prior to committing to any single expenditure in excess of $5,000.

19. Pursuant to the Management Consulting Agreement § 4, R&W, funded 80% by Raab, agreed to provide the operating expenses and reimbursements for the Hotel's management, administration and operation.

20. Pursuant to the Management Consulting Agreement §§ 6(b)-(c), R&W paid WGI a management fee of 2% of monthly gross Hotel revenues, with an increase of an extra 1% in the event of a positive cash flow.

21. Pursuant to the Management Consulting Agreement § 7, WGI was to notify and

7

submit invoices and receipts for reimbursement to R&W.

22.     Pursuant to the Management Consulting Agreement § 8, WGI was to maintain all Hotel records and books, and R&W had the right to inspect or retain the original records and books upon request.

23.     Pursuant to the Management Consulting Agreement § 14, neither R&W nor WGI could assign the Management Consulting Agreement without written consent of the other party.

24.     Upon information and belief, WGI has a fiduciary duty to R&W.

25.     Upon information and belief, Wendel Investments was administratively dissolved on or about March 23, 2003.

26.     Wendel Investments did not notify Raab, pursuant to the R&W Operating Agreement § 9, that Wendel Investments intended to or did name or appoint a transferee of Wendel Investments' Membership Units in R&W, nor was any such transferee ever admitted as a Substitute Member.

27.     Pursuant to the R&W Operating Agreement §§ 7.2 and 9.2(a), if an R&W Member dissolves, such Member's transferees, successors, trustees, receivers or assignees will retain the right to receive R&W distributions and share in the profit and loss allocations, but will not have the right, authority or power to make any decisions on behalf of R&W; enter into any agreements on behalf of R&W; or retain any other rights contained in the R&W Operating Agreement.

28.     At no time did Raab provide his written consent to the appointment of a Substitute Member for Wendel Investments, as required by the R&W Operating Agreement § 9.3.

29.     According to a sworn affidavit signed by Leo and filed on July 15, 2014 in Waukesha County Case No. 14-cv-1368, a case that was subsequently transferred to Walworth

8

County refiled as Walworth County Case No. 14-cv-657 (the present matter) ("Leo Affidavit"), Sand Companies, Inc. or its wholly-owned subsidiary Sand Hospitality, LLC had been operating the Hotel since 2008.

30.     The Sand Companies, Inc. or its wholly-owned subsidiary Sand Hospitality, LLC operated the Hotel without Raab's knowledge or consent.

31.     Electronic accounting records produced by Defendants reveal that Sand Companies and/or Sand Entities received payments from R&W in 2007 and 2008.

32.     Upon information and belief, on or about January 1, 2012, Defendant Michael, representing that he was acting on R&W's behalf, entered into a Hotel Management Agreement (Exhibit C) with Defendant Sand Hospitality.

33.     Michael entered into the Hotel Management Agreement without Raab's knowledge or consent.

34.     Michael was not, and has never been, a Member or a Substitute Member of R&W.

35.     Michael did not have the right, authority or power to act on R&W's behalf, including but not limited to, entering into the Hotel Management Agreement.

36.     Upon information and belief and according to the Leo Affidavit, on or about the time that Michael entered into the Hotel Management Agreement with Sand Hospitality, without the right, authority or power to act on R&W's behalf, Sand Companies, Inc., Sand Hospitality or another related entity, SCI Hotels, had already assumed the role of providing management services for the Hotel.

37.     While the Management Consulting Agreement, entered into by R&W and WGI, provided that WGI would be paid a maximum of 3% in management fees, the Hotel

9

Management Agreement that Michael entered into, without the right, authority or power to act on R&W's behalf, increased the management fees to no less than 8%.

38. While the Management Consulting Agreement, entered into by R&W and WGI, provided that WGI would employ all Hotel employees, the Hotel Management Agreement that Michael entered into, without the right, authority or power to act on R&W's behalf, provided that Defendant SCI or an affiliated entity, would employ all Hotel employees.

39. Upon information and belief, WGI, Wendel Investment, Sand Companies, Sand Hospitality and SCI are all related entities that use the same company addresses and offices.

## DIVERSION OF R&W AND HOTEL ASSETS

40. Upon information and belief, Wendel Investments, as a Member of R&W, and Michael, as a director on Wendel Investments' board of directors, had a fiduciary duty to both R&W and Raab.

41. Upon information and belief, Michael is a director or otherwise exercises control over the other Wendel Entities, Sand Entities and West Bend Hospitality.

42. Upon information and belief, Wendel Entities, West Bend Hospitality and/or Michael diverted assets and revenue of R&W and otherwise interfered with the business interests of R&W and Raab, including but not limited to:

a. Paying management fees to either Wendel Entities, Sand Entities or a related-entity before paying other Hotel expenses, which were to be given a higher priority than the management fees, or failing to pay other Hotel expenses because the Hotel assets and revenues had been depleted as a result of paying management fees ahead of other expenses;

b. Upon information and belief and according to limited and incomplete accounting records received from Defendants as alleged herein, Defendants disbursed R&W

10

funds to one or more Defendants that were in excess of any maximum potential management fee, including but not limited to;

    i.    In 1999, Defendants disbursed $15,091 of R&W funds to one or more of the Defendants, which was in excess of the maximum potential management fee by $6,288;

    ii.    In 2000, Defendants disbursed $19,562 of R&W funds to one or more of the Defendants, which was in excess of the maximum potential management fee by $1,369;

    iii.    In 2002, Defendants disbursed $26,006 of R&W funds to one or more of the Defendants, which was in excess of the maximum potential management fee by $5,608;

    iv.    In 2003, Defendants disbursed $50,061 of R&W funds to one or more of the Defendants, which was in excess of the maximum potential management fee by $28,290;

    v.    In 2004, Defendants disbursed $25,567 of R&W funds to one or more of the Defendants, which was in excess of the maximum potential management fee by $3,630;

    vi.    In 2005, Defendants disbursed $26,237 of R&W funds to one or more of the Defendants, which was in excess of the maximum potential management fee by $5,650;

    vii.    In 2006, Defendants disbursed $25,602 of R&W funds to one or more of the Defendants, which was in excess of the maximum potential management fee by $3,909;

    viii.    In 2007, Defendants disbursed $110,114 of R&W funds to one or more of the Defendants, which was in excess of the maximum potential management fee by $85,266;

    ix.    Between January and May 2008, Defendants disbursed $111,860 of R&W funds to one or more of the Defendants, which was in excess of the maximum potential management fee by $104,618; and

    x.    From June 2008 through August 2014, Defendants continued to disburse R&W funds to one or more of the Defendants in excess of the maximum potential management fee and, as alleged in herein, Defendants have yet to produce complete accounting records,

including supporting documentation, for the relevant years that Defendants operated R&W and managed the Hotel.

    c.      Failing to provide full and complete financial disclosure of transactions being entered into or funds being expended on behalf of the Hotel or R&W;

    d.      Failing to provide the required written financial records, reports and book keeping materials on a regular and on-going basis as required by the Management Consulting Agreement (Exhibit B);

    e.      By creating transactions and business agreements which resulted in "self-dealing" and benefited Michael or his affiliated businesses at Raab's and/or R&W's expense, including but not limited to:

    i.      Making payments or disbursements of R&W funds directly to Michael on July 1, 1999; July 2, 1999; October 8, 2003; November 23, 2004; July 6, 2005; August 11, 2005; November 30, 2005; January 10, 2006; June 6, 2006; July 9, 2007; February 8, 2008; March 4, 2008; April 2, 2008; May 28, 2008; and May 31, 2008, which total in excess of $28,620;

    ii.      Making payments or disbursements of R&W funds directly to Michael from June 1, 2008 through August 2014, but that cannot be verified because Defendants have not produced electronic accounting records for June 1, 2008 through August 2014;

    iii.      Making payments or disbursements of R&W funds to the Sand Companies, Inc. on September 5, 2007; October 11, 2007; October 15, 2007; November 7, 2007; December 4, 2007; January 3, 2008; January 7, 2008; January 20, 2008; January 25, 2008; March 2, 2008; and May 28, 2008, which total in excess of $17,012;

    iv.      Making payments or disbursements of R&W funds directly to the Sand Companies, Inc. from June 1, 2008 through August 2014, but that cannot be verified because Defendants have not produced electronic accounting records for June 1, 2008 through August 2014;

    v.      Making payments or disbursements of R&W funds to SCI Hotels on January 12, 2008; January 23, 2008; February 7, 2008;

February 20, 2008; March 5, 2008; March 20, 2008; April 3, 2008; April 17, 2008; May 2, 2008; May 17, 2008; May 28, 2008; and May 29, 2008, which total in excess of $92,622;

vi. Making payments or disbursements of R&W funds directly to SCI Hotels from June 1, 2008 through August 2014, but that cannot be verified because Defendants have not produced electronic accounting records for June 1, 2008 through August 2014;

vii. Making payments or disbursements of R&W funds to WGI on July 15, 1999; August 23, 1999; September 19, 1999; September 20, 1999; October 14, 1999; June 1, 2000; June 23, 2000; July 4, 2000; August 12, 2000; August 23, 2000; September 1, 2000; September 12, 2000; September 27, 2000; March 1, 2001; June 8, 2001; June 26, 2001; July 2, 2001; July 13, 2001; August 1, 2001; August 5, 2001; August 16, 2001; December 11, 2001; January 23, 2002; February 8, 2002; February 15, 2002; March 26, 2002; April 22, 2002; May 4, 2002; May 27, 2002; June 12, 2002; June 23, 2002; July 5, 2002; August 3, 2002; September 8, 2002; October 11, 2002; November 2, 2002; January 21, 2003; January 28, 2003; February 17, 2003; March 27, 2003; May 12, 2003; May 28, 2003; June 1, 2003; June 10, 2003; June 24, 2003; June 28, 2003; July 1, 2003; July 3, 2003; July 21, 2003; August 1, 2003; August 9, 2003; September 1, 2003; September 11, 2003; September 22, 2003; September 30, 2003; November 3, 2003; December 1, 2003; January 10, 2004; February 8, 2004; March 30, 2004; April 1, 2004; May 2, 2004; May 20, 2004; June 1, 2004; June 7, 2004; July 1, 2004; July 23, 2004; August 2, 2004; September 1, 2004; September 4, 2004; January 7, 2005; February 21, 2005; May 11, 2005; July 10, 2005; July 20, 2005; October 9, 2005, December 29, 2005; February 23, 2006; March 24, 2006; April 12, 2006; May 18, 2006; May 24, 2006; June 6, 2006; July 12, 2006; August 1, 2006; September 4, 2006; February 14, 2007; March 18, 2007; April 12, 2007; May 1, 2007; May 17, 2007; May 25, 2007; June 2, 2007; July 1, 2007; July 2, 2007 and August 27, 2007, which total in excess of $182,775;

viii. Making payments or disbursements of R&W funds directly to WGI from June 1, 2008 through August 2014, but that cannot be verified because Defendants have not produced electronic accounting records for June 1, 2008 through August 2014;

ix. Making payments or disbursements of R&W funds to West Bend Hospitality on June 14, 2000; July 4, 2000; July 14, 2000; August 6, 2000; August 23, 2000; October 22, 2000; June 23, 2002;

13

August 1, 2002; February 10, 2003; March 1, 2003; June 1, 2003; July 1, 2003; August 1, 2003; September 2, 2003; May 7, 2004; May 8, 2004; June 1, 2004; August 10, 2005; October 3, 2005; October 31, 2007 and January 12, 2008, which total in excess of $105,395, including a $70,000 check issued from R&W to West Bend Hospitality on October 31, 2007; and

    x.    Making payments or disbursements of R&W funds directly to West Bend Hospitality from June 1, 2008 through August 2014, but that cannot be verified because Defendants have not produced electronic accounting records for June 1, 2008 through August 2014.

43.    Upon information and belief, Sand Entities and/or Leo diverted assets and revenue of R&W and otherwise interfered with the business interests of R&W and Raab, including but not limited to:

    a.    Receiving payment of R&W funds in 2007 through 2014, as alleged in Paragraph 42(e) of this First Amended Complaint;

    b.    Operating the Hotel between 2008 and 2014 without authorization from R&W or Raab;

    c.    Entering into a management agreement with Wendel Entities and/or Michael without authorization from R&W or Raab;

    d.    Receiving payment of unauthorized R&W funds from R&W, the Wendel Entities and/or Michael before Hotel expenses were paid.

44.    Upon information and belief, in 2012, Wendel Entities and/or Michael requested additional money from Raab and/or R&W, either directly or through loan proceeds acquired for R&W's benefit, and represented to Raab and R&W that such additional money was specifically for maintaining and repairing the Hotel, including the pool area.

14

45.     Based upon the aforementioned representation, Raab and/or R&W provided the additional money that Wendel Entities and/or Michael requested.

46.     Upon information and belief and contrary to the aforementioned representation, Wendel Entities, Sand Entities, Michael, and/or Leo did not maintain or repair the pool area of the Hotel, causing further damage to the pool area, and failed to provide an accounting for the additional money provided for the maintenance and repair of the pool area.

47.     Upon information and belief, during the operation of the Hotel, Wendel Entities, Sand Entities, Michael, and/or Leo failed to obtain approval from both R&W Members prior to making purchases and committing to expenditures in excess of $5,000 per purchase or expense, as required pursuant to the Management Consulting Agreement § 1(q).

48.     Upon information and belief, after Wendel Investments was administratively dissolved, the only R&W Member that had any right, authority or power to make decisions or enter into agreements on behalf of R&W was Raab.

49.     Michael entered into the Hotel Management Agreement without the right, authority or power to act on R&W's behalf and without Raab's knowledge or consent.

50.     Wendel Entities and Michael breached their fiduciary duties and duties of good faith and fair dealing owed to both R&W and Raab by diverting R&W assets and interfering with R&W's and Raab's business interests by using R&W assets to make payments to other entities, including Sand Entities, without the right, authority or power to act on R&W's behalf and without Raab's knowledge or consent.

51.     Upon information and believe, the Hotel Management Agreement Michael entered into with Sand Hospitality on or about January 1, 2012, is void and unenforceable. However, in the event that the Court were to somehow find the Hotel Management Agreement

15

enforceable, the terms of the Agreement clearly provides for how the business revenues were to be expended and in what order they were to be paid. Accordingly, pursuant to the Hotel Management Agreement § 1.03, the use of Hotel funds for paying Michael, Leo, Wendel Entities, and/or Sand Entities prior to paying the employees, servicing the debt and covering the operational expenses is expressly prohibited.

52. Wendel Investments, WGI and any of the Wendel Entities that Michael has acted on behalf of are in privity with each other, including Sand Entities.

53. By entering into the Hotel Management Agreement (Exhibit C), Wendel Entities and Michael breached their fiduciary duties to R&W.

54. The Management Consulting Agreement between R&W and WGI was in full force and effect until Raab, as the only Member of R&W with the right, authority and power to act on R&W's behalf, terminated the Management Consulting Agreement on May 6, 2014.

55. Upon information and belief, at all times after January 1, 2012, Wendel Entities and/or Michael utilized R&W accounts and assets to pay the Sand Entities, to manage the Hotel services in contravention of the R&W Operating Agreement and the Management Consulting Agreement.

56. Upon information and belief, Wendel Entities has failed to provide the appropriate and necessary repairs to the Hotel; the necessary customer service and care to the Hotel guests; the mandatory reporting, record keeping and disclosures required under the agreements; and failed to maintain the Hotel in a suitable manner, resulting in a decrease in Hotel patrons and corresponding Hotel revenue.

57. The Defendants have been uncooperative with the Plaintiffs' efforts to investigate the full extent of the Defendants' actions relating to the operation and management of the Hotel and the financial condition of R&W.

58. When Raab instructed his agents to enter the Hotel premises and secure Hotel records and documents, Leo and/or Michael instructed the Hotel staff to contact the local police department and falsely report that Raab's agents were on the premises "illegally."

59. Defendants have produced an electronic database containing incomplete accounting records for R&W from 1998 through May 2008, but have failed to provide the complete accounting and financial records for this time period, including supporting documentation and cancelled checks.

60. Defendants have failed to produce any electronic databases containing complete accounting and financial records from June 2008-2014.

61. Michael exercised substantial control over the business affairs of R&W and the Hotel and extensively participated in the activities alleged in this First Amended Complaint, which were vital to perpetuating the civil conspiracy against the Plaintiffs.

62. Upon information and belief, the Defendants knew that the Plaintiffs' monetary contributions were not being used to pay the expenses that the Defendants represented the monetary contributions were to be used for.

63. In preparing false reports for the Plaintiffs, the Defendants knew that the reports were substantially overstating the amount of expenses the Hotel was incurring and understating the amount of money being used for management costs.

64. The Defendants reported these false account balances to the Plaintiffs through the use of the United States Mail and through the use of interstate telephone communications.

17

65. Upon information and belief, these false reports were sent by the Defendants in concert with each other.

66. Upon information and belief, the Defendants, in an effort to conceal their unlawful acts, used an intercorporate accounting mechanism and procedures to defraud the Plaintiffs. Michael, Leo, the Wendel Entities and/or Sands Entities benefitted from this scheme by disbursing R&W funds to themselves.

67. At no time did the Defendants communicate with the Plaintiffs, upon information and belief, that they were using R&W revenues and investments for other purposes.

68. Defendants willfully converted R&W assets for the Defendants' benefit and to the detriment of R&W and Raab.

69. Because of the Defendants' intricate, fraudulent scheme using multiple businesses to conceal their actions, Raab and R&W could not have discovered the misappropriation of funds and fraudulent activity prior to this litigation commencing.

## FIRST CAUSE OF ACTION:
## APPOINTMENT OF A RECEIVER PURSUANT TO WIS. STAT. § 813.16

70. Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

71. Defendants caused the Hotel to fall into disrepair, failed to service the debt on the business; failed to provide proper financial reporting and transparency; and failed to perform their duties pursuant to the R&W Operating Agreement and the Management Consulting Agreement.

72. Plaintiff Raab, as the sole R&W Member with authority, had a right to control R&W and the Hotel, including any Hotel revenue that was diverted from R&W.

18

73. Defendants interfered with, prevented and blocked Raab from access to information relating to the Hotel operations and his right to control the Hotel operations.

74. The Hotel's revenue, including rents and profits, were in danger of being lost or materially impaired as a result of the Defendants' actions.

75. The Hotel was in disrepair and its revenues were apparently insufficient to service the debt and expenses of operation.

76. Pursuant to Wisconsin Statutes § 813.16, Plaintiffs are entitled to the appointment of a receiver for R&W and the Hotel.

77. Upon Motion, the Court ordered the appointment of a receiver for R&W and the Hotel on August 15, 2014.

78. Pursuant to the Court's order, the receiver has assumed control of R&W and the Hotel, liquidated real property and assets of R&W, but has not been released by the Court.

79. As a result of Defendants' actions that necessitated the appointment of the receiver, Plaintiffs have suffered damages and incurred expenses in an amount to be determined at trial.

## SECOND CAUSE OF ACTION:
## ALTERNATIVE OR SUBSEQUENT APPOINTMENT
## OF A RECEIVER PURSUANT TO WIS. STAT. CHAPTER 128

80. Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

81. Upon information and belief, Defendants represented that the Hotel and any entity utilized to manage and operate the Hotel was insolvent or in imminent danger of insolvency as defined in Wisconsin Statutes §§ 128.001(1) and 128.08(1)(b).

82. Upon information and belief, Defendants represented that the Hotel and any entity utilized to manage and operate the Hotel was delinquent in multiple obligations to other

19

creditors. The Hotel's revenue, including rents and profits, were in danger of being lost or materially impaired as a result of the Defendants' actions. Moreover, the Hotel was in disrepair and its revenues were apparently insufficient to service the debt and expenses of operation.

83.     Pursuant to Wisconsin Statutes Chapter 128, Plaintiffs are entitled to an appointment of a receiver for R&W, the Hotel and any and all entities utilized to manage and operate the Hotel.

84.     Upon Motion, the Court ordered the appointment of a receiver for R&W and the Hotel on August 15, 2014.

85.     Pursuant to the Court's order, the receiver has assumed control of R&W and the Hotel, liquidated real property and assets of R&W, but has not been released by the Court.

86.     As a result of Defendants' actions that necessitated the appointment of the receiver, Plaintiffs have suffered damages and incurred expenses in an amount to be determined at trial.

### THIRD CAUSE OF ACTION:
### INTENTIONAL MISREPRESENTATION
#### (All Defendants)

87.     Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

88.     Based upon an analysis of the incomplete electronic accounting records provided in 2016 by the Defendants, from 1998 through 2014 the Defendants made false representations to R&W and Raab regarding payments made from R&W to Michael, Wendel Entities and Sand Entities, as set forth herein, knowing that said representations were untrue or recklessly made without caring whether said representations were untrue.

20

89.     On or about 2012, Defendants Wendel Investments, WGI, Sand Hospitality and/or Michael made false representations to R&W and Raab regarding the financial condition of the Hotel, repairs and maintenance expenditures and agreements entered into with Michael's other entities, knowing that said representations were untrue or recklessly made without caring whether said representations were untrue.

90.     Defendants owed a duty to Plaintiffs to disclose all known material facts relating to the Hotel.

91.     Defendants made these representations with the intent to deceive and induce Plaintiffs to act upon the representations.

92.     Plaintiffs believed Defendants' representations to be true and justifiably relied upon the representations to the Plaintiffs' detriment.

93.     As a result of Defendants' representations, Plaintiffs suffered damages.

## FOURTH CAUSE OF ACTION:
## STRICT LIABILITY MISREPRESENTATION
### (All Defendants)

94.     Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

95.     Based upon an analysis of the incomplete electronic accounting records provided in 2016 by the Defendants, from 1998 through 2014 the Defendants made false representations to R&W and Raab regarding payments made from R&W to Michael, Wendel Entities and Sand Entities, as set forth herein, knowing that said representations were untrue or recklessly made without caring whether said representations were untrue.

96.     On or about 2012, Defendants Wendel Investments, WGI, Sand Hospitality and/or Michael made false representations to R&W and Raab regarding the financial condition

of the Hotel, repairs and maintenance expenditures and agreements entered into with Michael's other entities, knowing that said representations were untrue or recklessly made without caring whether said representations were untrue.

97. Defendants made these representations under circumstances where Defendants were in a position to have known, purported to know, or should have known, that the representations were false.

98. Plaintiffs relied upon Defendants' misrepresentations and suffered damage.

### FIFTH CAUSE OF ACTION:
### NEGLIGENT MISREPRESENTATION
### (All Defendants)

99. Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

100. Based upon an analysis of the incomplete electronic accounting records provided in 2016 by the Defendants, from 1998 through 2014 the Defendants made false representations to R&W and Raab regarding payments made from R&W to Michael, Wendel Entities and Sand Entities, as set forth herein, knowing that said representations were untrue or recklessly made without caring whether said representations were untrue.

101. Defendants Wendel Investments, WGI, Sand Hospitality and/or Michael negligently disclosed or negligently failed to disclose the material facts regarding the financial condition of the Hotel, repairs and maintenance expenditures and agreements entered into with Michael's other entities, under circumstances in which a person of ordinary intelligence, prudence or similar experience would have accurately disclosed such information.

102. Defendants' actions and representations created an unreasonable risk of monetary damage to R&W and/or Raab.

22

103.     Defendants' actions constitute a lack of reasonable care in ascertaining and disclosing information that should have been disclosed to R&W and Raab.

104.     Plaintiffs believed Defendants' actions and representations to be true and justifiably relied upon them, causing damage to the Plaintiffs.

### SIXTH CAUSE OF ACTION:
### CONVERSION
### (All Defendants)

105.     Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

106.     Upon information and belief, Defendants procured R&W property without R&W's consent or authorization.

107.     Upon information and belief, Defendants converted R&W property for their own benefit without R&W's consent or authorization.

108.     Plaintiffs suffered harm and damage as a result of the Defendants' actions.

### SEVENTH CAUSE OF ACTION:
### THEFT BY CONTRACTOR IN VIOLATION
### OF WISCONSIN STATUTE § 779.02(5)
### (All Defendants)

109.     Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

110.     Upon information and belief, Defendants failed to use money provided by R&W and/or Raab to pay for Hotel repairs and maintenance provided by suppliers and subcontractors.

111.     Upon information and belief, Defendants received payments from R&W and/or Raab for the Hotel repairs and maintenance, and such payments were to be held in trust pursuant to Wis. Stats. § 779.02(5).

23

112.    Upon information and belief, Defendants used money provided by R&W and/or Raab, which was designated for the parties providing Hotel repairs and maintenance and held in trust by the Defendants, for the Defendants' benefits, contrary to the R&W Operating Agreement, Management Consulting Agreement and Wisconsin Statute § 779.02(5).

113.    Defendants' actions in violation of Wisconsin Statute § 799.02(5) are deemed to be theft by any officer, director, member, partner or agent responsible for the actions, including but not limited to, Michael.

114.    Defendants' actions have damaged Plaintiffs to the extent that the Defendants received money, but have not paid for all the repairs, maintenance, supplies or other services from the received money that was to be held in trust for the benefit of such providers.

**EIGHTH CAUSE OF ACTION:**
**CIVIL THEFT IN VIOLATION OF WISCONSIN**
**STATUTES §§ 779.02(5), 895.446 AND 943.20**
**(All Defendants)**

115.    Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

116.    Defendants possess, acquired and/or converted Plaintiffs' property.

117.    Defendants are intentionally concealing or have converted Plaintiffs' property for the Defendants' use and benefit without Plaintiffs' permission or authorization.

118.    Defendants used money provided by R&W and/or Raab, which was designated for the parties providing Hotel repairs and maintenance and held in trust by the Defendants, for the Defendants' benefits, contrary to the R&W Operating Agreement, Management Consulting Agreement and in violation of Wisconsin Statute § 779.02(5).

119.    Defendants' conduct violates Wisconsin Statutes §§ 779.02(5), 895.446 and 943.20.

24

120.    As a result of Defendants' conduct, Plaintiffs have suffered damages.

121.    Pursuant to Wisconsin Statute § 895.446, Plaintiffs are entitled to recover actual damages from Defendants, together with all costs of investigation and litigation that were reasonably incurred, and exemplary damages of not more than three times the amount awarded for actual damages.

## NINTH CAUSE OF ACTION:
## DECLARATION THAT THE HOTEL MANAGEMENT AGREEMENT
## IS VOID AND UNENFORCEABLE
### (All Defendants)

122.    Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

123.    Defendants Wendel Investments and/or Michael did not have the legal right, title or interest in to act on behalf of R&W, and therefore had not right, authority or power to enter into the Hotel Management Agreement with Sand Hospitality.

124.    Defendants Wendel Investments and/or Michael utilized R&W assets to make payments to Sand Hospitality or its affiliated entities, pursuant to the Hotel Management Agreement, without the right, authority or power to act on R&W's behalf, without R&W's or Raab's knowledge and consent and in violation of Defendants fiduciary duties and duties of good faith and fair dealing pursuant to the R&W Operating Agreement and Management Consulting Agreement.

125.    Plaintiffs request a declaration that the Hotel Management Agreement is void and unenforceable and that all monies paid to Sand Hospitality or any affiliated entity be disgorged and returned to R&W.

126.    Upon information and belief, the Defendants' breaches have caused damages to Plaintiffs in an amount to be determined at trial.

## TENTH CAUSE OF ACTION:
## BREACH OF CONTRACT
### (All Defendants)

127.    Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

128.    Plaintiffs and Defendant formed R&W, pursuant to which each of them agreed to provide certain contributions and services in exchange for an ownership interest in R&W.

129.    Upon information and belief, Wendel Investments, of which Michael was a director, was to act in good faith, exercise absolute loyalty, carry out all fiduciary duties, enter into contracts with the best interest of R&W and Raab in mind, and avoid diverting R&W assets.

130.    Defendants Wendel Investments and Michael, breached the terms and conditions of said agreement by failing to perform in accordance with their duties.

131.    Defendants failure to properly perform under R&W Operating Agreement has caused damages to the Plaintiffs including but not limited to, the loss of business; loss of the benefit of the bargain – namely the 80% ownership interest and related revenues; the loss in the value of R&W; the exposure to additional debt, such as the new loans that were incurred by the Defendants, plus all amounts incurred by the Plaintiffs due to Defendants failure to perform in accordance with their duties.

132.    Plaintiffs and Defendant WGI, through Defendant Michael, entered into the Hotel Management Agreement, pursuant to which WGI was to manage the Hotel.

133.    Defendant WGI had a fiduciary duty and was to act in good faith in performing its management duties at the Hotel.

134.    Defendant WGI breached its fiduciary duty and duty to act in good faith by failing to perform its management duties at the Hotel and by converting and diverting R&W assets in a manner that was not in the best interests of R&W and Raab.

26

135.    Defendant WGI's breaches and failures have caused Plaintiffs damages in an amount to be determined at trial.

136.    In the event that the Court determines that the Hotel Management Agreement with Sand Hospitality is valid and enforceable, Defendants Sand Hospitality, Leo Sand and/or Sand Entities had a fiduciary duty and were to act in good faith in performing the management duties at the Hotel.

137.    Defendants Sand Hospitality, Leo Sand and/or Sand Entities breached their fiduciary duty and duty to act in good faith by failing to perform the management duties at the Hotel and by converting and diverting R&W assets in a manner that was not in the best interests of R&W and Raab.

138.    Defendants Sand Hospitality, Leo Sand and/or Sand Entities breaches and failures have caused Plaintiffs damages in an amount to be determined at trial.

### ELEVENTH CAUSE OF ACTION:
### BREACH OF FIDUCIARY DUTY
### (All Defendants)

139.    Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

140.    Defendants Wendel Investments, WGI and/or Michael have a fiduciary duty to act in the best interests of R&W and Raab.

141.    After Wendel Investments was administratively dissolved, neither Wendel Investments nor Michael could act on behalf of R&W.

27

142. Defendants Wendel Investments, WGI and/or Michael breached their fiduciary duties to act in the best interests of R&W and Raab by diverting R&W assets for the Defendants' benefit and in violation of the best business interests of R&W and Raab.

143. As a result of Defendants Wendel Investments, WGI and/or Michael's breaches of their fiduciary duties, Plaintiffs have suffered damages in an amount to be determined at trial.

144. In the event that the Court determines that the Hotel Management Agreement with Sand Hospitality is valid and enforceable, Defendants Leo Sand and Sand Entities have a fiduciary duty to act in the best interest of R&W and Raab.

145. Defendants Leo Sand and Sand Entities breached their fiduciary duties to act in the best interest of R&W and Raab by diverting R&W assets for the Defendants' benefit and in violation of the best business interest of R&W and Raab.

146. As a result of Defendants Leo Sand's and Sand Entities' breaches of their fiduciary duties, Plaintiffs have suffered damages in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION:
### BREACH OF LOYALTY, GOOD FAITH, AND FAIR DEALING
### (All Defendants)

147. Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

148. Defendants Wendel Investments, WGI and/or Michael had duties of loyalty, good faith and fair dealing with respect to R&W and Raab.

149. Defendants Wendel Investments, WGI and/or Michael breached their duties of loyalty, good faith and fair dealing with respect to R&W and Raab by diverting R&W assets for the Defendants' benefit and in violation of the best business interests of R&W and Raab.

28

150.    Defendants Wendel Investments, WGI and/or Michael's breaches of their duties of loyalty, good faith and fair dealing have caused Plaintiffs to suffer damages in an amount to be determined at trial.

151.    In the event that the Court determines that the Hotel Management Agreement with Sand Hospitality is valid and enforceable, Defendants Leo Sand and Sand Entities had duties of loyalty, good faith and fair dealing with respect to R&W and Raab.

152.    Defendants Leo Sand and Sand Entities breached their duties of loyalty, good faith and fair dealing with respect to R&W and Raab by diverting R&W assets for the Defendants' benefit and in violation of the best business interests of R&W and Raab.

153.    Defendants Leo Sand's and Sand Entities' breaches of their duties of loyalty, good faith and fair dealing have caused Plaintiffs to suffer damages in an amount to be determined at trial.

### THIRTEENTH CAUSE OF ACTION:
### TORTIOUS INTERFERENCE WITH CONTRACT
### (Leo Sand and Sands Entities)

154.    Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

155.    The Defendants Leo and/or Sands Entities intentionally and unjustifiably interfered with the Plaintiffs contractual relationship with Michael and/or Wendel Entities.

156.    Leo's and/or the Sand Entities' purpose was to interfere with the contractual relationship between Plaintiffs, Michael and/or the Wendel Entities.

157.    Leo and/or the Sand Entities knew or should have known that such interference was substantially certain to occur as a result of their conduct.

158.    Defendants' tortious interference with contract caused damage to the Plaintiffs.

### FOURTEENTH CAUSE OF ACTION:

29

## ACCOUNTING
### (All Defendants)

159.   Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

160.   As a result of the Defendants' actions, including the diversion of R&W assets, failure to maintain and repair the Hotel, and failure to provide financial information relating to the operation of the Hotel, Plaintiffs are not in a position to determine the amount of damages Plaintiffs have suffered without a proper accounting.

161.   The amounts improperly diverted, transferred, taken or misused by Defendants can only be determined by a complete and accurate accounting.

## FIFTEENTH CAUSE OF ACTION:
## CIVIL CONSPIRACY
### (All Defendants)

162.   Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

163.   Defendants knowingly or voluntarily agreed, formed, participated and/or operated a conspiracy and intended to further the conspiracy.

164.   The purpose of the conspiracy was to gain a financial benefit for the Defendants and deprive R&W and Raab of business interests and assets.

165.   Defendants, by their concerted actions, committed the acts set forth in this Amended Complaint in furtherance of the conspiracy to deprive R&W and Raab of business interests and assets.

166.   Defendants' actions in furtherance of the conspiracy to deprive R&W and Raab of business interests and assets have caused damage to the Plaintiffs.

## SIXTEENTH CAUSE OF ACTION:
## CIVIL CONSPIRACY PURSUANT TO WIS. STAT. § 134.01
### (All Defendants)

30

167.     Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

168.     Defendants acted together by agreeing to, combining, associating or mutually undertaking a common purpose.

169.     Defendants' common purpose was to injure R&W's and Raab's business, business interests and assets.

170.     Defendants acted with the common purpose to injure R&W's and Raab's business, business interests and assets acted with a malicious motive.

171.     Defendants intentionally concealed the existence of the common purpose from the Plaintiffs.

172.     Defendants' conduct violates Wis. Stats. § 134.01.

173.     As a direct and proximate result of Defendants' actions, R&W and Raab have sustained economic damage, for which Defendants are jointly and severally liable.

**SEVENTEENTH CAUSE OF ACTION:**
**ACQUISITION AND CONTINUANCE OF AN INTEREST IN AND**
**CONTROL OF AN ENTERPRISE IN A PATTERN OF RACKETEERING**
**ACTIVITY PURSUANT TO 18 U.S.C. § 1962(a)**
**(All Defendants)**

174.     Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

175.     Pursuant to 18 U.S.C. § 1961(1), Defendants engaged in racketeering activity by:

a.     Repeatedly violating 18 U.S.C. § 1341 when the Defendants used United States mail in furtherance of their scheme to fraudulently obtain the Plaintiffs' property;

b.     Repeatedly violating 18 U.S.C. § 1343 when the Defendants conducted financial transactions with the fraudulently acquired assets using wire or other means, to inject and commingle these assets with other Wendel Entities and/or Sand Entities to conceal the fraudulent actions;

31

c.     Repeatedly violating 18 U.S.C. §1952(a)(1) when the Defendants travelled in interstate commerce, and/or used the United States mail, and/or any facility in interstate commerce, with the intent to distribute proceeds from their unlawful activity, as defined in 18 U.S.C. § 1952(b).

d.     Repeatedly violating 18 U.S.C. § 1952(a)(3) when the Defendants promoted, managed, established, carried on, or facilitated the promotion, management, establishment, or carrying on, of the unlawful activity, as defined under 18 U.S.C. § 1952(b). The Defendants' unlawful activity includes, but is not limited to, violating 18 U.S.C. §§ 1956 and/or 1957.

e.     Repeatedly violating 18 U.S.C. §1956 when the Defendants conducted a financial transaction using property that they knew was fraudulently obtained. The Defendants intended to promote the carrying on of the fraudulent activities and knew the transaction was designed in whole or part to conceal the nature, source, or ownership of the proceeds from the fraudulent actions.

f.     Repeatedly violating 18 U.S.C. §1957 when the Defendants knowingly engaged in a monetary transaction that used criminally derived property that had a value greater than $10,000 and was derived from fraudulent activity. Such offenses took place within the United States, pursuant to 18 U.S.C. §1957(d).

176.    Pursuant to 18 U.S.C. § 1961(3), the Defendants, individuals and entities capable of holding a legal or beneficial interest in property, are persons.

177.    Upon information and belief, Wendel Entities, Sand Entities, Michael and/or Leo are an enterprise.

32

178. Upon information and belief, Wendel Entities, Sand Entities, Michael and/or Leo are each associated with the enterprise by the association of fact.

179. Pursuant to 18 U.S.C. § 1961(4), Wendel Entities, Sand Entities, Michael and/or Leo formed an association in fact, and that association is an "enterprise". The association is engaged in, and its activities affect, interstate commerce.

180. Upon information and belief, Wendel Entities, Sand Entities, Michael and/or Leo are each associated with the enterprise formed by an association in fact. The Defendants intended to fraudulent transfer Hotel assets to individuals and other legal entities. Each individual defendant is distinct from this enterprise and has its own legitimate business.

181. Alternatively, the Defendants each formed an enterprise through an association in fact, comprised of each company and its employees and agents. Each company is distinct from its employees and agents because of its role in the racketeering activity is separate from the legitimate activities the company conducts.

182. Upon information and belief, each Defendant had a role in directing the affairs of each enterprise formed by an association in fact.

183. Pursuant to 18 U.S.C. § 1961(5), the Defendants engaged in at least two acts of racketeering activity which occurred within ten years of each other.

184. Pursuant to 18 U.S.C. § 1962(a), the Defendants received income derived, directly or indirectly, from a pattern of racketeering activity.

185. Pursuant to 18 U.S.C. § 1962(a), the Defendants used or invested, directly or indirectly, part of such income or proceeds of such income, in acquisition of an interest in, or establishment or operation of an enterprise, which is engaged in, or the activities affect, interstate commerce.

33

186.     As a direct and proximate result of the Defendants' pattern of racketeering activity, the Plaintiffs suffered damages pursuant to 18 U.S.C. § 1964.

### EIGHTEENTH CAUSE OF ACTION:
### ACQUISITION AND CONTINUANCE OF AN INTEREST IN AND CONTROL OF AN ENTERPRISE IN A PATTERN OF RACKETEERING ACTIVITY PURSUANT TO 18 U.S.C. § 1962 (b)
### (All Defendants)

187.     Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

188.     Pursuant to 18 U.S.C. § 1962(b), the Defendants, through a pattern of racketeering activity, acquired or maintained, directly or indirectly, an interest in or control of an enterprise.

189.     Pursuant to 18 U.S.C. § 1962(b), this enterprise is engaged in, or activities of which affect, interstate commerce.

190.     As a direct and proximate result of the Defendants' pattern of racketeering activity, the Plaintiffs suffered damages pursuant to 18 U.S.C. § 1964.

### NINETEENTH CAUSE OF ACTION:
### ACQUISITION AND CONTINUANCE OF AN INTEREST IN AND CONTROL OF AN ENTERPRISE IN A PATTERN OF RACKETEERING ACTIVITY PURSUANT TO 18 U.S.C. § 1962 (c)
### (all Defendants)

191.     Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

192.     Pursuant to 18 U.S.C. § 1962(c), the Defendants were employed or associated with an enterprise that engaged in, or the activities of which, affect interstate commerce.

193.     The enterprise conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs, through a pattern of racketeering activity.

194.     As a direct and proximate result of the Defendants' pattern of racketeering activity, the Plaintiffs suffered damages pursuant to 18 U.S.C. § 1964.

34

## TWENTIETH CAUSE OF ACTION:
## CONSPIRACY TO VIOLATE 18 U.S.C. § 1962(a-c)
## PURSUANT TO 18 U.S.C. § 1962(d)
### (All Defendants)

195.    Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

196.    Pursuant to 18 U.S.C. § 1962(d), Defendants conspired to violate 18 U.S.C. § 1962(a-c).

197.    Defendants agreed to participate in the enterprise's conduct by engaging in a pattern of racketeering activity, as alleged, and further agreed to perform services which would facilitate the enterprise's unlawful conduct.

198.    As a direct and proximate result of the Defendants' pattern of racketeering activity, the Plaintiffs suffered damages pursuant to 18 U.S.C. § 1964.

## TWENTY-FIRST CAUSE OF ACTION:
## VIOLATION OF WIS. STAT. § 946.83(3)
## WISCONSIN ORGANIZED CRIME CONTROL ACT (WOCCA)
### (All Defendants)

199.    Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

200.    Pursuant to Wis. Stat. § 946.82(2), Wendel Entities, Sand Entities, Michael and/or Leo are an enterprise.

201.    Pursuant to Wis. Stat. § 946.82(2), Wendel Entities, Sand Entities, Michael and/or Leo formed an association in fact.

202.    Wendel Entities, Sand Entities, Michael and/or Leo are each associated with the enterprise by the association of fact.

203.    Pursuant to Wis. Stat. § 946.83(3), the Defendants were employed by, or associated with, the enterprise.

35

204. Pursuant to Wis. Stat. § 946.83(3), the Defendants conducted or participated, directly or indirectly, in the enterprise through a pattern of racketeering activity.

205. The Defendants intended to misrepresent invoices, records, and financial statements to the Plaintiffs.

206. Each Defendant is distinct from this enterprise and has an additional, legitimate business.

207. Pursuant to Wis. Stat. §§ 946.82(3)-(4), Defendants engaged in at least three incidents of racketeering activity, that have the same or similar intents, results, accomplices, victims or methods of commission or otherwise are interrelated by distinguishing characteristics by:

    a. Violating 18 U.S.C. 1961(1);

    b. Violating Wis. Stat. § 134.05;

        i. Defendants formed a conspiracy and sought to cause the Hotel loss of customers; reduced profits; and economic losses.

        ii. As described in Wis. Stat. § 134.05(1), the Defendants paid an agent, employee or servant of one or more of the Defendants' businesses commissions, a gift or gratuity with the intent to influence the agent's, employee's, or servant's action in relation to the business of the agent's employee's or servant's principal, employer, or master.

        iii. Michael is an agent, employee, or servant of Wendel Entities.

        iv. Leo is an agent, employee, or servant of Sand Entities.

        v. As described in Wis. Stat. § 134.05(2)(a), Michael, Leo, Wendel Entities, and/or Sand Entities, corruptly requested or accepted a gift, gratuity, or promise to make a gift or do an act beneficial to himself, under an agreement or with an understanding that he shall act in any particular manner in relation to the business of the agent's, employee's or servant's principal, employer, or master.

36

vi.    As described in Wis. Stat. § 134.05(2)(b), Michael and/or Leo, are authorized to procure materials, supplies, or other articles either by purchase or contract for his/its principal, employer, or master, or to employ service or labor for his/its principal, employer, or master.

vii.    As described in Wis. Stat. § 134.05(2)(b), Michael, Leo, Wendel Entities, and/or Sand Entities, received, directly or indirectly, for itself/himself or for another, a commission, discount, or bonus from the person who makes such sale or contract, furnishes such materials, supplies, or other articles, or from a person who renders such service or labor.

viii.    As described in Wis. Stat. § 134.05(3), the Defendants are persons who gave or offered an agent, employee, or servant a commission, discount, or bonus.

ix.    The unlawful actions arising out of the conspiracy of the Defendants have caused the Plaintiffs financial injury for which the Defendants are jointly and severally liable.; and

c.   Violating Wis. Stat. § 943.20.

208.    Upon information and belief, the first and last incident occurred within seven years of each other.

209.    As a direct and proximate result of the Defendants' pattern of racketeering activity, the Plaintiffs suffered damages pursuant to Wis. Stat. § 946.87(4).

## TWENTY-SECOND CAUSE OF ACTION:
## VIOLATION OF WIS. STAT. § 946.83(2)
## WISCONSIN ORGANIZED CRIME CONTROL ACT (WOCCA)
### (All Defendants)

210.    Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

211.    The Defendants, through a pattern of racketeering activity, directly or indirectly, acquired or maintained an interest in or control of an enterprise and/or real property.

37

212.   As a direct and proximate result of the Defendants' pattern of racketeering activity, the Plaintiffs suffered damages pursuant to Wis. Stat. § 946.87(4).

### TWENTY-THIRD CAUSE OF ACTION:
### VIOLATION OF WIS. STAT. § 946.83(1)
### WISCONSIN ORGANIZED CRIME CONTROL ACT (WOCCA)
### (All Defendants)

213.   Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

214.   The Defendants received Hotel revenue as proceeds. These proceeds were received with the knowledge that the proceeds were derived from a pattern of racketeering activity.

215.   The Defendants subsequently used or invested these proceeds in the establishment or operation of an enterprise by transferring Hotel assets into the Defendants' other companies' accounts.

216.   As a direct and proximate result of the Defendants' pattern of racketeering activity, the Plaintiffs suffered damages pursuant to Wis. Stat. § 946.87(4).

### TWENTY-FOURTH CAUSE OF ACTION:
### CONTRIBUTION OR SUBROGATION
### (Michael Wendel and Wendel Entities)

217.   Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

218.   That the secured creditor of R&W was Guardian Credit Union ("GCU") and that Guardian Credit Union commenced a lawsuit on July 24, 2015, Waukesha County Case No. 15-CV-001436.

219.   That the receiver eventually liquidated the Hotel, by Receiver sale which occurred in May, 2015, with a sale to a third party.

220.   That there was an alleged deficiency on R&W's debt to GCU.

38

221.    That the lawsuit and all claims asserted by GCU were resolved by settlement.

222.    Pursuant to the terms of the original loan documents, however, Raab and Michael Wendel, both provided personal guarantees of the debt.

223.    Raab funded for a significant period of time under the Receivership the operations of R&W, for which Wendel, nor any of the Defendants, contributed.

224.    When the assets of R&W were under the direction and control of the Court-appointed receiver, neither Wendel nor any of the Defendants contributed their fair share to the operations of R&W, leading up to the liquidation.

225.    The operation of R&W and the costs associated with its operation, to the extent that it could not be sustained by its revenues, were covered by GCU.

226.    GCU, within the context of its then-pending litigation, demanded payment from Raab and Wendel under their personal Guarantees.

227.    Wendel's guarantee was limited to $250,000.

228.    Upon information and belief, Wendel only paid $50,000.

229.    Raab paid in excess of $900,000 to cover the deficiency and operating expenses of R&W during the pendency of the Receivership and to settle all remaining claims against R&W and Raab by GCU. This was after applying the sale proceeds from the liquidation of the Hotel and all assets of R&W by the Receiver.

230.    Upon information and belief, Rudolph Raab has paid more than his fair share of a debt which Wendel and the Defendants should have contributed to.

231.    Plaintiffs should be reimbursed for all amounts for which he paid above and beyond his equitable share.

**WHEREFORE,** Plaintiffs Raab and R&W demand judgment against Defendants as

39

follows:

A.  Judgment against Defendant Michael C. Wendel, individually and d/b/a/ The Wendel Group, Inc; Wendel Investments, Inc.; Wendel Companies, LLC; Wendel Enterprises, LLC; Wendel Investments, LLC; Wendel Hospitality, LLC; West Bend Hospitality, LLC; Sand Companies, Inc., Sand Hospitality, LLC, SCI Hotels, LLC in favor of Plaintiffs Raab and R&W awarding compensatory damages for all fees and costs incurred in seeking a receiver for R&W and the Hotel and as a result of a receiver being appointed for R&W and the Hotel, together with interest, reasonable attorneys' fees, costs, and disbursements in an amount to be determined by the Court;

B.  Judgment against Defendant Michael C. Wendel, individually and d/b/a/ The Wendel Group, Inc; Wendel Investments, Inc.; Wendel Companies, LLC; Wendel Enterprises, LLC; Wendel Investments, LLC; Wendel Hospitality, LLC; and West Bend Hospitality, LLC; and as applicable: Sand Companies, Inc.; Sand Hospitality, LLC; and SCI Hotels, LLC in favor of Plaintiffs Raab and R&W awarding compensatory damages, together with interest, reasonable attorneys' fees, costs, and disbursements in an amount to be determined by the Court;

C.  Judgment against Defendant Leo Sands, individually and d/b/a "Sand Entities:" Sand Hospitality, LLC; Sand Companies, Inc.; and SCI Hotels, LLC; and as applicable: The Wendel Group, Inc; Wendel Investments, Inc.; Wendel Companies, LLC; Wendel Enterprises, LLC; Wendel Investments, LLC; Wendel Hospitality, LLC; and West Bend Hospitality, LLC, in favor of Plaintiffs Raab and R&W awarding compensatory damages in an amount to be determined by the Court, together with interest, reasonable attorneys' fees, costs and disbursements;

D.  Judgment against The Wendel Group, Inc.; Wendel Companies, LLC; Wendel Enterprises, LLC; Wendel Investments, LLC; Wendel Hospitality, LLC; West Bend Hospitality, LLC; Sand Companies, Inc.; Sand Hospitality, LLC; and SCI Hotels, LLC; and their respective officers, directors, and shareholders in favor of Plaintiffs Raab and R&W awarding compensatory damages, together with interest, reasonable attorneys' fees, costs, and disbursements in an amount to be determined by the Court;

E.  Judgement against Defendants Michael Wendel; Leo Sand; The Wendel Group, Inc.; Wendel Companies, LLC; Wendel Enterprises, LLC; Wendel Investments, LLC; West Bend Hospitality, LLC; Wendel Hospitality, LLC; Sand Companies, Inc.; Sand Hospitality, LLC; SCI Hotels, LLC in favor of Plaintiffs Raab and R&W awarding treble damages and all costs of investigation and litigation that were reasonably incurred pursuant to Wis. Stat. §§ 779.02(5), 895.80, 943.20.

F.  A declaration that the Hotel Management Agreement executed by Sand Hospitality, LLC is void and unenforceable, and all monies disbursed pursuant to the Hotel Management Agreement be disgorged and returned to R&W, together with interest, reasonable attorneys' fees, costs, and disbursements in an amount to be determined by the Court;

G.  For Causes of Action Seventeen through Twenty (18 U.S.C. § 1962 claims), in addition to the prayers for relief set forth above, Plaintiffs further pray for a judgment requiring that Defendants:

1.  Divest any interest in any enterprise related to these causes of action;

2.  Pay to Plaintiffs all damages, threefold;

3.  Return all property that lawfully belongs to Plaintiffs;

41

4. Return to Plaintiffs all proceeds that were made from the fraudulently transferred property;

5. Pay Plaintiffs' interest on such fraudulently transferred property;

6. Pay to Plaintiffs all other damages Plaintiffs suffered as the result of Defendants' actions, including Plaintiffs' costs and reasonable attorneys' fees;

7. Such other relief this Court seems just and proper.

H. For Causes of Action Twenty-One through Twenty-Three (Wis. Stat. § 946.83 claims), in addition to the prayers for relief set forth above, Plaintiffs further pray for a judgment requiring that Defendants:

1. Divest interest in any enterprise related to these causes of action;

2. Pay to Plaintiffs all damages, twofold;

3. Return all property that lawfully belongs to Plaintiffs;

4. Return to Plaintiffs all proceeds that were made from the fraudulently transferred property;

5. Pay Plaintiffs interest on such fraudulently transferred property;

6. Pay to Plaintiffs all other damages the Plaintiffs suffered as the result of the Defendants' actions, punitive damages, the Plaintiffs' costs and reasonable attorneys' fees; and

7. Such other relief this Court seems just and proper.

I. Judgment on all claims in such amounts as established by the Court, together with any statutory fees, costs, and disbursements as the Court deems appropriate or just;

J. Actual damages, together with all costs of investigation and litigation that Plaintiffs reasonably incurred;

42

K.   Exemplary damages of not more than three times the amount awarded for actual damages;

L.   Subrogation and/or contribution from Defendants for all amounts paid on behalf of others above their equitable share;

M.   Pre-judgment interest, plus the costs and disbursements of this action;

N.   Actual attorneys' fees; and

O.   Any such other and further relief as the Court deems just and equitable.

Dated at Brookfield, Wisconsin, this 19th day of September, 2016.

**P.O. ADDRESS:**
DeWitt Ross & Stevens S.C.
13935 Bishop's Drive, Suite 300
Brookfield, WI 53005
Telephone: (262) 754-2840
Facsimile: (262) 754-2845

DeWITT ROSS & STEVENS S.C.
Attorneys for Plaintiffs,
Rudolph Raab d/b/a Raab Investments and
R & W Lodging Limited Liability Company

Shawn M. Govern
State Bar No. 1018012
Olivia M. Kelley
State Bar No. 1056759

43