# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RUDOLPH RAAB, et al.,

                Plaintiffs,

       v.                            Case No. 16-CV-1396

MICHAEL C. WENDEL, et al.,

                Defendants.

## DECISION AND ORDER

### 1. INTRODUCTION

Plaintiff Rudolph Raab has moved to exclude the expert testimony and report of Joseph D. Kenyon. The motion has been fully briefed and is ready for resolution.

### 2. FACTS

As stated in this court's Decision and Order dated December 18, 2017, Raab alleges that he entered into an agreement with defendant Michael C. Wendel in 1998 for the construction and ownership of a hotel in East Troy, Wisconsin. They formed R&W Lodging, LLC (R&W) for this purpose, with Raab and Wendel Investments, Inc. as members. R&W then contracted with the Wendel Group, Inc. (WGI) to manage the hotel.

Over the next decade Wendel, through a variety of associated companies, corporations, and individuals, and using a variety of means, allegedly unlawfully diverted assets away from R&W and Raab. For example, Raab alleges that the defendants disbursed sums in excess of the management fees authorized under the 1998 agreement. Raab also alleges that Wendel unlawfully entered into a new management agreement in 2012 with one of his other affiliated entities, defendant Sand Hospitality, LLC, that authorized management fees significantly greater than those authorized under the 1998 agreement.

Raab and R&W (hereafter referred to collectively as Raab) retained forensic accountant Paul A. Rodrigues as an expert witness. Rodrigues issued a report that offered a number of opinions on several expense items and which made a number of other observations. The defendants moved to exclude Rodrigues's report and proposed expert testimony on various grounds. On December 18, 2017, the court granted the defendants' motion.

But before the court's decision excluding the report and proposed expert testimony of Rodrigues, the defendants hired their own expert, Kenyon, to respond to the opinions offered by Rodrigues. Raab now moves to exclude the testimony and report of Kenyon on some of the same grounds that the defendants relied on when moving to exclude Rodrigues's testimony and report. Specifically, Raab sets forth three reasons for excluding Kenyon's report and testimony. First, he contends that "Kenyon's report and

subsequent deposition testimony fails to set forth how his opinions are 'the product of reliable principles and methods' and how he 'reliably applied the principles and methods to the facts of this case.'" (ECF No. 73-1 at 1 (quoting Fed. R. Evid. 702(c), (d)).) Second, he argues that the court "should exclude Kenyon's conclusions regarding 'fluctuations in expense amounts' related to payroll because these conclusions contain no opinions and are not based upon any methodology." (*Id.* at 2.) Finally, he contends that the court should exclude Kenyon's opinions "relating to payroll because, as Kenyon concedes at his deposition, the Defendants provided him with access to documentation and data that Defendants failed to produce to Plaintiffs, despite Plaintiffs' requests." (*Id.*)

### 3. APPLICABLE STANDARD

Federal Rule of Evidence 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
  (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
  (b)  the testimony is based on sufficient facts or data;
  (c)  the testimony is the product of reliable principles and methods; and
  (d)  the expert has reliably applied the principles and methods to the facts of the case.

As stated by the United States Court of Appeals for the Seventh Circuit:

The Supreme Court has interpreted Rule 702 with a flexible standard that boils down to two over-arching requirements for expert witness testimony. The expert testimony must be "ground[ed] in the methods and procedures of science" and must "assist the trier of fact to understand or determine a fact in issue." *Daubert [v. Merrell Dow Pharms., Inc.]*, 509 U.S.

[579,] 590-91 [(1993)]. *Daubert* requires the district court to act as an evidentiary gatekeeper, ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand. *Id.* at 589. To do this a trial judge must make a preliminary assessment that the testimony's underlying reasoning or methodology is scientifically valid and properly applied to the facts at issue. *Id.* at 592-93. The district court holds broad discretion in its gatekeeper function of determining the relevance and reliability of the expert opinion testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). Our circuit has given courts the following guidance to determine the reliability of a qualified expert's testimony under *Daubert*, stating that they are to consider, among other things: "(1) whether the proffered theory can be and has been tested; (2) whether the theory has been subjected to peer review; (3) whether the theory has been evaluated in light of potential rates of error; and (4) whether the theory has been accepted in the relevant scientific community." *Baugh v. Cuprum S.A. de C.V.*, 845 F.3d 838, 844 (7th Cir. 2017); *see also Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000).

*Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 674 (7th Cir. 2017). No single factor is required nor dispositive. *Id.* (citing *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000)). "The district court may apply these factors flexibly as the case requires." *Id.* (citing *United States v. Brumley*, 217 F.3d 905, 911 (2000)).

## 4. ANALYSIS

Raab raises three objections to Kenyon's report and opinions: (1) Kenyon fails to demonstrate his opinions are the product of reliable principles and methods and that he reliably applied those principles and methods; (2) Kenyon's conclusions regarding payroll fluctuations merely parrot the defendants' explanations; and (3) Kenyon's opinions regarding payroll were based on evidence Raab repeatedly requested but did not receive from the defendants.

4

### 4.1.     Principles and Methods

Raab characterizes Kenyon as relying on his education, training, and experience, without further explanation as to how he arrived at his opinions and conclusions. According to Raab, "Kenyon's failure to identify any professional accounting standard or otherwise explain how he applied his expertise to this case would do nothing more than impermissibly mislead a jury into believing that Kenyon's opinions are reliable, simply because he has undefined and unexplained 'expertise.'" (ECF No. 73-1 at 4.)

In defending Kenyon's opinions and conclusions, rather than rely on what Kenyon said in his report, the defendants rely almost entirely on what Kenyon said in his declaration opposing Raab's motion to exclude his testimony. The court agrees with Raab (*see* ECF No. 92 at 3) that the sufficiency of Kenyon's report depends on what is contained in that report rather than what he said later in his declaration to explain the basis for his opinions.

In his report, Kenyon describes his methodology as follows: "In addition to relying upon my education, training and experience, I read and analyzed the documents listed in Appendix I in preparation for this report. I also toured the facility in Waite Park, Minnesota, and interviewed critical employees of Sand entities …." (ECF No. 82-1 at 5 (citations reflect ECF pagination).) Although asserting that he "performed a variety of analysis and testing" (ECF No. 82-1 at 6), he generally does not describe what the analysis and testing consisted of. Certain of Kenyon's efforts may be gleaned

from his report. For example, Kenyon compared certain aspects of the performance of R&W's hotel to "regional industry benchmarks," compared the hotel's revenue to county sales tax receipts, and noted changes in surrounding businesses that might affect hotel revenue.

But the court's observations regarding Rodrigues's report apply equally to Kenyon's report:

> [he] describes his methodology but does not ground it in any sort of professional accounting standards. He "does not explain the basis for his opinions in his report -- that is, does not explain how he applied his expertise to the facts of this case ...." *Harris v. Clark*, No. 06-C-529, 2009 U.S. Dist. LEXIS 63643, at *11 (E.D. Wis. June 16, 2009). "If an expert witness cannot explain how he arrived at his conclusions, he will not be allowed to give expert testimony." *Id.* (citing *Zenith Elecs. Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 419-20 (7th Cir. 2005)).

*Raab v. Wendel*, No. 16-CV-1396, 2017 U.S. Dist. LEXIS 217704, at *16 (E.D. Wis. Dec. 18, 2017).

To the extent the personal knowledge Kenyon gained from his review of the financial records may enable him to offer relevant testimony as a fact witness, he, like Rodrigues, will be permitted to do so. *See Raab v. Wendel*, No. 16-CV-1396, 2017 U.S. Dist. LEXIS 217704, at *18 (E.D. Wis. Dec. 18, 2017) ("[I]t is plausible that Rodrigues may be able to offer non-expert fact testimony regarding his efforts to identify documentation supporting certain expenditures or other aspects of his analysis."). But having failed to explain how his opinions are grounded in reliable principles and methods, he will not be permitted to testify as an expert.

### 4.2.     Payroll Fluctuations

Although the court's conclusion above may moot the remainder of Raab's motion, for the sake of completeness the court addresses Raab's additional arguments. Raab seeks to exclude Kenyon's testimony regarding what the parties describe as four payroll "fluctuations." Specifically, Kenyon noted that front desk payroll expenses averaged about $70,000 per year but were over $90,000 in 2004; general manager payroll expenses more than doubled for 2008; marketing expenses of $5,000 appeared in 2008 and 2009 but no other year; and maintenance payroll doubled as of 2009. (ECF No. 82-1 at 27.) Kenyon asked Wendel about these fluctuations and seemed to accept his explanations. Kenyon then noted that "payroll expense as a percentage of revenue is consistent between both the pre-merger and post-merger years." (ECF No. 82-1 at 28.) Kenyon also stated, "Based on the analytical and detailed testing of payroll, nothing has been identified that would indicate the related expenditures during 2008 through 2014 were accounted for incorrectly or are unreasonable." (ECF No. 82-1 at 28.) The implication is that, in Kenyon's opinion, the fluctuations were, in fact, caused by the factors Wendel identified.

The defendants argue that Kenyon did merely what Rodrigues did and of which the court approved—relied on certain assumptions proffered by his client. (ECF No. 80 at 6-7.) The court, however, does not find that Kenyon's actions can be fairly characterized as simply accepting a proffered assumption in line with the assumptions

on which Rodrigues relied. Rodrigues relied on certain assumptions to narrow the scope of his analysis. To the extent that Wendel's explanations for the fluctuations can be characterized as assumptions at all, the assumptions Kenyon relied on did not narrow but instead ended his analysis.

Raab's concern is well-founded. Allowing Kenyon to testify that the payroll fluctuations were reasonable would simply put the imprimatur of an expert on Wendel's factual assertion as to the explanation for the fluctuations. If the defendants will seek to introduce Wendel's explanations for the fluctuations, then it will have to be through Wendel's testimony.

The defendants argue, "Kenyon independently analyzed the four payroll 'fluctuations' by comparing payroll expense as a percentage of overall revenue between the Wendel Group management years and the Sand Companies management years." (ECF No. 80 at 7.) That is true, but consistent with the defect discussed in section 4.1 above, he never explained why assessing payroll expenses as a percentage of revenue is an appropriate means of evaluating the reasonableness of a hotel's payroll expenditures. In fact, aside from baldly asserting that he engaged in "analytical and detailed testing of payroll," at no point did Kenyon ground any aspect of his analysis of the payroll expenditures in any sort of professional accounting standards. Thus, any opinion Kenyon may propose to offer has not been adequately supported under Rule 702.

To the extent that, as a result of his review of the financial records, Kenyon possesses first-hand knowledge of evidence consistent with Wendel's explanations for the fluctuations, he would be permitted to offer such factual testimony. Thus, he may point to specific documents supporting expenditures, identify personnel records regarding the alleged staffing changes, or presumably prepare and present relevant summaries consistent with Rule 1006. But it would be impermissible for Kenyon to testify, for example, that in his opinion Wendel's explanations negated Rodrigues's implication that the expenditures were improper.

### 4.3.    Payroll Evidence

Kenyon "tested whether payroll-related disbursements were directly related to operations at the Hotel." (ECF No. 82-1 at 25.) Because, he says, "[i]t is impractical and unnecessary to test 100% of payroll transactions and it would be cost prohibitive to do so," he "analyzed payroll expenditures on a test basis, selecting three payroll periods to verify hours worked, pay rates, and property location." (ECF No. 82-1 at 25-26.)

Raab argues that Kenyon should be prohibited from testifying about what he found in his review because the plaintiffs' expert, Rodrigues, was not given equivalent access to the defendants' payroll records. The defendants respond that Raab received all documents that were provided to Kenyon. (ECF No. 80 at 8.) Raab replies that Rodrigues received only the sample of documents Kenyon relied on but did not receive full access to a relevant database or access to human resources files. (ECF No. 92 at 7.) In

short, Raab argues that the documents he has received are insufficient to enable Rodrigues to fully evaluate Kenyon's conclusions. (ECF No. 92 at 8.)

Although Kenyon will be prohibited from offering his opinion as to the reasonableness of the payroll expenditures, to the extent he may offer factual testimony based upon personal knowledge, Kenyon may testify as to what he observed as part of his analysis of a sample of payroll records. Whether Rodrigues was improperly denied access to certain payroll records is a discovery matter. Raab never filed a motion to compel regarding an alleged denial of access to payroll records. In the absence of such a motion, much less the court granting the motion, and the defendants failing to comply, the court finds it inappropriate to essentially sanction the defendants by barring Kenyon from testifying as to what he observed.

**IT IS THEREFORE ORDERED** that the plaintiffs' motion to exclude Joseph D. Kenyon from testifying as an expert (ECF No. 72) is **granted**.

**IT IS FURTHER ORDERED** that, in light of the defendants' statements that they do not believe restriction remains necessary (ECF No. 83) and because the defendants filed the report publicly (ECF No. 82-1), the plaintiffs' motion (ECF No. 71) to restrict Joseph D. Kenyon's expert report to case participants (ECF No. 74-2) is **denied**.

Dated at Milwaukee, Wisconsin this 7th day of December, 2018.

WILLIAM E. DUFFIN
U.S. Magistrate Judge