# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

RUDOLPH RAAB, et al.,

        Plaintiffs,

    v.                           Case No. 16-CV-1396

MICHAEL C. WENDEL, et al.,

        Defendants.

## DECISION AND ORDER

## 1. Introduction

At its core this lawsuit seems to be an unexceptional dispute about the management of a hotel. Nonetheless, it has already spanned nearly five years, three courts, and three complaints. The plaintiffs in their second amended complaint assert 24 claims, ranging from claims seeking the appointment of a receiver, three different varieties of misrepresentation, various iterations of theft, breach of fiduciary duty, conspiracy, and every sort of racketeering.

Aside from its scattershot allegations, the second amended complaint lacks clarity on the most basic elements, such as who the defendants are and against whom each claim is made. Some purported defendants are named in the body of the complaint

although not identified as defendants in the caption. Other entities are identified in the caption under the designation "d/b/a," which is simply a means to indicate an alternate identity of another defendant. But at times in the body of the complaint it seems as if the plaintiffs believe they have named these "d/b/a" entities as separate defendants. Most claims purport to be against all defendants, even though it seems obvious that certain claims aren't really, and maybe even couldn't be, asserted against at least some of the defendants.

The plaintiffs and the defendants have both moved for summary judgment on some of the plaintiffs' claims, and the plaintiffs move for summary judgment on all of the defendants' counterclaims. The motions have been fully briefed and are ready for a resolution. All parties have consented to the jurisdiction of a magistrate judge.

## 1.1. Facts

In 1998, plaintiff Rudolph Raab and defendant Wendel Investments, Inc. formed R&W Lodging, LLC (ECF No. 91, ¶ 1) for the construction and ownership of a hotel in East Troy, Wisconsin (ECF No. 86, ¶ 2). Raab owned 80 percent of R&W and Wendel Investments, which was soon succeeded by defendant Wendel Enterprises, LLC, owned 20 percent. (ECF No. 91, ¶¶ 1, 2.) R&W agreed to have defendant The Wendel Group, Inc. manage and maintain the hotel. (ECF No. 91, ¶¶ 4, 5.) The man behind each of the three Wendel defendant entities is defendant Michael C. Wendel. (ECF No. 91, ¶¶ 1, 19; *see also* ECF No. 68, ¶¶ 2, 4.)

In 2007, The Wendel Group merged with defendant Sand Companies, Inc., which began to manage the hotel in place of The Wendel Group. (ECF No. 91, ¶¶ 7, 8.) Sand Companies also used certain of its subsidiaries in the management of the hotel. (ECF No. 91, ¶ 9.) For example, payroll and human resources management were provided by defendant SCI Hotels, LLC (ECF No. 91, ¶¶ 11-12), and defendant Sand Procurement by Design, LLC "assisted in providing furniture and furnishings for the Hotel after it sustained water damage" (ECF No. 91, ¶ 13).

Michael Wendel, purportedly acting on behalf of R&W, entered into an agreement with Sand Hospitality whereby Sand Hospitality would manage R&W's East Troy hotel effective January 1, 2012. (ECF No. 91, ¶ 15.)

### 1.2. Claims in the Second Amended Complaint

In their second amended complaint (ECF No. 17) the plaintiffs allege 24 causes of action: (1) appointment of a receiver pursuant to Wis. Stat. § 813.16; (2) appointment of a receiver pursuant to Wis. Stat. ch. 128; (3) intentional misrepresentation; (4) strict liability misrepresentation; (5) negligent misrepresentation; (6) conversion; (7) theft by contractor in violation of Wis. Stat. § 779.02(5); (8) civil theft in violation of Wis. Stat. §§ 779.02(5), 895.446, and 943.20; (9) declaration that the hotel management agreement is unenforceable; (10) breach of contract; (11) breach of fiduciary duty; (12) breach of loyalty, good faith, and fair dealing; (13) tortious interference with contract as to Leo Sand and the Sand entities; (14) accounting; (15) civil conspiracy; (16) civil conspiracy

pursuant to Wis. Stat. § 134.01; (17) violation of RICO under 18 U.S.C. § 1962(a); (18) violation of RICO under 18 U.S.C. § 1962(b); (19) violation of RICO under 18 U.S.C. § 1962(c); (20) violation of RICO under 1962(d); (21) violation of Wisconsin's Organized Crime Control Act (WOCCA) under Wis. Stat. § 946.83(3); (22) violation of WOCCA under Wis. Stat. § 946.83(2); (23) violation of WOCCA under Wis. Stat. § 946.83(1); (24) contribution or subrogation as to Michael Wendel and the Wendel entities.

### 1.3. Parties

The caption of the second amended complaint identifies the plaintiffs as "Rudolph Raab d/b/a Raab Investments, and R&W Lodging, Limited Liability Company." Aided by the further description provided in the first and second paragraphs of the second amended complaint, the court understands there to be two plaintiffs—Rudolph Raab and R&W Lodging, LLC. Raab Investments is merely a further description of Rudolph Raab and is not a separate party.[1]

It is much more complicated, however, to identify who the defendants are. The persons or entities Raab and R&W name as defendants in the caption of the second amended complaint are Michael C. Wendel (three separate times), West Bend Hospitality, Inc., Leo M. Sand (twice), Sand Hospitality, LLC, Sand Companies, Inc., SCI

---

[1] That is not to say that the second amended complaint is clear as to the identity of the plaintiffs. For example, the second amended complaint alleges, "Plaintiffs and Defendant formed R&W …." (ECF No. 17, ¶ 137.) But R&W *is* one of the two plaintiffs. It obviously did not join with a defendant to form itself.

4

Hotels, LLC, Sand Procurement by Design, and HW West Bend Properties, LLC. Raab and R&W also identify various entities as a d/b/a of a named defendant.

Sand Companies, Inc., Sand Hospitality, LLC, SCI Hotels, LLC, and Sand Procurement by Design are named as defendants and are also identified as a d/b/a of Michael C. Wendel and/or Leo M. Sand. West Bend Hospitality, Inc. is named as a defendant and is also identified as a d/b/a of Michael C. Wendel. Because each of these entities is identified as a defendant both in the caption and in the body of the second amended complaint (ECF No. 17, ¶¶ 6, 8-11), there is no confusion that each is a defendant, notwithstanding the fact that each is also identified as a d/b/a of Wendel and/or Sand.

However, whether The Wendel Group Inc., Wendel Companies LLC, Wendel Enterprises LLC, Wendel Investments LLC, Wendel Hospitality LLC, and Wendel Investments Inc. are defendants is unclear. None is named in the caption of the second amended complaint other than as a d/b/a of Michael C. Wendel. But the d/b/a designation simply further describes a party; it is not a means by which to name a distinct entity as a defendant. *Cf. Paul Davis Restoration of S.E. Wis., Inc. v. Paul Davis Restoration of Ne. Wis.*, 2013 WI 49, ¶5, 347 Wis. 2d 614, 831 N.W.2d 413. Adding to the confusion, two of the Wendel entities—The Wendel Group Inc. and Wendel Investments Inc.—are identified as defendants in the body of the second amended complaint (ECF No. 17, ¶¶ 4, 5) despite not being named as defendants in the caption. It appears that

the defendants (who are collectively defending this case) are under the impression that The Wendel Group Inc. and Wendel Investments Inc. *are* defendants (*see, e.g.*, ECF No. 67 at 10-11, (discussing whether The Wendel Group Inc. and Wendel Investments Inc. owed fiduciary duties to the plaintiffs)). Therefore, notwithstanding plaintiffs' failure to identify them as such in the caption of the second amended complaint, the court will regard these entities as defendants.

However, the remaining Wendel entities identified only as a d/b/a of Michael C. Wendel—Wendel Companies LLC, Wendel Investments LLC, and Wendel Hospitality LLC—are not identified either in the caption or in the body of the complaint as defendants. Therefore, the court does not regard these entities as parties.

The court is inclined to reach the same conclusion regarding Wendel Enterprises, LLC, which like Wendel Companies LLC, Wendel Investments LLC, and Wendel Hospitality LLC, is not identified as a defendant in the caption or in the body of the second amended complaint. However, it is clear that the defendants again regard Wendel Enterprises, LLC as a proper defendant. Significantly, Wendel Enterprises, LLC alleges a counterclaim against Raab. (ECF No. 48 at 38-41.) In doing so it repeatedly refers to itself as a "Defendant," and it obviously could not have brought a counterclaim unless it was. Therefore, the court accepts that the plaintiffs have constructively amended their second amended complaint to include Wendel Enterprises, LLC as a defendant.

### 1.4. Claims Against Certain Defendants

In addition to the lack of clarity as to who the parties are, it is often unclear against whom the plaintiffs are making a claim. Nearly all of the 24 claims in plaintiffs' second amended complaint purport to be against all of the defendants. (ECF No. 17.) In briefing the summary judgment motions, the parties regularly refer to "the defendants" and "the plaintiffs," collectively. Because more specificity is often impossible given the state of the record, the court finds itself often forced to likewise use such generalities. However, at times it seems clear that some of the claims are not properly asserted against some of the defendants. For example, notwithstanding the plaintiffs including "(All Defendants)" following the title of most claims, in some instances the substantive allegations in support of the claim identify only one or a few specific defendants.

The defendants argue that Wendel Companies, LLC, Wendel Hospitality, LLC, Wendel Investments, LLC, and HW West Bend Properties, LLC "never transacted business with R&W." (ECF No. 67 at 28.) And "[i]t is undisputed that Leo Sand never received any money from R&W." (ECF No. 67 at 28.) Finally, "[t]here is also no evidence that Wendel Investments, Inc. or Wendel Enterprises, LLC engaged in any wrongful conduct." (ECF No. 67 at 28.)

As noted above, because they were identified only as a d/b/a of Michael Wendel and were not properly named as defendants in the second amended complaint, Wendel Companies LLC, Wendel Investments LLC, or Wendel Hospitality LLC are not

defendants in this action. Beyond that, the plaintiffs have not asserted any claims against any of them. (*See also* ECF No. 91 ¶¶ 23-24, 27.) Therefore, even if the court were to conclude that these entities were properly named as defendants, it would dismiss them. The plaintiffs also failed to respond to the defendants' argument regarding HW West Bend Properties, LLC. Therefore, HW West Bend is dismissed as a defendant.

Wendel Investments, Inc. was an original member of R&W but soon was succeeded by Wendel Enterprises, LLC. Wendel Investments, Inc. is referenced in the plaintiffs' response to the defendants' summary judgment motion only when they allege that it, along with various other entities, "had a fiduciary relationship with Plaintiffs and owed Plaintiffs fiduciary duties." (ECF No. 87 at 12.) But that does not explain what Wendel Investments, Inc. allegedly did wrong. The only allegation the court has identified regarding conduct occurring when Wendel Investments, Inc. was a member of R&W is made in connection with the plaintiffs' misrepresentation claims— specifically, that "from 1998 through 2014 the Defendants made false representations to R&W and Raab regarding payments made from R&W to Michael, Wendel Entities and Sand Entities …." (ECF No. 17, ¶¶ 97, 104, 109.) As discussed below, the evidence the plaintiffs proffer in defense of these claims does not refer to Wendel Investments, Inc. There is no evidence that Wendel Investments, Inc. had any further involvement in this matter after it was no longer a member of R&W. Therefore, Wendel Investments, Inc. is also dismissed as a defendant.

As for Wendel Enterprises, LLC, as noted above, although not named as a defendant in the second amended complaint, the court found the plaintiffs to have constructively amended their complaint to include Wendel Enterprises, LLC as a defendant. Nonetheless, the defendants contend that Wendel Enterprises, LLC should be dismissed as a defendant. The court agrees with the defendants that the plaintiffs have done an exceedingly poor job articulating what claim or claims they are asserting against this defendant. While generally referring to all defendants collectively, the most specific the plaintiffs tend to get is to refer to "the Wendel Entities," which they describe as including "Wendel Enterprises, Wendel Investments, Wendel Group." (ECF No. 87 at 12.) But these entities had vastly different roles, with Wendel Enterprises taking over for Wendel Investments as the member of R&W, and The Wendel Group being the entity hired to manage the hotel. With regard to many allegations in the second amended complaint, they are unlikely to apply equally to each entity.

Despite the plaintiffs' troubling lack of specificity, the court will reluctantly decline to dismiss Wendel Enterprises, LLC as a defendant. As the other member of R&W, the court can recognize how certain of the plaintiffs' claims apply to Wendel Enterprises, LLC. Therefore, the court finds it inappropriate to dismiss Wendel Enterprises, LLC as a defendant.

Finally, the defendants argue that there is no evidence of wrongdoing with respect to Leo Sand. They argue there is no allegation that he ever personally engaged

in any wrongful conduct, and the plaintiffs' allegation that he is an alter ego of one or more defendant entity is empty. (ECF No. 67 at 28.) For the reasons discussed below, the court cannot say that it is appropriate to wholly dismiss Sand as a defendant. Unlike certain of the other defendants, the plaintiffs have made allegations specific to Sand.

## 2. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from the evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001)). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016).

### 3. Analysis of Plaintiffs' Claims

#### 3.1. Plaintiffs' RICO Claims

The Racketeer Influenced and Corrupt Organizations Act (RICO) prohibits four categories of activities: (a) a person using proceeds from a pattern of racketeering activity in an enterprise, 18 U.S.C. § 1962(a); (b) a person controlling an enterprise through a pattern of racketeering activity, 18 U.S.C. § 1962(b); (c) a person employed by or associated with an enterprise conducting that enterprise through a pattern of racketeering activity, 18 U.S.C. § 1962(c); and (d) a person conspiring to do any of these things, 18 U.S.C. § 1962(d). In the seventeenth, eighteenth, nineteenth, and twentieth causes of action in the second amended complaint, the plaintiffs allege that "All Defendants" violated each of these provisions. (ECF No. 17, ¶¶ 183-207.) The defendants have moved for summary judgment on all of the plaintiffs' RICO claims. (ECF No. 67 at 16-26.)

The court finds the plaintiffs have fallen woefully short of adequately supporting their RICO claims. The cautioning words of the Court of Appeals for the Seventh Circuit are directly applicable here:

> [C]ivil RICO plaintiffs persist in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions. While it is clear that the scope of civil RICO extends beyond the prototypical mobster or organized crime syndicate, it is equally evident that RICO has not federalized every state common-law cause of action available to remedy business deals gone sour.

*Gamboa v. Velez*, 457 F.3d 703, 710 (7th Cir. 2006) (quoting *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992)).

A person familiar with RICO law who reads the plaintiffs' second amended complaint or response to the defendants' motion for summary judgment would immediately recognize that the plaintiffs' RICO claims fail for a number of reasons. For example, claims under § 1962(a) and (b) "require that the actual investment of the racketeering income in the enterprise, or the actual acquisition or maintenance of the enterprise, injured plaintiff's business or property" rather than merely that the plaintiffs were allegedly injured by the underlying racketeering acts. *Lewicky v. Chou*, No. 91 C 7088, 1993 U.S. Dist. LEXIS 4127, at *13 (N.D. Ill. Mar. 30, 1993) (discussing cases). "It is insufficient to allege that the defendants merely reinvested the racketeering proceeds in their ongoing business activities, thus permitting the alleged violations to continue. 'If this remote [reinvesment] connection were to suffice, the use-or-investment injury requirement would be almost completely eviscerated.'" *Id.* at *14 n.4 (quoting *Brittingham v. Mobil Corp.*, 943 F.2d 297, 305 (3d. Cir. 1991)). Yet the plaintiffs allege only that they were injured by the pattern of racketeering activity. (ECF No. 17, ¶¶ 195, 199.)

Under 1962(c), the plaintiffs must identify both the enterprise and a separate person who allegedly conducted the enterprise's affairs through a pattern of racketeering activity. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). The plaintiffs offer only disjunctive suggestions as to possibilities of what the enterprise

might be. (*See, e.g.*, ECF No. 17, ¶¶ 188, 189.) That is not enough. *Cf. Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000) ("[A] RICO complaint must identify the enterprise."). Having failed to identify what the alleged enterprise is, the court has no basis for concluding that an enterprise exists, as opposed to merely a group of people who allegedly commit racketeering activity. *See id.* Nor do the plaintiffs ever articulate who they allege the "person" is that conducted the enterprises' affairs—*i.e.*, who the defendant is. Rather, they refer to the defendants collectively. (ECF No. 17 at 35, 38, 39 (alleging RICO claims against "All Defendants").)

Separately, the plaintiffs' RICO claims under § 1962(a) through (c) fail to adequately identify "a pattern of racketeering activity." To state a RICO claim against a defendant, the plaintiff must identify at least two racketeering acts in which *each* defendant allegedly engaged. 18 U.S.C. § 1962; *Pelfresne v. Vill. of Rosemont*, 22 F. Supp. 2d 756, 764 (N.D. Ill. 1998); *Pulphus v. Sullivan*, No. 02 C 5794, 2003 U.S. Dist. LEXIS 7080, at *27 (N.D. Ill. Apr. 25, 2003); *Feinstein v. Resolution Tr. Corp.*, 942 F.2d 34, 41 (1st Cir. 1991); *Banks v. Wolk*, 918 F.2d 418, 421 (3d Cir. 1990) ("no defendant can be liable under RICO unless he participated in two or more predicate offenses sufficient to constitute a pattern"); *see also Jennings v. Emry*, 910 F.2d 1434, 1439 (7th Cir. 1990).

Rather than connecting each defendant to alleged racketeering activity, the plaintiffs refer to the defendants collectively, alleging, for example, "Defendants used United States mail …"; "Defendants conducted financial transactions …"; "Defendants

travelled in interstate commerce …"; "Defendants promoted …"; "Defendants knowingly engaged in a monetary transaction …"; and "Pursuant to 18 U.S.C. § 1961(5), the Defendants engaged in at least two acts of racketeering activity which occurred within ten years of each other." (ECF No. 17, ¶¶ 184 a. through f.; 192). Such conclusory allegations do not state a claim against any particular defendant. *Jennings*, 910 F.2d at 1439; *Goren v. New Vision Int'l*, 156 F.3d 721, 729 (7th Cir. 1998).

On summary judgment, where the plaintiffs' burden is substantially higher than on a motion to dismiss, the plaintiffs do not offer materially more than the insufficient allegations in their complaint. In response to the defendants' argument that the plaintiffs failed to present evidence that each defendant engaged in at least two predicate acts, the plaintiffs' only substantive response (*see* ECF No. 87 at 26-27) is to quote two of its answers to the defendants' interrogatories. They assert:

> Wendel, either acting on his own behalf or on behalf of one of the Wendel or Sand Entities, represented to Raab that the Hotel was incurring certain monthly expenses, when Wendel had knowledge or should have known that the Hotel was incurring less in certain monthly expenses than what Wendel represented. Further, Wendel failed to inform Raab that R&W monies were being used for management costs that were neither disclosed nor approved by Raab. Wendel repeatedly represented to Raab that the Hotel needed capital contributions from Raab in order to meet expenses and conduct maintenance and repairs, which is contradicted by the Leo Affidavit at ¶ 4, the Hotel was "being properly run; the hotel is meeting its day-to-day operating expenses, except to Defendants Sand Hospitality, LLC;" and in the twelve months prior to July 14, 2014, the Hotel had "been out-performing its competitive set."

(ECF No. 87 at 26.) The plaintiffs further assert:

> Defendants used numerous intricate, fraudulent schemes using multiple
> businesses to conceal their actions from Plaintiffs, including, but not
> limited to: creating a series of interrelated companies and utilizing
> intercorporate accounting mechanisms and procedures to defraud
> Plaintiffs; representing that the Hotel was in need of capital contributions
> for expenses, maintenance and repairs, not using Raab's capital
> contributions for those intended purposes, and not disclosing to Raab how
> the capital contribution was utilized; obtaining insurance or load [sic]
> proceeds for the replacement of mattresses, furniture and pool repairs,
> and then utilizing the funds for different purposes contrary to the
> representations made to Plaintiff; utilizing R&W's bank accounts to make
> payments to Wendel-related entities, such as West Bend Hospitality, Inc.,
> in excess of $70,000; utilizing the accounting mechanisms and procedures
> to divert R&W funds as set forth in paragraphs 50 and 51 of the SAC,
> including all subparts; and entering into transactions and agreements for
> R&W without Raab's authorization. See also the Rodrigues Report.

(ECF No. 87 at 26-27 (quoting defendants' interrogatory response).)

These broad statements fall far short of the sort of specificity required to survive a motion for summary judgment. It is not the court's role to disentangle individual defendants from the pile into which the plaintiffs lump them and attempt to discern whether there might be evidence to sustain a claim against any particular defendant. It is the plaintiffs' obligation to present their specific allegations against each defendant; the court's role is merely to determine whether what the plaintiffs present is sufficient. The plaintiffs do not identify which specific defendant allegedly engaged in which racketeering activity, much less provide evidence from which a reasonable finder of fact could so find.

The only two defendants the plaintiffs specifically reference in responding to the defendants' argument are Michael Wendel and West Bend Hospitality, Inc. The plaintiffs refer to West Bend Hospitality only as an example of one of the "Wendel-related entities" to whom "Defendants" made payments. There is no basis for concluding that, by receiving some unspecified payments, West Bend Hospitality engaged in racketeering activity. *See Jubelirer v. Mastercard Int'l*, 68 F. Supp. 2d 1049, 1053 (W.D. Wis. 1999) ("the law is clear that merely having a business relationship with and performing services for such an enterprise, including financial, accounting and legal services, does not support RICO liability because performance of such services is not the equivalent of participation in the operation and management of the enterprise"); *see also Goren v. New Vision Int'l*, 156 F.3d 721, 728 (7th Cir. 1998) ("simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself").

As for their allegations against Wendel, again, the plaintiffs do not articulate how Wendel's alleged conduct constituted racketeering activity. For example, in recounting their allegations against Wendel, the plaintiffs never connect his alleged actions to any statute specified in 18 U.S.C. § 1961(1).

To the extent the plaintiffs are relying on ambiguous references to other documents (e.g., "… as set forth in paragraphs 50 and 51 of the SAC, including all subparts," or "See also the Rodrigues Report"), or otherwise expecting the court to cobble together evidence that they make a passing reference to in order to understand exactly what their argument is, it is not the role of the court to scour the record in an attempt to uncover relevant facts. "[A] lawsuit is not a game of hunt the peanut." *Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001).

Finally, unlike claims under § 1962(a) through (c), claims of conspiring to violate RICO, *see* § 1962(d), do not require the plaintiff to identify two predicate acts that each defendant allegedly engaged in. *See United States v. Glecier*, 923 F.2d 496, 500-01 (7th Cir. 1991). However, aside from reciting law generally applicable to RICO conspiracies, the plaintiffs do not develop any evidence that they contend supports their § 1962(d) claim. Rather, they assert, "As Plaintiffs have demonstrated, in Sections VIII and IX, supra, ample evidence exists from which a finder of fact could reasonably conclude Defendants engaged in a conspiracy, and thus violated § 1962(d)." (ECF No. 87 at 30.) In sections VIII and IX, the plaintiffs discuss their state law conspiracy claims (ECF No. 87 at 16-19), which are the fifteenth and sixteenth causes of action in their second amended complaint (ECF No. 17, ¶¶ 171-82). These state law claims are obviously distinct from a claim under § 1962(d). The plaintiffs having apparently conflated the claims and, having otherwise made no effort to support their claim that the defendants conspired to

violate RICO, the court concludes the defendants are entitled to summary judgment on the seventeenth, eighteenth, nineteenth, and twentieth causes of action of the second amended complaint.

### 3.2. Supplemental Jurisdiction

The plaintiffs' RICO claims were the sole basis for this court's subject matter jurisdiction. (ECF No. 1, ¶ 3.)[2] Without them, the court may to decline to exercise supplemental jurisdiction over the remainder of this action and remand it to state court. 28 U.S.C. § 1367(c)(3). In fact, it is "the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). The district court, when "considering the factors set forth in 28 U.S.C. § 1367(c), 'should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *Groce*, 193 F.3d at 501 (quoting *City of Chi. v. Int'l Coll. of Surge*ons, 522 U.S. 156, 173 (1997)). Neither party addresses this issue, either to request the court to remand the matter or to encourage the court to retain jurisdiction.

---

[2] The court does not appear to have jurisdiction under 28 U.S.C. § 1332 because, based on the allegations in the complaint, it appears plaintiff R&W is a citizen of both Wisconsin (by virtue of Raab's citizenship) and Minnesota (by virtue of the likely citizenship of Wendel Enterprises, LLC; the court lacks information as to the citizenship of Wendel Enterprises, but presuming one of its members is Michael Wendel, it is a citizen of Minnesota). Various defendants are also citizens of Minnesota; the court lacks sufficient information to determine the citizenship of certain defendant LLCs.

Weighing in favor of remand is the fact that this matter involves a novel question of state law—whether a minority owner of a limited liability company owes common law fiduciary duties to the majority owner. However, the court finds that concerns of judicial economy counsel against remand. This case has been pending since 2014. It is on its third court, having been originally filed in Waukesha County Circuit Court (ECF No. 1-3, ¶29), then transferred to Walworth County Circuit Court (*id.*), and then removed to federal court. It is time to bring it to a conclusion. This court has invested significant time educating itself on the parties' claims and is in position to set this matter for a relatively prompt trial. Therefore, the court will exercise its discretion and maintain jurisdiction over the state law claims that remain.

### 3.3. Plaintiffs' WOCCA Claims

Counts twenty-one, twenty-two, and twenty-three of the second amended complaint allege violations of the Wisconsin racketeering statute, Wis. Stat. § 946.83, commonly called the Wisconsin Organized Crime Control Act (WOCCA). As with the plaintiffs' federal racketeering claims, all three of their state racketeering claims are alleged against all defendants.

Both parties seem to acknowledge that the plaintiffs' state law racketeering claims rise or fall with their RICO claims. (ECF Nos. 67 at 26; 87 at 30.) Having found that the plaintiffs' RICO claims fail, the court will also grant summary judgment in

favor of the defendants with respect to the plaintiffs' WOCCA claims for the same reasons.

### 3.4. Misrepresentation

The third through fifth causes of action in the second amended complaint allege that: (3) intentional misrepresentation; (4) strict liability misrepresentation; and (5) negligent misrepresentation. All three claims allege that, "[b]ased upon an analysis of the incomplete electronic accounting records provided in 2016 by the Defendants, from 1998 through 2014 the Defendants made false representations to R&W and Raab regarding payments made from R&W to Michael, Wendel Entities, and Sand Entities, as set forth herein, knowing that said representations were untrue or recklessly made without caring whether said representations were untrue." (ECF No. 17, ¶¶ 97, 104, and 109.) The plaintiffs' intentional and strict liability misrepresentation claims allege that "[o]n or about 2012, Defendants Wendel Investments, [The Wendel Group], Sand Hospitality and/or Michael made false representations to R&W and Raab regarding the financial condition of the Hotel, repairs and maintenance expenditures and agreements entered into with Michael's other entities[.]" (ECF No. 17, ¶¶ 98 and 105.) Their negligent misrepresentation claim alleges that "Defendants Wendel Investments, [The Wendel Group], Sand Hospitality and/or Michael negligently disclosed or failed to disclose the material facts regarding the financial condition of the Hotel, repairs and

maintenance expenditures and agreements entered into with Michael's other entities[.]"
(ECF No. 17, ¶ 110.)

Three elements are common to all three forms of misrepresentation claims: "1)
the defendant must have made a representation of fact to the plaintiff; 2) the
representation of fact must be false; and 3) the plaintiff must have believed and relied
on the misrepresentation to his detriment or damage." *Tietsworth v. Harley-Davidson,*
*Inc.*, 2004 WI 32, ¶13, 270 Wis. 2d 146, 677 N.W.2d 233. In moving for summary
judgment, the defendants argue that the plaintiffs do not have any evidence that the
defendants made any false representation to the plaintiffs. (ECF No. 67 at 3, 4.)

The plaintiffs point to an alleged misrepresentation that occurred during a 2007
meeting following the merger between The Wendel Group and Sand Companies, Inc.—
that the hotel would continue to be managed in accordance with the 1998 Management
Agreement. In support, they cite only to the defendants' allegation in their counterclaim
that, "[a]t the time of the merger [in 2007, between The Wendel Group and Sand
Companies, Inc.], Michael C. Wendel ("Michael Wendel"), president of Wendel Group,
and Leo M. Sand ("Leo Sand"), then CEO, now chairman of Sand Companies, met with
Rudolph Raab and Rudolph Raab's spouse, Diane Raab, to discuss the merger. At that
meeting, it was agreed that Sand Companies would take over management of the East
Troy Hotel from Wendel Group under the terms of the 1998 Management Agreement."
(ECF No. 48 at 31, ¶ 4.)

Citing *Tibbs v. City of Chi.*, 469 F.3d 661, 663 n.2 (7th Cir. 2006), the defendants respond that "pleadings are not evidence." (ECF No. 95 at 1.) However, what the court in *Tibbs* actually said is, "the entire 'Statement of Facts' section of Tibbs's appellate brief cites only to his amended complaint; mere allegations of a complaint are not evidence." *Tibbs*, 469 F.3d at 663 n.2 (citing *Nisenbaum v. Milwaukee County*, 333 F.3d 804, 810 (7th Cir. 2003)); *but see Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir. 1996) (noting that, if made under oath, statements made in a complaint may constitute an affidavit for purposes of summary judgment). In other words, in *Tibbs* the non-movant plaintiff was relying on the allegations in *his own* pleadings to demonstrate the existence of a dispute of material fact. Here, the plaintiffs are relying on the *defendants'* allegations set forth in the *defendants'* pleading.

Not only is a defendant's statement in a counterclaim competent evidence on which a plaintiff may rely for purposes of summary judgment, it is "a judicial admission that can determine the outcome of that lawsuit." *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996); *see also Haynes v. Ind. Univ.*, 902 F.3d 724, 731 (7th Cir. 2018); *Jackson v. Marion Cty.*, 66 F.3d 151, 153 (7th Cir. 1995) ("Allegations in a complaint are binding admissions ...."). "A judicial admission trumps evidence." *Murrey v. United States*, 73 F.3d 1448, 1455 (7th Cir. 1996).

The plaintiffs denied the allegations which they now seek to use against the defendants. (ECF No. 49, ¶ 4.) But the defendants have not presented any authority

establishing that a judicial admission is negated if denied by the opposing party. Therefore, for purposes of summary judgment, the court accepts that the defendants have admitted that "[a]t [the 2007] meeting, it was agreed that Sand Companies would take over management of the East Troy Hotel from Wendel Group under the terms of the 1998 Management Agreement." (ECF No. 48 at 31, ¶ 4.) Given the evidence presented, a reasonable finder of fact could conclude that this statement was false.

However, this admission by the defendants does not support a misrepresentation claim against all defendants, as the plaintiffs purport to allege in their second amended complaint. At best, it would support a claim against Wendel and Sand. Neither side suggests that Wendel or Sand made this representation in their capacity as representatives of any corporation or company, and thus the court must conclude this claim may be sustained against Wendel and Sand personally. Therefore, the court will deny the defendants' motion for summary judgment on the plaintiffs' misrepresentation claims (the third, fourth, and fifth causes of action) as regards Wendel and Sand but grant it as to all other defendants.

### 3.5. Conversion

The sixth cause of action in the plaintiffs' second amended complaint alleges that "[d]efendants procured R&W property without R&W's consent or authorization []" and "for their own benefit without R&W's consent or authorization." (ECF No. 17, ¶¶ 115-16.) As a result, plaintiffs were harmed. (*Id.*, ¶ 117.)

"Under Wisconsin law, the tort of 'conversion is often defined as the wrongful exercise of dominion or control over a chattel, and conversion may result from a wrongful taking or a wrongful refusal to surrender property originally lawfully obtained.'" *Eastman Indus. v. Norlen Inc.*, 538 F. Supp. 2d 1069, 1071 (W.D. Wis. 2008) (quoting *Production Credit Assosication v. Nowatzski*, 90 Wis. 2d 344, 354, 280 N.W.2d 118, 123 (1979)) (brackets omitted). A plaintiff alleging conversion must prove three things: (1) intentional control or taking of property belonging to another; (2) without that person's consent; (3) which resulted in serious interference with that person's right to possess the property. *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 773 (7th Cir. 2013) (citing *H.A. Friend & Co. v. Prof. Stationery, Inc.*, 2006 WI App 141, 294 Wis. 2d 754, 720 N.W.2d 96, 100; *Methodist Manor of Waukesha, Inc. v. Martin*, 2002 WI App 130, 255 Wis. 2d 707, 647 N.W.2d 409, 412). "The thing that the defendant diverts to his or her own use need not, however, be a chattel; money may also be converted." *Methodist Manor of Waukesha*, 2002 WI App 130, ¶7 (citing *Regas v. Helios*, 176 Wis. 56, 59, 186 N.W. 165, 166 (1922) ("Although it has been sometimes held that money is not the subject of conversion, it is not the rule in this state.")).

In moving for summary judgment, the defendants argue that the only evidence the plaintiffs have mustered regarding their conversion claim is that certain transactions are "questionable." (ECF No. 67 at 4.) Even the plaintiffs' own expert witness could not conclude that any defendant converted assets of R&W. (ECF No. 67 at 4.)

The plaintiffs respond that they have shown that at least $64,000 was improperly paid to Sand Companies and affiliates for matters not authorized under the 1998 management agreement. (ECF No. 87 at 4.) Moreover, Wendel directed R&W to make payments to himself, without Raab's consent, despite the fact that R&W was never profitable. (ECF No. 87 at 5.)

In reply, the defendants assert that the plaintiffs offer only the declaration of Paul A. Rodrigues, a forensic accountant whose report the court previously excluded. (ECF No. 95 at 2); *see also Raab v. Wendel*, No. 16-CV-1396, 2017 U.S. Dist. LEXIS 217704 (E.D. Wis. Dec. 18, 2017). Additionally, Raab received R&W's bank statements and did not object to the company's finances. (ECF No. 95 at 2-3.)

Although the court previously granted the defendants' motion to exclude Rodrigues from offering his opinion as an expert, the court did not foreclose Rodrigues from testifying as a fact witness as to what he found in the documents he reviewed. *Raab*, 2017 U.S. Dist. LEXIS 217704, *18. Rodrigues offered a summary of certain of these findings, noting, for example, that R&W was charged fees such as a "payroll administrative fee," a "water damage administrative fee," and a "system administrator upcharge." (ECF No. 79-1 at 1.) The plaintiffs allege that these fees were not authorized under the parties' 1998 management agreement.

The court finds the plaintiffs have presented evidence from which a reasonable finder of fact could return a verdict in favor of the plaintiffs on this claim. The charging

of unauthorized fees may constitute conversion under the circumstances presented by the plaintiffs. *Cf. Office of Lawyer Regulation v. Gatzke (In re Gatzke)*, 2016 WI 37, ¶46, 368 Wis. 2d 422, 878 N.W.2d 668 (quoting *In re Disciplinary Proceedings Against Mulligan*, 2015 WI 96, P36, 365 Wis. 2d 43, 870 N.W.2d 233) (holding that retention of unearned fees is an example of conversion).

Although the portion of the defendants' reply addressing the conversion claim is titled "No Evidence of Intent to Convert" (ECF No. 95 at 2), they do not develop any argument as to intent. In the absence of any argument from the defendants, the court accepts that, if the plaintiffs can prove that the defendants charged R&W fees that were not authorized under the 1998 management agreement, then the finder of fact could reasonably conclude the defendants acted intentionally.

Moreover, a reasonable finder of fact could conclude that the defendants' alleged interference with property belonging to R&W seriously interfered with plaintiffs' right to possess the money. There is no indication that the defendants' possession of R&W property was somehow temporary or transitory; the finder of fact could conclude the defendants intended to permanently possess R&W's property.

Finally, to the extent that the defendants' observation that "it is undisputed that Raab received R&W bank information directly, but never expressed any objections concerning R&W's finances" (ECF No. 95 at 2-3) might be construed as an argument that R&W consented to the defendants' actions, the court finds a dispute of material fact

on this point precludes summary judgment for the defendants on the plaintiffs' sixth cause of action.

### 3.6. Theft by Contractor

In their seventh cause of action the plaintiffs allege that they provided money to the defendants that the defendants were to use to pay for hotel repairs and maintenance. However, according to the plaintiffs, the defendants did not use those funds for repairs and maintenance, thereby violating Wis. Stat. § 799.02(5). (ECF No. 17, ¶¶ 119-123.) Specifically, the plaintiffs allege that a 2010 loan included funds intended for a repair of the hotel pool, but instead of using those monies for the pool repair the defendants used them to pay property taxes. (ECF No. 87 at 5.)

Entitled "Theft By Contractors," section 779.02(5) of the Wisconsin Statutes provides in relevant part:

> [A]ll moneys paid to any prime contractor or subcontractor by any owner for improvements, constitute a trust fund only in the hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor, services, materials, plans, and specifications used for the improvements, until all the claims have been paid[.]

*See also Kraemer Bros., Inc. v. Pulaski State Bank*, 138 Wis. 2d 395, 399-400, 406 N.W.2d 379, 381 (1987). "[T]hose funds [may] be used only for payments 'for labor and materials used' in performing the contract." *Capital City Sheet Metal, Inc. v. Voytovich*, 217 Wis. 2d 683, 689, 578 N.W.2d 643, 645 (Ct. App. 1998) (quoting Wis. Stat. § 779.02(5)). A contractor cannot use funds held in trust for the payment of the contractor's other

expenses. *See State v. Keyes*, 2008 WI 54, ¶32, 309 Wis. 2d 516, 750 N.W.2d 30 (citing

*Capen Wholesale, Inc. v. Probst*, 180 Wis. 2d 354, 509 N.W.2d 120 (Ct. App. 1993) (money

used to pay general corporate expenses); *State v. Sobkowiak*, 173 Wis. 2d 327, 496 N.W.2d

620 (Ct. App. 1992) (money from one project used to pay car payments and expenses

from other projects); *Burmeister Woodwork Co. v. Friedel*, 65 Wis. 2d 293, 222 N.W.2d 647

(1974) (money used for general business expenses); *Pauly v. Keebler*, 175 Wis. 428, 185

N.W. 554 (1921) (money used to pay contractor's living expenses)).

In moving for summary judgment, the defendants argue that Wisconsin's theft-

by-contractor statute does not fit the facts of this case: they are not prime contractors or

subcontractors, and there are no subcontractors or material suppliers that remain

unpaid for hotel improvements. (ECF No. 67 at 5-9.) In opposing the motion, the

plaintiffs contend that the use of the loan to pay for property taxes rather than pool

repairs "creates an issue of material fact regarding whether Defendants took R&W

monies that were to be used for one purpose (pool repairs) and misappropriated the

monies." (ECF No. 87 at 5-6.)

The facts alleged by the plaintiffs would not satisfy the elements of a theft by

contractor claim as set forth in Wisconsin's pattern jury instruction. *See* Wis. JI-Civil

2722. The jury instruction summarizes the elements of a claim as follows:

> Theft by contractor, as defined in §779.02(5) of the Wisconsin
> Construction Lien Law is committed by one who, under an agreement for
> the improvement of land, receives money from the owner, and who,
> without consent of the owner, contrary to his or her authority,

intentionally uses any of the money for any purpose other than the payment of claims due or to become due from the defendant for labor or materials used in the improvements before all claims are paid [in full] [proportionally in case of a deficiency].

*Id.; see also Paulsen Lumber, Inc. v. And*erson, 91 Wis. 2d 692, 695, 283 N.W.2d 580, 581-82 (1979) (identifying the four elements of a theft-by-contractor claim as: "The purchase of the materials, their receipt, the payment for the materials by the owner or mortgagee of the property under construction, and the use for another purpose by the contractor of the trust fund intended for the satisfaction of the supplier's claims").

There were no "claims due or to become due from the defendant for labor or materials used in the improvements" because The Wendel Group apparently never hired a subcontractor to do any work. A contractor taking money and never doing the contracted work may be liable in tort, but it is not the sort of conduct covered by Wisconsin's theft by contractor statute and does not result in the sort of unique harm the statute was intended to address.

Additionally, the plaintiffs have failed to present evidence that would support a finding in their favor as to the final element of a theft by contractor claim as set forth in Wisconsin's pattern jury instruction: "Fifth, (Plaintiff) suffered a monetary loss as a result of (Defendant)'s use of the money." Wis. JI-Civil 2722. The plaintiffs allege that the money allocated to the pool repair was instead used by The Wendel Group to pay property taxes. The plaintiffs do not explain how The Wendel Group using funds

informally earmarked for a particular project to instead satisfy another of R&W's obligations resulted in a monetary loss to the plaintiffs. Therefore, the defendants are entitled to summary judgment as to the seventh cause of action, plaintiffs' theft by contractor claim.

### 3.7. Civil Theft

Plaintiffs' eighth cause of action is entitled, "Civil Theft in Violation of Wisconsin Statutes §§ 779.02(5), 895.446 and 943.20." In their civil theft claim, the plaintiffs allege that the defendants "are intentionally concealing or have converted Plaintiffs' property for the Defendants' use and benefit without Plaintiffs' permission or authorization." (ECF No. 17, ¶ 126.) Specifically, they allege that "Defendants used money provided by R&W and/or Raab, which was designated for the parties providing Hotel repairs and maintenance and held in trust by the Defendants, for the Defendants' benefits, contrary to the R&W Operating Agreement, Management Consulting Agreement and in violation of Wisconsin Statute § 779.02(5)." (*Id.*, ¶ 127.) Among other things, they seek three times the amount of actual damages awarded. (*Id.*, ¶ 130.)

Both sides seek summary judgment on plaintiffs' civil theft claim. The plaintiffs argue that there is no dispute that Wendel controlled R&W's checking account and used that control to pay money to Sand Companies that exceeded the amount agreed to in the 1998 management agreement. (ECF No. 76 at 11-12.) The defendants argue that the facts do not add up to a claim for theft because it is undisputed that under the 1998

management agreement The Wendel Group was authorized to "do all things …
necessary or convenient to the management, administration and operation of the
[Hotel]." (ECF No. 95 at 4 (quoting ECF No. 17-2, § 1(q)).)

The question is whether under Wis. Stat. § 895.446, which authorizes civil actions
for certain criminal offenses, either party is entitled to summary judgment. One such
criminal offense is Wisconsin's general theft statute, Wis. Stat. § 943.20.[3] A person
violates Wis. Stat. § 943.20(1)(b) if he,

> [b]y virtue of his or her office, business or employment, or as trustee or
> bailee, having possession or custody of money or of a negotiable security,
> instrument, paper or other negotiable writing of another, intentionally
> uses, transfers, conceals, or retains possession of such money, security,
> instrument, paper or writing without the owner's consent, contrary to his
> or her authority, and with intent to convert to his or her own use or to the
> use of any other person except the owner.

Wis. Stat. § 943.20(1)(b).

Disputes of material fact preclude summary judgment for either the plaintiffs or
the defendants on this claim. Although the parties' 1998 management agreement
capped the management and performance fee at three percent of the monthly gross
revenues of the property (ECF No. 1-5, § 6. d.), it also entitled The Wendel Group to
reimbursement for certain other expenses (ECF No. 1-5, §§ 4., 7). The parties' agreement

---

[3] Wisconsin's theft by contractor statute, Wis. Stat. § 779.02(5), is not one of the criminal statutes for which
a cause of action is authorized under Wis. Stat. § 895.446. Thus, it is unclear what the plaintiffs' basis was
for alleging in the second amended complaint a claim of theft by contractor claim in conjunction with
Wis. Stat. § 895.446. In any event, in response to the defendants' motion for summary judgment the
plaintiffs refer to only Wis. Stat. §§ 895.446 and 943.20(1)(b). (ECF No. 87 at 6-7.)

is subject to interpretations such that, at a minimum, a dispute of material fact exists as to whether The Wendel Group's expenditures that the plaintiffs allege constitute theft were done with the intent to convert the money to Michael Wendel's own use.

Questions of intent usually are not appropriately resolved at summary judgment. *Bagley v. Blagojevich*, 646 F.3d 378, 389 (7th Cir. 2011). This is not a case where the court has unrebutted evidence that the defendants acted with the requisite intent. *See In re Kontrick*, 295 F.3d 724, 737 (7th Cir. 2002). Conversely, the court is unable to conclude that the plaintiffs have wholly failed to muster evidence from which a reasonable finder of fact could conclude that the defendants acted with the necessary intent. *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992). Therefore, the court must deny both the plaintiffs' and defendants' motions for summary judgment as to the eighth cause of action in the second amended complaint. In discussing this claim the parties have not differentiated between the defendants. As such, no basis exists for the concluding that it is appropriate to grant summary judgment as to any particular defendant.

### 3.8. Plaintiffs' Claim that the 2012 Management Agreement is Void

The ninth cause of action in the plaintiffs' second amended complaint, purportedly against all defendants, seeks a declaration that the hotel management agreement entered into in 2012 between Wendel Investments and/or Michael Wendel and Sand Hospitality is void and unenforceable. Specifically, plaintiffs allege that "Wendel Investments and/or Michael did not have the legal right, title or interest in to

act on behalf of R&W, and therefore had not [sic] right, authority or power to enter into the Hotel Management Agreement with Sand Hospitality." (ECF No. 17, ¶ 132.)

In moving for summary judgment the plaintiffs argue that the 2012 management agreement is void because it was signed on behalf of R&W by Wendel alone, and he lacked the authority to bind R&W. The plaintiffs point to the operating agreement, which states that "[t]he affirmative vote, approval or consent of all of the Members is necessary to … authorize the Members or other persons to do any act on behalf of the Company that contravenes this Agreement or any other agreement to which the Company is a party." (ECF No. 17-1 at 15, § 7.2(b)(vi).) The plaintiffs contend that the 2012 management agreement contravened the 1998 management agreement. Therefore, all of the members of R&W, *i.e.*, Raab and Wendel Enterprises, LLC., were required to approve the new agreement.

Wendel responds, in part, that other provisions of the operating agreement explicitly authorized any member to unilaterally enter into such agreements. For example, the operating agreement authorized a member to "employ such persons, firms and corporations and fix their compensation as may be reasonably necessary … to carry on the business and accomplish the purposes of the Company." (ECF No. 17-1 at 13, § 7.1(a)(vii).)

Whether the 2012 agreement was "reasonably necessary … to carry on the business and accomplish the purposes of the Company," or whether it "contravenes …

any other agreement to which the Company is a party," involves questions of fact the court cannot resolve on summary judgment. Therefore, the court cannot find as a matter of law that the 2012 agreement was void. As such, the plaintiffs' motion for summary judgment on the ninth cause of action is denied.

### 3.9. Plaintiffs' Breach of Contract Claim

The nature and extent of the plaintiffs' tenth cause of action, entitled "Breach of Contract," is unclear. This single cause of action appears to contain three separate claims derived from three separate contracts. First, a claim is asserted for breach of the R&W operating agreement. (ECF No. 17, ¶¶ 137-40.) Second, a claim is asserted for breach of the 1998 management agreement. (ECF No. 17, ¶¶ 141-44.) And, third, should it be found valid, a claim is asserted for breach of the 2012 management agreement. (ECF No. 17, ¶¶ 145-47.)

As the plaintiffs do with nearly all of their claims, they allege that this cause of action is against "All Defendants." But the only defendants that were parties to any contracts with either of the plaintiffs were Wendel Investments, Inc. and Wendel Enterprises, LLC (as parties to the R&W LLC operating agreement), The Wendel Group (as party to the 1998 management agreement), and Sand Hospitality (as party to the 2012 management agreement).

The defendants seek summary judgment on this claim only insofar as it purports to assert a breach of contract claim against defendants with whom neither plaintiff had

a contractual relationship. Specifically, they argue that the claim "is based on the 1998 Management Agreement between R&W and Wendel Group, Inc., or alternately, the 2012 Management Agreement between R&W and Sand Hospitality." (ECF No. 67 at 27.) As such, they argue, the plaintiffs cannot maintain a breach of contract claim against any defendant who is not a party to either of these two contracts. (*Id.*)

In response, the only entities the plaintiffs specifically identify as defendants on their breach of contract claim are The Wendel Group and Sand Hospitality—i.e., the parties to the two management agreements. The plaintiffs argue that the breach of contract claim "should not be dismissed against any defendant in privity with Wendel Group or Sand Hospitality, or any defendant who is the alter ego of Wendel Group or Sand Hospitality." (ECF No. 87 at 7.) The plaintiffs do not suggest that their breach of contract claim is made against Wendel Enterprises, LLC—i.e., the party to the R&W LLC agreement. Thus, to the extent the tenth cause of action in the second amended complaint alleged that Wendel Enterprises, LLC (or for that matter, Wendel Investments, Inc.) breached the R&W LLC agreement, the plaintiffs abandoned that claim by failing to address it in response to the defendants' motion for summary judgment. Consequently, only R&W is a proper plaintiff as to this claim. Raab was not a party to the two contracts that were allegedly breached.

Other than presenting it in a heading, the plaintiffs do not develop a privity argument—that is, that any defendant in privity with The Wendel Group or Sand

Hospitality is liable for breach of contract. Therefore, the court does not consider it. The plaintiffs' alter ego argument is not much more developed. (ECF No. 87 at 7-8.) The alter ego doctrine requires the plaintiffs to prove the following:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and

> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Consumer's Co-op v. Olsen*, 142 Wis. 2d 465, 484, 419 N.W.2d 211, 217-18 (1988).

The plaintiffs fail at the first element. They argue, "except as provided in the 1998 Operating Agreement, Wendel, through Wendel Group, and subsequently Sand Companies and Sand Hospitality, exercised complete control over the Hotel's day-to-day operations and finances." (ECF No. 87 at 7-8.) But whether any defendant controlled the operations of the hotel is irrelevant to the question of whether one defendant was an alter ego of another. The defendants' control of the hotel might be relevant if the question was whether they were the alter egos of the hotel, *i.e.,* R&W, but that is not the question. Therefore, the court agrees with the defendants that the plaintiffs' breach of contract claim is asserted against only The Wendel Group and Sand

Hospitality, and relate only to alleged breaches of the 1998 and 2012 management agreements.

In moving for summary judgment on their breach of contract claim, the plaintiffs allege that The Wendel Group "continuously charged R&W fees in excess of the fees allowed in the 1998 Management Agreement." (ECF No. 76 at 8.) In part, this argument depends on the plaintiffs' claim that the 2012 management agreement is void. Because, as stated above, disputes of material fact preclude the court from finding that the 2012 agreement is void, the court cannot find as a matter of law that The Wendel Group overcharged R&W.

To the extent the tenth causes of action purports to allege a claim against Sand Hospitality, Leo Sand and/or Sand Entities for breaching the 2012 agreement, in moving for summary judgment the plaintiffs do not discuss that claim. As a result, no basis exists for awarding summary judgment to the plaintiffs on any such claim.

Thus, the court finds that summary judgment for the plaintiffs as to any aspect of this claim is not appropriate. The defendants' motion for summary judgment on the breach of contract claim is granted, and the claim is dismissed as to all defendants other than The Wendel Group and Sand Hospitality.

### 3.10. Breach of Fiduciary Duty

In their eleventh cause of action plaintiffs allege that "Wendel Investments, [The Wendel Group Inc.], and/or Michael ha[d] a fiduciary duty to act in the best interests of

R&W and Raab." (ECF No. 17, ¶ 149.) The plaintiffs claim that, by diverting R&W assets for the defendants' benefit, these defendants breached their fiduciary duty to act in the best interests of R&W. (ECF No. 17, ¶ 151.) Additionally, "[i]n the event that the Court determines that the Hotel Management Agreement with Sand Hospitality is valid and enforceable," the plaintiffs allege that "Leo Sand and Sand Entities breached their fiduciary duties to act in the best interest of R&W and Raab by diverting R&W assets for the Defendants' benefit and in violation of the best business interest of R&W and Raab." (ECF No. 17, ¶¶ 153-54.)

In seeking summary judgment on this claim, the defendants allege that no fiduciary relationship existed between any defendant and any plaintiff. (ECF No. 67 at 10-12.)

### 3.10.1. Fiduciary Relationship Pursuant to Contract

The plaintiffs argue that the 1998 Operating Agreement "created a fiduciary relationship between Wendel, Wendel's company and Raab." (ECF No. 87 at 9.) Specifically, the plaintiffs point to section 7.1(c), which states, "[t]he Members shall manage and control the business of the Company in accordance with generally accepted business standards and devote such time to the Company business as shall be reasonably required," and section 7.1(d), which provides, "[t]he Members and its owners, directors and officers shall not be liable, responsible or accountable in damages or otherwise to the Company or to any Member for any acts performed or omitted by

them in *good faith* except for acts or omissions which constitute gross negligence or willful misconduct." (emphasis added). (ECF No. 87 at 9-10.)

As the defendants point out in reply, the plaintiffs conflate the duty of good faith with a fiduciary duty. (ECF No. 95 at 5.) It is true that a fiduciary duty encompasses a duty to act in good faith. *Zastrow v. Journal Communs., Inc.*, 2006 WI 72, ¶36, 291 Wis. 2d 426, 718 N.W.2d 51. But the obligation to act in good faith, which is inherent in every contract, *Runzheimer Int'l, Ltd. v. Friedlen*, 2015 WI 45, ¶82, 362 Wis. 2d 100, 862 N.W.2d 879, does not equate to a fiduciary duty, which generally arises in the context of someone who has accepted a position of authority with regard to the affairs of another. *Zastrow*, 2006 WI 72, ¶25. A contract creates a fiduciary obligation only if "there is an express agreement placing a greater obligation on the party agreeing to act for the benefit of the other, such as a trust agreement." *Jackson v. McKay-Davis Funeral Home, Inc.*, 830 F. Supp. 2d 635, 648 (E.D. Wis. 2011) (citing *Merrill Lynch, Pierce, Fenner & Smith v. Boeck*, 127 Wis.2d 127, 136, 377 N.W.2d 605, 609 (1985)). "A contract, standing alone, is insufficient to create a fiduciary duty." *Jackson v. McKay-Davis Funeral Home, Inc.*, 830 F. Supp. 2d 635, 648 (E.D. Wis. 2011). Stated another way—every fiduciary duty includes a duty to act in good faith, but not every duty to act in good faith creates a fiduciary duty. And every contract includes a duty of good faith but not necessarily a fiduciary duty.

The fact that the 1998 Operating Agreement protected the parties from liability provided they acted in good faith did not somehow impose fiduciary duties on the parties relative to each other.

### 3.10.2. Breach of Statutory Duties

Wisconsin's limited liability company statute imposes specific duties on managers and members:

Unless otherwise provided in an operating agreement:

(1) No member or manager shall act or fail to act in a manner that constitutes any of the following:

> (a) A willful failure to deal fairly with the limited liability company or its members in connection with a matter in which the member or manager has a material conflict of interest.

> (b) A violation of criminal law, unless the member or manager had reasonable cause to believe that the person's conduct was lawful or no reasonable cause to believe that the conduct was unlawful.

> (c) A transaction from which the member or manager derived an improper personal profit.

> (d) Willful misconduct.

(2) Every member and manager shall account to the limited liability company and hold as trustee for it any improper personal profit derived by that member or manager without the consent of a majority of the disinterested members or managers, or other persons participating in the management of the limited liability company, from any of the following:

> (a) A transaction connected with the organization, conduct or winding up of the limited liability company.

(b) A use by a member or manager of the property of a limited liability company, including confidential or proprietary information or other matters entrusted to the person as a result of the person's status as member or manager.

(3) An operating agreement may impose duties on its members and managers that are in addition to those provided under sub. (1).

Wis. Stat. § 183.0402 (2015-2016).

In their motion for summary judgment, the plaintiffs allege that Wendel Enterprises, LLC and Mike Wendel breached their obligations imposed under this statute—specifically, by Wis. Stat. § 183.0402(1)(a) and (c). (ECF No. 76 at 9.) The plaintiffs seek summary judgment on this claim. (ECF No. 76 at 9-10.) However, as the defendants point out in response, no such claim is included in the plaintiffs' second amended complaint. (ECF No. 84 at 19.) The second amended complaint makes no reference whatsoever to Wis. Stat. § 183.0402. It does not quote or even paraphrase its provisions. Nor does it ever suggest that the fiduciary duties that the plaintiffs allege all defendants have violated are found in Wisconsin statutory law.

The plaintiffs reply that "[s]tatutory duties are encompassed by the more general 'fiduciary duties' claim that Defendants admit was pled …." (ECF No. 99 at 6.) The statutory obligations have occasionally (although not universally) been referred to as "fiduciary duties." *See, e.g., MRO Indus. Sales, LLC v. Carhart-Halaska Int'l LLC*, No. 14-MC-23-JPS, 2014 U.S. Dist. LEXIS 91290, at *6 (E.D. Wis. July 3, 2014); *Bourne v. Quarles & Brady, LLP*, 2013 WI App 128, 351 Wis. 2d 225, 838 N.W.2d 866 (unpublished); *Berndt*

*v. Berndt*, 2013 WI App 55, , ¶¶ 1, 19, 347 Wis. 2d 548, 830 N.W.2d 722 (unpublished);

*Glenn Seed Ltd. v. Vannet*, No. 09-cv-309-slc, 2009 U.S. Dist. LEXIS 119177, at *11-14 (W.D.

Wis. Dec. 21, 2009); *see also* Joseph W. Boucher *et al.*, *LLCs and LLPs: A Wisconsin*

*Handbook* § 1.18 (6th ed. 2018) ("[T]he default rules of Wis. Stat. § 183.0402 of the

WLLCL incorporate typical fiduciary duties for both members and managers pertaining

to fair dealing, improper personal profit, and self-dealing."); Collin D. Brunk,

Comment, *Polishing Up Wisconsin's Fiduciary Duties in LLC Law to Attract New Suitors*,

101 Marq. L. Rev. 863, 880-881 (2018); *but see Hebl v. Windeshausen (In re Windeshausen)*,

568 B.R. 299, 306 (Bankr. W.D. Wis. 2017) ("Wis. Stat. § 183.0402 … does not say that

members of an LLC are fiduciaries. … [The statute's] requirements are not fiduciary

obligations imposed by law. Instead, they are at most a basis for the possible

implication of certain fiduciary duties."). To avoid confusion, the court refers to the

obligations imposed by Wis. Stat. § 183.0402 as "statutory duties" and obligations

arising under common law as "fiduciary duties."

A reader of the second amended complaint would not understand the plaintiffs'

generic references to fiduciary duty as encompassing the specific statutory duties found

in Wis. Stat. § 183.0402. Rather, a reader would understand the eleventh cause of action

as alleging a common law breach of fiduciary duty claim.

The plaintiffs have had ample opportunities to amend their complaint; in fact,

they did so twice. But never did they include a claim that any defendant violated Wis.

Stat. § 183.0402. Although a plaintiff may constructively amend a complaint, the plaintiffs do not allege they have done so. In any event, such amendments are permitted only with the consent of the opposing party. *Hutchins v. Clarke*, 661 F.3d 947, 957 (7th Cir. 2011); *see also Torry v. Northrop Grumman Corp.*, 399 F.3d 876, 877-79 (7th Cir. 2005); Fed. R. Civ. P. 15(b) ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings."). The plaintiffs offer no evidence that the defendants ever consented. The fact that the defendants urge the court to deny the plaintiffs' motion on the ground that statutory claims were not included in the second amended complaint suggests they did not consent. *See Blakes v. Ill. Bell Tel. Co.*, 75 F. Supp. 3d 792, 805 (N.D. Ill. 2014). Nor is there any hint that, through other proceedings in this litigation, the defendants otherwise consented to the plaintiffs constructively amending their complaint to add a claim under Wis. Stat. § 183.0402. *Cf. Torry v. Northrop Grumman Corp.*, 399 F.3d 876, 879 (7th Cir. 2005) ("The defendant went through four years of discovery and other pretrial maneuverings without objecting to the fact that its opponent was patently engaged in endeavoring to prove racial as well as age discrimination. No more was required to satisfy Rule 15(b).")

No claim for a violation of Wis. Stat. § 183.0402(1)(a) and (c) is before this court. Consequently, there is no basis for granting summary judgment in the plaintiffs' favor on any such claim.

### 3.10.3. Common Law Fiduciary Duty of LLC Members

Thus, the court turns to the claim that was alleged in the second amended complaint—a claim for breach of the common law fiduciary duty. It is this court's obligation to apply the law as it believes the Wisconsin Supreme Court would. *Doermer v. Callen*, 847 F.3d 522, 527 (7th Cir. 2017). If the Wisconsin Supreme Court has never decided a particular issue, this court considers the decisions of other Wisconsin courts as persuasive authority as to how the Wisconsin Supreme Court would decide the issue. *Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 741 (7th Cir. 2016). In the absence of any Wisconsin authority on an issue, the court may look to other jurisdictions that have addressed the issue, but always with the aim of predicting how the Wisconsin Supreme Court would decide the issue. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999).

The Wisconsin Supreme Court has never decided whether members of a limited liability company owe fiduciary obligations to the other members. The closest that court came to addressing the issue was in *Gottsacker v. Monnier*, 2005 WI 69, ¶45 and n. 13, 281 Wis. 2d 361, 697 N.W.2d 436. In *Gottsacker*, the Wisconsin Court of Appeals had concluded that members of a limited liability company *did* owe each other a fiduciary duty. *Gottsacker v. Monnier*, 2004 WI App 25, ¶15, 269 Wis. 2d 667, 676 N.W.2d 533 (citing Joseph W. Boucher *et al., LLCs and LLPs: A Wisconsin Handbook* (rev. ed. 1999) at § 1.19).

On appeal, the Supreme Court reversed the Court of Appeals. However, it did not determine whether members of a limited liability company owe each other a fiduciary duty. Nonetheless, a concurrence by Justice Roggensack and joined by Justice Wilcox stated that, because the rights and obligations of members are set forth in statute, it is improper to engraft common law fiduciary duties on the members. 2005 WI 69, ¶45 and n. 13.

In Wisconsin, a Court of Appeals decision overruled by the Wisconsin Supreme Court has no precedential value, *Blum v. 1st Auto & Cas. Ins. Co.*, 2010 WI 78, ¶46, 326 Wis. 2d 729, 786 N.W.2d 78, even if the Wisconsin Supreme Court did not explicitly overrule the particular point of law stated in the court of appeals' decision, *Otto v. Eau Claire Cty.*, 2012 WI App 62 n.3, 341 Wis. 2d 491, 815 N.W.2d 407 (unpublished). Thus, the finding of the court of appeals in *Gottsacker* that members of a limited liability company owe each other a fiduciary duty is of no precedential value.

The Wisconsin Supreme Court subsequently had another opportunity to determine whether members of a limited liability company owe fiduciary obligations to each other. In *Smith v. Kleynerman*, 2017 WI 22, 374 Wis. 2d 1, 892 N.W.2d 734, the owner of a fifty percent interest in a limited liability company sued the company's other fifty percent owner, alleging breach of fiduciary duty in connection with the sale of the company's assets, *Smith v. Kleynerman*, 2016 WI App 57, ¶ 1, 370 Wis. 2d 786, 882 N.W.2d 870, 2016 Wisc. App. LEXIS 367 (per curiam) (unpublished). The jury found in

favor of the plaintiff and awarded him $499,000 in compensatory damages. *Id.* at ¶ 2. The defendant appealed, arguing he did not owe his co-owner a fiduciary duty. The court of appeals affirmed, stating that, "[u]nder the facts of this case, by virtue of being a corporate officer of [the limited liability company], [defendant] owed a fiduciary duty to [plaintiff] in conducting corporate business[.]" 2017 WI 22, ¶ 24, 370 Wis. 2d at 4. The Wisconsin Supreme Court accepted the case but divided equally, affirming the decision without decision. *Smith v. Kleynerman*, 2017 WI 22, 374 Wis. 2d 1, 892 N.W.2d 734.

Aside from the Wisconsin courts, at least one federal court in this district addressed the issue of whether members of a limited liability company owe fiduciary duties. In *Exec. Ctr. III, LLC v. Meieran*, 823 F. Supp. 2d 883, 892 (E.D. Wis. 2011), the plaintiff, a third-party creditor of the defendant limited liability company, was owed money by the company, which was insolvent. According to the plaintiff, the company would have been able to pay if it had not paid off an alleged debt owed to one of its own members. Among other things, the plaintiff alleged that the company owed it a fiduciary duty by virtue of its insolvency, and the company's payment to its member breached that fiduciary duty. *Id.* at 884.

The court rejected the view of the concurring justices in *Gottsacker* that, merely because limited liability companies were creatures of statute, common law duties should not apply. It noted that corporations were also created by statute, yet common law fiduciary obligations have long applied to them. *Meieran*, 823 F. Supp. 2d at 891.

Concluding that "common law fiduciary duties apply to limited liability companies," the court relied on "logic" and what it characterized as a "growing consensus that common law fiduciary duties should apply to the operations of LLCs." *Id.* at 891-92 (citing cases from Indiana, Kentucky, California, Connecticut, and Idaho). It noted that "[f]iduciary duties exist to protect people who are affected by the actions of those who control businesses. Therefore, it would not make any sense if the expectation for a business to act fairly were to be different simply due to the business owners' choice of form—an LLC, in this case. If that were so, every dishonest owner could simply elect to operate its business as an LLC and claim that no fiduciary duties applied to its actions." *Id.* at 892 (internal citation omitted).

Relying on *Meieran*, the plaintiffs here argue that a fiduciary relationship exists as between members of a limited liability company. (ECF No. 87 at 9 (citing *Meieran*, 823 F. Supp. 2d at 890).) The defendants respond that, at most, only majority members of a limited liability company would owe a fiduciary duty to minority members. (ECF No. 95 at 5 (citing *Prod. Credit Ass'n of Lancaster v. Croft*, 143 Wis. 2d 746, 754, 423 N.W.2d 544, 547 (Ct. App. 1988); *Starsurgical Inc. v. Aperta, LLC*, 40 F. Supp. 3d 1069, 1077 (E.D. Wis. 2014)).

*Meieran* did not address the question at issue here—whether members of a limited liability company owe a fiduciary duty to each other. Rather, concerned that a third-party might receive different protections based on the form of the entity with

which it transacts business, the court in *Meieran* concluded that the same common law fiduciary obligations that govern corporations should apply to limited liability companies.

*Smith* is also distinguishable. The court of appeals' decision was a product of the fact that the defendant had conceded at trial that he was a "corporate officer" and did not object to the jury instructions sought to challenge on appeal. Thus, the court of appeals decided that case by relying on caselaw regarding the obligations of corporate officers vis-à-vis corporations rather than by assessing the obligations amongst the members of a limited liability company. *Smith*, 2016 WI App 57, ¶¶ 24-26 (quoting *Modern Materials, Inc. v. Advanced Tooling Specialists, Inc.*, 206 Wis. 2d 435, 442, 557 N.W.2d 835 (Ct. App. 1996)).

The present case is most like *Gottsacker*. The court in *Meieran* distinguished *Gottsacker* on the ground that *Gottsacker* applied only to the duties "between interior members (majority and minority shareholders)." *Meieran*, 823 F. Supp. 2d at 891. But that is the question here—whether members of a limited liability company owe a fiduciary duty to each other. Yet whereas *Gottsacker* involved allegations that the majority members violated duties owed to a minority member, here it is a majority member alleging that a minority member breached its fiduciary duty to the majority member. Thus, the argument that the defendants owed the plaintiffs fiduciary obligations is significantly weaker here than it was in *Gottsacker*. *Cf. Estate of Sheppard v.*

*Specht*, 2012 WI App 124, ¶7, 344 Wis. 2d 696, 824 N.W.2d 907 (holding that, in the context of a Wisconsin corporation, although a majority shareholder owes a fiduciary duty to a minority shareholder, a minority shareholder does not owe a fiduciary duty to a majority shareholder).

The court finds that, if presented with the question, the Wisconsin Supreme Court would agree with the concurrence in *Gottsacker*. Specifically, the court would conclude that a minority member of a limited liability company does not owe a common law fiduciary duty to a majority member. Rather, a minority member's duties to a majority member are limited to those set forth in Wisconsin's limited liability company statute or otherwise agreed to by the members in their operating agreement.

If the Wisconsin legislature had intended that *all* common law fiduciary duties apply to the members of a limited liability company, it presumably would have been unnecessary to redundantly outline certain of these obligations in the statute. Moreover, under the doctrine of negative implication—*expressio unius est exclusio alterius*—whereby "the expression of one thing excludes another," *Benson v. City of Madison*, 2017 WI 65, ¶32, 376 Wis. 2d 35, 897 N.W.2d 16; *see also Perra v. Menomonee Mut. Ins. Co.*, 2000 WI App 215, 239 Wis. 2d 26, 34, 619 N.W.2d 123, 127, the absence of any suggestion that the list of obligations which the legislature included in the statute was illustrative rather than exhaustive, *cf. Tetra Tech EC, Inc. v. Wis. Dep't of Revenue*, 2018 WI 75, ¶98, 382 Wis. 2d 496, 914 N.W.2d 21, leads to the presumption that the legislature did *not* intend

additional duties to apply to members of a limited liability company. If the legislature had intended to impose the full panoply of common law fiduciary obligations on the members of a limited liability company, it could have said as much in the statute. *Cf. Remora Invs., L.L.C. v. Orr*, 277 Va. 316, 322, 673 S.E.2d 845, 847 (2009) ("[I]f the General Assembly had wanted to impose such fiduciary duties it would have done so explicitly, as it did in the partnership statute.").

There are public policy arguments for applying common law fiduciary duties to members of a limited liability company. In fact, holding members of a limited liability company to the heightened standards that attend fiduciary obligations might seem like common sense to some. But fiduciary duties come with burdens and costs, and common law obligations create uncertainty for business planners. In creating the limited liability company statute, the legislature was focused on flexibility and freedom to contract. Joseph W. Boucher *et al.*, *LLCs and LLPs: A Wisconsin Handbook* § 1.10 (6th ed. 2018). Invoking the common law to make members fiduciaries would, to some extent, undermine that flexibility.

Moreover, the court disagrees with the suggestion that an absence of fiduciary obligations amounts to a license for dishonesty. *Cf. Meieran*, 823 F. Supp. 2d at 892. Fiduciary obligations represent the pinnacle of duties; lesser obligations, such as the duty of good faith and fair dealing inherent in every contract, also foster the public policy of candor. Beyond these inherent obligations, the limited liability company

statute imposes significant responsibilities unless the parties agree otherwise. And should members of a limited liability company wish that their relationship be subject to the full range of fiduciary obligations, they remain free to impose those duties by way of their operating agreement. Finally, as this case exemplifies, there are a wide range of other common law and statutory claims that may be available to a member to redress the alleged malfeasance of another member.

Ultimately, the court finds these public policy considerations to be the purview of the legislature rather than the court. The legislature having chosen not to impose the full panoply of fiduciary obligations on minority members of a limited liability company vis-à-vis majority members, while articulating other obligations, it is not the role of the court to impose additional duties by default. *Cf. Remora Invs., L.L.C. v. Orr*, 277 Va. 316, 324, 673 S.E.2d 845, 849 (2009) (holding that common law fiduciary duties do not apply to LLC members because nothing in the relevant state law suggests they do); *WAKA, LLC v. Humphrey*, 73 Va. Cir. 310, 315 (Cir. Ct. 2007) ("The LLC is a creature of statute. As such, the duties of members, managers, and member-managers are prescribed by the General Assembly. … The General Assembly elected not to impose fiduciary duties among and between the LLC's members as individuals. Nor did the legislature elect to impose a fiduciary duty to other LLC members upon the members whom manage the LLC.").

In the absence of legislative action, it is up to the members of a limited liability company to decide whether fiduciary obligations should apply in their relationship. The plaintiffs do not allege a fiduciary relationship existed other than by virtue of the parties' operating agreement. But that agreement did not impose fiduciary duties on the members. Moreover, Wisconsin's limited liability company statute affords significant protections to the members of a limited liability company. But the plaintiffs did not include a statutory claim in their second amended complaint. Therefore, the defendants are entitled to summary judgment on the plaintiffs' claim that they breached a fiduciary duty.

### 3.11. Tortious Interference with Contract

The plaintiffs' thirteenth cause of action alleges that "[t]he Defendants Leo and/or Sands Entities intentionally and unjustifiably interfered with the Plaintiffs [sic] contractual relationship with Michael and/or Wendel Entities." (ECF No. 17, ¶ 164.) Because Raab does not allege that he was personally a party to any contract that Sand or his associated entities allegedly interfered with, he has failed to demonstrate a basis to bring this claim. Therefore, the court regards the claim being asserted by R&W alone.

Wisconsin follows the Restatement (Second) of Torts with respect to the claim of tortious interference with contract. *Sampson Invs. v. Jondex Corp.*, 176 Wis. 2d 55, 71, 499 N.W.2d 177, 184 (1993). The Restatement articulates the tort as follows: "One who intentionally and improperly interferes with the performance of a contract (except a

contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." *Id.* (quoting Restatement (Second) of Torts § 766 (1979)); *see also id.* at 72-73, 499 N.W.2d 177, 184 (quoting W. Page Keeton, Dan B. Dobbs, Robert E. Keeton, David G. Owen, *Prosser and Keeton On Torts*, sec. 129 (5th ed. 1984) ("[T]ort liability may be imposed upon a defendant who intentionally and improperly interferes with the plaintiff's rights under contract with another person if the interference causes the plaintiff to lose a right under the contract or makes the contract rights more costly or less valuable."). A claim of tortious interference with contract does not require proof that the contract was breached. *Sampson Invs.*, 176 Wis. 2d at 72, 499 N.W.2d at 184 (citing *Wisconsin Power & Light Co. v. Gerke*, 20 Wis. 2d 181, 121 N.W.2d 912 (1963)).

In moving for summary judgment, the defendants argue that "[t]he only evidence plaintiffs produce in support of this claim is the list of allegedly improper financial transactions in the [second amended complaint], and the claim that Raab did not know about these transactions." (ECF No. 67 at 12-13.) The defendants insist that "[t]here is no evidence that Leo Sand even knew about R&W's contract." (ECF No. 67 at 13.)

In response, the plaintiffs again point to the defendants' admission in their counterclaim that "[a]t [the 2007] meeting, it was agreed that Sand Companies would

take over management of the East Troy Hotel from Wendel Group under the terms of the 1998 Management Agreement" (ECF No. 48 at 31, ¶ 4). (ECF No. 87 at 15.) Although the use of the passive voice might arguably create some ambiguity as to who specifically knew what, the defendants admit Leo Sand was at the meeting. (ECF No. 48 at 31, ¶ 4.) This admission would permit a reasonable finder of fact to conclude that Sand was aware of the 1998 agreement between R&W and The Wendel Group.

The defendants also argue that there is no evidence that the Sand entities knew that their actions would interfere with the contract between R&W and The Wendel Group. The Sand entities contend that, from their perspective, they were acting "with the knowledge and consent of Mike Wendel, a member [sic[4]] of R&W." (ECF No. 67 at 13.)

In light of the defendants' admission that the parties agreed that management of the hotel by Sand and the Sand entities would be under the terms of the 1998 Management Agreement, a reasonable finder of fact could conclude that Sand or his entities intended to influence The Wendel Group to refrain from dealing with R&W. *See* Wis. JI Civ. 2780. "It could be a simple request or persuasion, exerting only moral pressure, as well as threats or promises of some benefit to [The Wendel Group]. It does not require ill will or expression of malice towards [R&W]." *Id.*

---

[4] Wendel never was a member of R&W. Rather, Raab and entities controlled by Wendel (Wendel Investments, Inc. and, later, Wendel Enterprises, LLC) were the members of R&W. (ECF Nos. 86, ¶ 2; 91, ¶ 1.)

Whether the alleged actions of Sand and his affiliated entities were justified—for example, by virtue of Wendel's overlapping roles in The Wendel Group and the Sand entities—is a dispute of material fact that precludes summary judgment for the defendants on R&W's thirteenth cause of action.

### 3.12. Plaintiffs' Common Law Conspiracy Claim

Plaintiffs allege in the fifteenth cause of action of their second amended complaint that "All Defendants" "knowingly or voluntarily agreed, formed, participated and/or operated a conspiracy and intended to further the conspiracy," the object of which "was to gain a financial benefit for the Defendants and deprive R&W and Raab of business interests and assets." (ECF No. 17, ¶¶ 171-73.)

"Civil conspiracy involves 'a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful.'" *N. Highland Inc. v. Jefferson Mach. & Tool Inc.*, 2017 WI 75, ¶25, 377 Wis. 2d 496, 898 N.W.2d 741 (quoting *City of Milwaukee v. NL Indus., Inc.*, 2005 WI App 7, ¶25, 278 Wis. 2d 313, 691 N.W.2d 888). The claim contains "three elements: (1) the formation and operation of a conspiracy; (2) a wrongful act or acts done pursuant to the conspiracy; and (3) damage resulting from the act or acts." *Id.* (citing *Onderdonk v. Lamb*, 79 Wis. 2d 241, 247, 255 N.W.2d 507 (1977)). In Wisconsin, a conspiracy claim must be supported by "more than a mere suspicion or conjecture that there was a conspiracy or that there was evidence of the elements of a conspiracy." *N.*

*Highland Inc.*, 2017 WI 75, ¶23 (quoting *Maleki v. Fine-Lando Clinic Chartered, S.C.*, 162 Wis. 2d 73, 84, 469 N.W.2d 629 (1991)). "If circumstantial evidence supports equal inferences of lawful or unlawful action, then the conspiracy is not proven and the case should not be submitted to the jury." *Id.* "To survive summary judgment, 'there must be facts that show some agreement, explicit or otherwise, between the alleged conspirators on the common end sought and some cooperation toward the attainment of that end.'" *Id.* at ¶26 (quoting *Augustine v. Anti-Defamation League of B'Nai B'Rith*, 75 Wis. 2d 207, 216, 249 N.W.2d 547 (1977)).

In moving for summary judgment, the defendants state that "[t]he only facts Plaintiffs offer in support of a conspiracy are that Defendants were affiliated business entities and that Mike Wendel and Leo Sand are officers and/or board members of certain defendants." (ECF No. 67 at 14.) The defendants contend that "[t]his is not evidence of a conspiracy." (*Id.*) They also note that, although this claim is asserted against all of the defendants, the second amended complaint and the plaintiffs' interrogatory responses "fail to state how each Defendant was involved in the alleged conspiracy." (*Id.*)

In response, the plaintiffs offer only a tepid defense of their claim and refer only to Wendel and Sand. (ECF No. 87 at 17.) Consequently, the court understands the plaintiffs to be acknowledging that, notwithstanding the fact that the second amended complaint alleges this claim against "All Defendants," they have no basis for a

conspiracy claim against any defendant other than Wendel and Sand. The plaintiffs argue that their claims of a conspiracy are supported by the fact that in 2007 "Wendel and Sand told Raab they would honor the 1998 Management Agreement, yet their conduct reveals that they formed a scheme to charge R&W excess amounts without Raab's knowledge." (ECF No. 87 at 17.) The plaintiffs do not support this statement with any citation to the record.

The defendants argue in reply that "[i]t is undisputed that actions of the Wendel Group were consistent with the 1998 Management Agreement," which the court understands to be an argument that the plaintiffs necessarily were not harmed by the alleged conspiracy. (ECF No. 95 at 8.)

The court finds it a close call in light of the plaintiffs' scant argument, but concludes it must deny the defendants' motion for summary judgment as regards Wendel and Sand. Given the defendants' admissions regarding the 2007 meeting (ECF No. 48 at 31, ¶ 4), a reasonable finder of fact could conclude that Sand was aware of the 1998 agreement and agreed to abide by it. If Sand and Wendel then promptly acted inconsistently with that agreement, a fact that is disputed, the reasonable inference is that Sand and Wendel agreed to do so.

It is not merely that Sand is alleged to have tacitly assented to Wendel's illicit plan. *Cf. Edwardson v. Am. Family Mut. Ins. Co.*, 223 Wis. 2d 754, 761, 589 N.W.2d 436, 439 (Ct. App. 1998) (discussing *Winslow v. Brown*, 125 Wis. 2d 327, 371 N.W.2d 417 (1985)).

Rather, a reasonable finder of fact could conclude that he agreed and cooperated with Wendel to further the scheme. *Cf. Edwardson v. Am. Family Mut. Ins. Co.*, 223 Wis. 2d 754, 762, 589 N.W.2d 436, 439 (Ct. App. 1998) (citing *Augustine v. Anti-Defamation League B'nai B'rith*, 75 Wis. 2d 207, 216, 249 N.W.2d 547, 552 (1977)). This sort of joint action towards an illicit mutual end is the essence of conspiracy.

Consequently, the court will deny the defendants' motion for summary judgment as to the fifteenth cause of action in the second amended complaint as to Wendel and Sand. However, because the plaintiffs have made no effort to defend the claim against any other defendant, the court will grant it as to all other defendants.

### 3.13. Plaintiffs' Statutory Civil Conspiracy Claim

In addition to a common law conspiracy claim, the plaintiffs' second amended complaint contains a statutory conspiracy claim. The sixteenth cause of action alleges a civil conspiracy pursuant to Wis. Stat. § 134.01 and is against all defendants. (ECF No. 17, ¶¶ 176-82.) The plaintiffs allege that the defendants acted together with a malicious motive for the common purpose of injuring R&W's and Raab's business, business interests, and assets. (*Id.*, ¶¶ 177-79.)

> In Wisconsin, it is unlawful for two or more persons to

> combine, associate, agree, mutually undertake or concert together for the purpose of willfully or maliciously injuring another in his or her reputation, trade, business or profession by any means whatever, or for the purpose of maliciously compelling another to do or perform any act against his or her will, or preventing or hindering another from doing or performing any lawful act ….

Wis. Stat. § 134.01. "[M]alice is an integral element that must be proved in respect to either portion of the statute and must be proved in respect to both parties to the conspiracy. There can be no conspiracy if malice is not found in respect to both conspirators." *Maleki v. Fine-Lando Clinic Chartered, S.C.*, 162 Wis. 2d 73, 86, 469 N.W.2d 629, 634 (1991). "For conduct to be malicious under conspiracy law it must be conduct intended to cause harm for harm's sake." *Id*.

In moving for summary judgment the defendants argue that the plaintiffs must prove all the elements of a common law civil conspiracy and *also* that the defendants acted with malice. (ECF No. 67 at 15.) The defendants argue that, independent of the resolution of their motion regarding the plaintiffs' common law conspiracy claim, the statutory conspiracy claim fails because the plaintiffs have not produced evidence of malice. (ECF No. 67 at 15.)

The plaintiffs respond that they "have submitted ample evidence from which a reasonable finder of fact could conclude two or more Defendants acted with malice—intentionally and wrongfully—to harm the Plaintiffs." (ECF No. 87 at 18-19.) In support, the plaintiffs argue, "From 2007-2014, Defendants overcharged Plaintiffs in contravention of the controlling 1998 Management Agreement." (ECF No. 87 at 19.) In effect, the plaintiffs argue that the alleged breach of the management agreement is itself evidence of malice because it was illegitimate and not done for the purpose of

legitimate business competition. (ECF No. 87 at 18 (discussing *Maleki*, 162 Wis. 2d at 87-88).)

The plaintiffs have failed to muster evidence from which a reasonable finder of fact could find that any two defendants intended to cause harm for harm's sake. The plaintiffs' reading of malice is far too narrow. An action done for the purpose of legitimate business competition is necessarily not done with malice; but that does not mean that any act done for a purpose other than legitimate business competition is malicious. Thus, the fact that Wendel and Sand were not competitors of Raab and R&W but rather "were supposed to be on the same team" (ECF No. 87 at 19) does not mean Wendel and Sand (or any other defendant) acted maliciously when they allegedly breached a contract and charged the plaintiffs unauthorized fees. Perhaps the finder of fact could conclude that Wendel and Sand acted in their own self-interest and injured Raab and R&W in the process. But malice requires more than merely intentional injury. *See Friemuth v. Fiskars Brands, Inc.*, 681 F. Supp. 2d 985, 992 (W.D. Wis. 2010) ("If anything, the allegations suggest that plaintiff and any co-conspirator performed in the allegedly injurious acts to make money (for their own sake), not to make defendant lose money ('for harm's sake')." Therefore, the court will grant the defendants' motion for summary judgment with respect to the plaintiffs' sixteenth cause of action for civil conspiracy under Wis. Stat. § 134.01.

### 3.14. Raab's Claim for Contribution Against Wendel

Plaintiffs' twenty-fourth, and final, cause of action is entitled "Contribution or Subrogation" and purports to be against Michael Wendel and the Wendel Entities. (ECF No. 17 at 42). However, the plaintiffs' brief in support of their motion for summary judgment (ECF No. 76) makes it clear that this claim is made by Raab against Michael Wendel alone. (ECF No. 76 at 4 ("Plaintiffs seek contribution from Wendel for the amounts it paid in excess of its fair share of the obligations to Guardian Credit Union.").)

In this claim the plaintiffs allege that the secured creditor of R&W was Guardian Credit Union. (ECF No. 17, ¶ 227.) Raab and Wendel both personally guaranteed the debt to Guardian. (*Id.*, ¶ 231.) Guardian demanded payment under the guarantees to settle litigation it brought against, among others, Raab. (*Id.*, ¶¶ 227-35.) Raab "paid in excess of $900,000 to cover the deficiency and operating expenses of R&W…" and Wendel paid only $50,000. (*Id.*, ¶¶ 237-38.) Raab's contribution claim is based on his contention that he "has paid more than his fair share" of the debt to Guardian and that he "should be reimbursed for all amounts for which he paid above and beyond his equitable share." (*Id.*, ¶¶ 239-40.)

"A right to contribution … may 'arise by operation of law to rectify an inequity resulting when a co-obligor pays more than a fair share of a common obligation.'" *BMO Harris Bank, N.A. v. European Motor Works*, 2016 WI App 91, ¶16, 372 Wis. 2d 656, 889

N.W.2d 165 (quoting *Kafka v. Pope*, 194 Wis. 2d 234, 242, 533 N.W.2d 491 (1995)). "Where a claim for contribution is implied by law, the party seeking contribution must establish that: (1) the parties are liable for the same obligation; and (2) the party seeking contribution paid more than a fair share of the obligation." *Id*.

The court finds no dispute that Wendel and Raab are liable for the same obligation. *See id*. However, the parties dispute whether Raab paid more than his fair share of that obligation.

R&W entered into a $2,124,300 note with Guardian Credit Union. (ECF No. 86, ¶ 64.) The note was secured by personal guaranties by Raab and Wendel. (ECF No. 86, ¶ 65.) Wendel's guaranty was limited to 25 percent of the outstanding balance (ECF No. 78-10); Raab's was unlimited (ECF No. 78-9). (*See also* ECF No. 78-14.) Following the liquidation of R&W's assets, the outstanding balance on the note was $1,041,124.59. (ECF No. 78-11, ¶ 15.) Raab paid Guardian Credit Union $900,000 to release his personal guaranty. (ECF No. 78-12.) Wendel paid Guardian Credit Union $50,000 to release his personal guaranty. (ECF No. 85-1 at 43-44.) In other words, to settle with Raab and Wendel, Guardian Credit Union wrote off over $91,000 of the debt.

Raab argues that Wendel's obligation was $260,281.15, *i.e.*, 25 percent of the entire $1,041,124.59 balance. (ECF No. 76 at 5.) Raab seeks $210,281.15 from Wendel—the difference between 25 percent of the outstanding balance and what Wendel paid.

Wendel argues that contribution is appropriate only if Raab paid more than his fair share. Raab's personal guaranty to Guardian Credit Union was unlimited. According to Wendel, Raab has at most demonstrated that Wendel paid *less* than his fair share, not that Raab paid *more* than his fair share. (ECF No. 84 at 10.)

In reply, Raab argues that Wendel's reliance on Raab's "unlimited" guaranty ignores the context in which their respective guaranties arose. Raab alone initially guaranteed the debt. When it became necessary to take on additional debt to maintain operations, Raab refused to continue to unilaterally guaranty all of R&W's debt. Thus, Raab required Wendel to personally guaranty a portion of the debt as a condition to R&W taking on more debt. (ECF No. 99 at 1.)

It is true that, as between Guardian and Raab, with Raab having guaranteed the full amount of R&W's debt, Guardian was entitled to look solely to Raab for the full amount due and owing. And it essentially did that, subject to a relatively small payment from Wendel. But the fact that Raab was liable for the full amount to Guardian does not mean Raab is not entitled to contribution from Wendel. Contribution is an equitable remedy. Among two parties who are each jointly and severally liable for a debt—which means essentially that each party has an "unlimited" guarantee—a party who satisfies the entire debt does not forfeit his right of contribution from his co-borrower merely because he paid no more than he was otherwise obligated to pay. *Cf. Akzo Coatings v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir. 1994) (describing "a quintessential claim for

contribution" as one "by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make").

In *BMO Harris Bank, N.A. v. European Motor Works*, 2016 WI App 91, ¶24, 372 Wis. 2d 656, 889 N.W.2d 165, two co-borrowers were each jointly and severally liable for a debt of more than $500,000. The co-borrowers separately settled with the bank for a total of roughly $250,000, with appellant paying $240,000 and appellee paying $10,000. Although the share of the settlement was disproportionate, the court of appeals held that, because appellant did not pay more than 50 percent of the total debt, he did not pay more than his fair share.

Following Wendel's 25 percent guaranty, Raab's "unlimited" guaranty became, at least as between Raab and Wendel, a de facto 75 percent guaranty. Although Raab remained obligated to the credit union for the whole sum in the event Wendel failed to pay, that does not mean he is barred from seeking contribution from Wendel for his proportional obligation of the credit union debt. Thus, in accordance with *BMO Harris Bank,* whether Raab paid more than his fair share depends on whether in settling with the bank Raab paid more than 75 percent of the $1,041,124.59 debt. The $900,000 Raab paid represented more than 86 percent of the total debt. Having paid more than his fair share, Raab is entitled to contribution from Wendel under *BMO Harris Bank*.

But *BMO Harris Bank* did not address the next step of the analysis—determining the amount of contribution when a party has paid more than its fair share even though

the obligation was settled with the creditor for less than the total amount owed. Raab seeks $210,281.15 from Wendel, which is 25 percent of the $1,041.124.59 owed to Guardian less the $50,000 Wendel already paid. But if Raab were awarded this sum, while it would result in Wendel paying 25 percent of the debt, Raab would end up paying only 66 percent. In effect, Raab alone would be getting the benefit of the credit union taking less than it was entitled to—which is also inequitable.

The court concludes that, although the amount of the total debt may be the appropriate benchmark for assessing whether a co-borrower paid more than his fair share, *see BMO Harris Bank,* 2016 WI App 91, ¶24, once a co-borrower is found to have paid more than his fair share, the amount of the settlement must be considered for determining the amount of contribution, *see, e.g., Merchs. Disc. Co. v. Fed. St. Corp.,* 300 Mass. 167, 172, 14 N.E.2d 155, 158 (1938); *Miller v. Perkerson,* 128 Ga. 465, 468-69, 57 S.E. 787, 789 (1907). Therefore, of the $950,000 settlement with Guardian Credit Union, Raab was obligated to pay $712,500 (75%) and Wendel was obligated to pay $237,500 (25%). Wendel paid only $50,000. Consequently, Raab is equitably entitled to contribution from Wendel in the sum of $187,500.00.

## 4. Defendants' Counterclaims

### 4.1. Sand Hospitality's Counterclaims

Sand Hospitality, LLC alleges claims of tortious interference with contract and unjust enrichment against Raab. (ECF No. 48 at 36-37, ¶¶ 28-35.) Raab seeks summary judgment as to these claims. (ECF No. 76 at 13-16.)

#### 4.1.1. Sand Hospitality's Tortious Interference Counterclaim

Sand Hospitality alleges as part of its tortious interference claim that Raab knew about the management agreement that Sand Hospitality entered into with R&W in 2012 and intentionally interfered with that contractual relationship. (ECF No. 48, ¶ 28.) It alleges that, as a result of Raab's interference, R&W failed to pay Sand Hospitality certain monies that were due under the 2012 management agreement. (*Id.*, ¶ 30.) Thus, Sand Hospitality's tortious interference claim depends on the validity of the 2012 management agreement.

The elements of a claim for tortious interference with a contract are:

> (1) the plaintiff had a current or prospective contractual relationship with a third party; (2) the defendant interfered with that contractual relationship; (3) the interference was intentional; (4) a causal connection exists between the defendant's interference and the plaintiff's damages; and (5) the defendant was not justified or privileged to interfere.

*Wolnak v. Cardiovascular & Thoracic Surgeons of Cent. Wis., S.C.*, 2005 WI App 217, ¶14, 287 Wis. 2d 560, 706 N.W.2d 667. In moving for summary judgment, Raab depends, at least in part, on his assertion that the 2012 management agreement was invalid. (ECF

Nos. 76 at 14-15; 99 at 10-12.) As discussed above in conjunction with the plaintiffs'
claim that the 2012 management agreement is void, disputes of material fact exist as to
whether this agreement was valid.

Raab also argues that summary judgment is appropriate because Sand
Hospitality's tortious interference claim must be made against R&W rather than Raab
personally. But, of course, R&W cannot interfere with a contract to which it is a party.
*See Wausau Med. Ctr., S.C. v. Asplund*, 182 Wis. 2d 274, 297, 514 N.W.2d 34, 44 (Ct. App.
1994). Had Sand Hospitality alleged a tortious interference claim against R&W, it
certainly would have failed.

But that is not to say that Sand Hospitality has a claim against Raab personally
for tortious interference. Sand Hospitality's theory is that Raab induced R&W to breach
its alleged contract with Sand Hospitality. In a technical sense, this is undisputedly true.
An artificial entity such as an LLC obviously acts only through its individual owners,
officers and employees. But Sand Hospitality's theory is inconsistent with the "limited
liability" principle of an LLC. *See* Wis. Stat. § 183.0304 ("a member or manager of a
limited liability company is not personally liable for any debt, obligation or liability of
the limited liability company" except for actions undertaken "other than as a member
or a manager"); *cf. Lorenz v. Dreske*, 62 Wis. 2d 273, 28-87, 214 N.W.2d 753, 760 (1974)
(quoting Henry Winthrop Ballantine, *Corporations*, pp. 275, 276, sec. 112 ("If directors
are acting in good faith for the protection of the interests of their corporation and in the

course of their official duty, they should be protected" from liability for the corporation's breach of contract)). If Sand Hospitality were correct, any time an LLC breached a contract the injured party would have not merely a breach of contract action against the entity but a tortious interference with contract claim against the members or managers behind the breach.

There may be exceptions to the general rule that a member of an LLC is not liable for the LLC's breach of contract similar to the exceptions that apply to officers of a corporation. *Cf. Lorenz*, 62 Wis. 2d at 286-87, 214 N.W.2d at 759-60 (noting that a corporate officer's conditional privilege against liability for the corporation's breach of contract may be undermined if the officer acts with an "improper motive"); *see also Finch v. Southside Lincoln-Mercury, Inc.*, 2004 WI App 110, ¶¶37-39, 274 Wis. 2d 719, 685 N.W.2d 154; *Sprecher v. Weston's Bar, Inc.*, 78 Wis. 2d 26, 41, 253 N.W.2d 493, 500 (1977) (holding that a corporate officer may be liable for a corporation's breach of contract if she causes the breach due to her personal pecuniary motive, as opposed to her interest as a shareholder). However, the court finds it unnecessary to determine whether these exceptions apply to a member of an LLC. Sand Hospitality does not so much as acknowledge the existence of privilege, much less present evidence from which a reasonable finder of fact could conclude that Raab's decision to cause R&W to breach its alleged contract with Sand Hospitality was made with an improper motive.

No reasonable finder of fact could conclude that Raab was acting "other than as a member" of R&W when he allegedly interfered with the purported contract between R&W and Sand Hospitality. He had no ability to impact, influence, or interfere with the alleged contract except as a member of R&W. Therefore, the court will grant Raab's motion for summary judgment with respect to this counterclaim.

### 4.1.2. Sand Hospitality's Unjust Enrichment Counterclaim

Sand Hospitality's unjust enrichment claim alleges that, at the time Raab caused R&W to terminate the 2012 management agreement with Sand Hospitality, Sand Hospitality had been providing management services on behalf of R&W for which it had not been paid. (ECF No. 48, ¶ 34.) In performing management services at the hotel, Sand Hospitality contends it conferred a benefit upon Raab which it would be inequitable to permit Raab to retain without paying Sand Hospitality for the value of such services. (*Id.*, ¶ 35.) It further contends that its "management services and financial support allowed the Hotel to remain in operation, and permitted R&W to list the Hotel for sale" and, if R&W had accepted any of the offers for sale, it would have reduced R&W's overall debt. (ECF No. 84 at 23-24.)

In moving for summary judgment on the unjust enrichment claim, Raab states that "it shocks the conscious [sic] to assert that Rudolph Raab received any enrichment, much less unjust enrichment, from the alleged services provided by Sand Hospitality which were calculated upon fictional and exorbitant fee schedule." (ECF No. 76 at 16.)

He further argues that, even if this claim is proper, it may be brought against only R&W, not Raab personally. (ECF No. 76 at 15-16.)

Sand Hospitality responds that it is appropriate to hold Raab liable instead of R&W because "[t]he benefit of Sand Hospitality's services ultimately accrued to Raab as R&W's 80% owner." (ECF No. 84 at 23.)

The court finds that Sand Hospitality has failed to present evidence that Raab is personally liable for any alleged unjust enrichment. The beneficiary of any of the services Sand Hospitality allegedly performed was R&W, not Raab. Just as Raab would not be personally liable for fees R&W allegedly failed to pay to Sand Hospitality pursuant to the 2012 management agreement, it would be inconsistent with the principle of limited liability set forth in Wis. Stat. § 183.0304 to find Raab liable for those fees under the quasi-contract theory of unjust enrichment. Sand Hospitality's claim is merely an attempt to make an end-run around Raab's limited liability.

Therefore, Raab's motion for summary judgment as to Sand Hospitality's second counterclaim will be granted.

### 4.2. Wendel Enterprises' First and Second Counterclaims

Like Sand Hospitality, Wendel Enterprises asserts two counterclaims against Raab. It alleges that, "[f]rom time to time, [it] advanced funds to R&W to cover the East Troy Hotel losses." (ECF No. 48, ¶ 46.) These advances were working capital loans and accrued interest. (ECF No. 48, ¶ 47.) Although Wendel Enterprises was responsible for

only 20 percent of R&W's losses, it alleges it paid more than 20 percent of the working capital loans. (ECF No. 48, ¶¶ 48-49.) By way of claims for equitable indemnification and equitable contribution (ECF No. 48 at 40-41, ¶¶ 52-53), Wendel Enterprises seeks to recover from Raab the portion of the working capital loans it made to R&W in excess of Wendel Enterprises' fair share.

In moving for summary judgment on these claims, Raab argues that Wendel Enterprises lacks any claim against Raab personally; it can seek recovery only from R&W. Raab notes that the operating agreement provides, "The Members shall not be personally liable for the return of the capital contributions of the other Members, it being understood that any return of such contribution shall be made solely from the Company's assets." (ECF No. 76 at 17.) Raab also argues that any loans Wendel Enterprises made to R&W were discharged in R&W's receivership. (ECF No. 76 at 18.)

Wendel Investments does not respond to either of these arguments. (ECF No. 84 at 24.) Having failed to respond, the court accepts Raab's arguments as undisputed. *See Citizens for Appropriate Rural Rds. v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010); *United States ex rel. Chepurko v. E-Biofuels, LLC*, No. 1:14-cv-00377-TWP-MJD, 2019 U.S. Dist. LEXIS 4663, at *22 (S.D. Ind. Jan. 10, 2019) ("The Seventh Circuit has clearly held that a party who fails to respond to points made ... concedes those points.") (quoting *Myers v. Thoman*, 2010 U.S. Dist. LEXIS

107502, at *11 (S.D. Ind. Oct. 6, 2010)). Therefore, the court will grant Raab's motion for summary judgment with respect to Wendel Enterprises' counterclaims.

## 5. Conclusion

As to the foundation of any lawsuit—who the parties are—the court reiterates its conclusion outlined above. The only plaintiffs are Rudolph Raab and R&W Lodging, LLC. The only persons or entities properly named as defendants in the second amended complaint are Michael C. Wendel, The Wendel Group Inc., Wendel Investments Inc., West Bend Hospitality, Inc., Leo M. Sand, Sand Hospitality, LLC, Sand Companies, Inc., SCI Hotels, LLC, Sand Procurement by Design, and HW West Bend Properties, LLC. However, HW West Bend and Wendel Investments, Inc. are dismissed as defendants. Wendel Companies LLC, Wendel Investments LLC, and Wendel Hospitality LLC never were defendants in this action. The court accepts the second amended complaint was constructively amended to include Wendel Enterprises, LLC as a defendant.

As to the claims in the second amended complaint, the following claims were not subject to the parties' motions for summary judgment: (1) appointment of a receiver pursuant to Wis. Stat. § 813.16; (2) appointment of a receiver pursuant to Wis. Stat. ch. 128; (12) breach of loyalty, good faith, and fair dealing; and (14) accounting. Some of these claims may be moot (*see, e.g.,* ECF Nos. 69-2 at 8 (noting that a receiver had been appointed; 76 at 18 (discussing receivership); 86, ¶ 59 (noting receivership)) but the court has not been advised of this.

As to the claims there were subject to the parties' motions, they are resolved as follows. The court **grants** the defendants' motion for summary judgment with respect to the following claims in the second amended complaint: (7) theft by contractor in violation of Wis. Stat. § 779.02(5); (11) breach of fiduciary duty; (16) civil conspiracy pursuant to Wis. Stat. § 134.01**;** (17) violation of RICO under 18 U.S.C. § 1962(a); (18) violation of RICO under 18 U.S.C. § 1962(b); (19) violation of RICO under 18 U.S.C. § 1962(c); (20) violation of RICO under 1962(d); (21) violation of Wisconsin's Organized Crime Control Act (WOCCA) under Wis. Stat. § 946.83(3); (22) violation of WOCCA under Wis. Stat. § 946.83(2); and (23) violation of WOCCA under Wis. Stat. § 946.83(1). These claims are dismissed.

The court **denies** the defendants' motion for summary judgment as to the second amended complaint's claims for (3) intentional misrepresentation; (4) strict liability misrepresentation; (5) negligent misrepresentation; and (15) civil conspiracy as to Wendel and Sand, but **grants** summary judgment regarding these claims as to all other defendants.

The court **grants** the defendants' motion for summary judgment as to R&W's (10) breach of contract claim insofar as it sought summary judgment with respect to all defendants other than The Wendel Group and Sand Hospitality.

The court **denies** the defendants' motion for summary judgment as to the plaintiffs' (8) civil theft claim.

The court **denies** R&W's motion for summary judgment as to its (13) tortious interference with contract as to Leo Sand and the Sand entities

The court **denies** the plaintiffs' motion for summary judgment as to the following claims: (8) civil theft in violation of Wis. Stat. §§ 779.02(5), 895.446, and 943.20; (9) declaration that the hotel management agreement is unenforceable; and (10) breach of contract.

The court **grants** the plaintiffs' motion for summary judgment as to the following claim: (24) contribution or subrogation as to Michael Wendel. Wendel shall pay to Raab the sum of $187,500.00.

The court also **grants** Raab's motion for summary judgment with respect to Sand Hospitality's and Wendel Enterprise's counterclaims. These counterclaims are dismissed.

In sum, the following claims remain: (1) appointment of a receiver pursuant to Wis. Stat. § 813.16; (2) appointment of a receiver pursuant to Wis. Stat. ch. 128; (3) intentional misrepresentation; (4) strict liability misrepresentation; (5) negligent misrepresentation; (8) civil theft; (9) declaration that the hotel management agreement is unenforceable; (10) breach of contract as to The Wendel Group and Sand Hospitality; (12) breach of loyalty, good faith, and fair dealing; and (14) accounting; and (15) civil conspiracy as to Wendel and Sand.

**IT IS THEREFORE ORDERED** that the defendants' motion for partial summary judgment is granted in part and denied in part.

**IT IS FURTHER ORDERED** that the plaintiffs' motion for partial summary judgment is granted in part and denied in part.

Dated at Milwaukee, Wisconsin this 6th day of March, 2019.

WILLIAM E. DUFFIN
U.S. Magistrate Judge