# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**RUDOLPH RAAB, et al.,**

        **Plaintiffs,**

        **v.**                            **Case No. 16-CV-1396**

**MICHAEL C. WENDEL, et al.,**

        **Defendants.**

---

## DECISION AND ORDER

---

## 1. Introduction

This action involves a dispute over the management of a hotel owned by R&W Lodging, LLC. R&W had two members—Rudolph Raab, owning 80 percent, and initially Wendel Investments, Inc. but soon thereafter Wendel Enterprises, LLC, owning 20 percent. R&W agreed to have The Wendel Group manage the hotel. However, in 2007 The Wendel Group merged with defendant Sand Companies, Inc., which began to manage the hotel in place of The Wendel Group. The person behind each Wendel entity was Michael Wendel, who, purportedly acting on behalf of R&W, entered into an agreement with Sand Hospitality to manage the hotel effective January 1, 2012. The person behind the Sand entities was Leo Sand.

Raab and R&W brought suit against the Wendel and Sand entities, as well as against Wendel and Sand personally. The action was eventually removed to federal court.

On March 6, 2019, the court resolved the parties' motions for summary judgment. *Raab v. Wendel*, No. 16-CV-1396, 2019 U.S. Dist. LEXIS 35843 (E.D. Wis. Mar. 6, 2019). The defendants moved for reconsideration (ECF No. 104) and for leave to file a second amended answer (ECF No. 106). The plaintiffs also moved for reconsideration. (ECF No. 114.) The briefing on these motions is closed and the matters are ready for resolution. A jury trial is scheduled to begin on October 21, 2019.

## 2. Motion to Recognize Right of Recoupment and for Leave to File a Second Amended Answer, Affirmative Defenses, and Counterclaims

Defendants Sand Hospitality, LLC and Wendel Enterprises, LLC ask "the Court for an order under Fed. R. Civ. P. 12(b) recognizing their right to recoupment as pled in their Answer, and in their Amended Answer, to Plaintiffs' Second Amended Complaint (ECF Nos. 30, 48) …." (ECF No. 107 at 1.) Sand Hospitality also "seeks leave to file a counterclaim against R&W for breach of the 2012 Management Agreement." (ECF No. 107 at 1.) And Wendel Enterprises "seeks leave to file a counterclaim against R&W for repayment of loans made by Wendel Enterprises to R&W." (ECF No. 107 at 1.)

"The court should freely give leave [to file an amended answer] when justice so requires." Fed. R. Civ. P. 15(a)(2). "The Supreme Court has interpreted this rule to require a district court to allow amendment unless there is a good reason—futility, undue delay, undue prejudice, or bad faith—for denying leave to amend." *Liebhart v. SPX Corp.*, 917

F.3d 952, 964 (7th Cir. 2019) (quoting *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d

343, 357 (7th Cir. 2015)).

### 2.1. "Recoupment"

Even though the word "recoupment" does not appear anywhere in the answer or

amended answer (ECF Nos. 30; 48), Sand Hospitality, LLC and Wendel Enterprises, LLC

nonetheless assert that they have pled the affirmative defense of recoupment (ECF No.

107 at 5). They point to the following paragraph, one of twelve affirmative defenses,

where they allege:

> To the extent Plaintiffs make a claim for damages in the SAC, such damages,
> if valid, are subject to a setoff against amounts due and owing by R&W for
> the termination of a hotel management agreement between R&W and Sand
> Hospitality, LLC, and for the overpayment by one or more of the
> Defendants of operating loans to cover operating costs and mortgage
> payments for the East Troy Comfort Inn & Suites Hotel.

(ECF No. 48 at 29, ¶ 8.)

But that paragraph alleges the affirmative defense of setoff, not recoupment.

Although similar, the two are not the same. *See Zweck v. D P Way Corp.*, 70 Wis. 2d 426,

433-34, 234 N.W.2d 921, 925 (1975); *O'Brien v. Freiley*, 130 Wis. 2d 174, 180 n.4, 387 N.W.2d

85, 88 (Ct. App. 1986). "Setoff and recoupment are doctrines relating to a demand that a

defendant has against a plaintiff arising out of a separate transaction (setoff) or the same

transaction (recoupment)." *O'Brien*, 130 Wis. 2d at 180 n.4, 387 N.W.2d 85, 88.

Thus, the court cannot grant Sand Hospitality and Wendel Enterprises the relief

they seek—an order stating that they have pled recoupment as an affirmative defense.

(ECF No. 107 at 9.) They have not.

However, in their proposed second amended answer the defendants amended the

relevant affirmative defense to read:

> To the extent Plaintiffs make a claim for damages in the SAC, such damages,
> if valid, are subject to a setoff *and/or recoupment* against amounts due and
> owing by R&W for the termination of a hotel management agreement
> between R&W and Sand Hospitality, LLC, and for the overpayment by one
> or more of the Defendants of operating loans to cover operating costs and
> mortgage payments for the East Troy Comfort Inn & Suites Hotel.

(ECF No. 108 at 27, ¶ 8 (emphasis added).) Thus, the question is whether they should be

allowed to again amend their answer to add recoupment as an affirmative defense.

The plaintiffs do not substantively address recoupment in their response to the

defendants' motion other than to observe that recoupment is not the same as setoff. (ECF

No. 112 at 5.) Although the proposed amendment comes late in these proceedings, the

court finds no risk of prejudice to the plaintiffs should the court permit it. There is no hint

that the plaintiffs shaped their litigation strategy in reliance on the defendants' use of the

word "setoff" rather than "recoupment." The plaintiffs clearly understood that the

defendants were arguing that any amount the plaintiffs might recover should be reduced

by any amount they owed that defendant.

It may be fair to characterize the distinction between setoff and recoupment as

esoteric, if not antiquated. Precluding consideration of funds allegedly owed to the

defendants because they used only the term "setoff" when "recoupment" covered part

their claim would place undue importance on form over substance. Had the defendants

avoided the term of art "setoff" and simply described the nature of its affirmative defense,

or even perhaps simply said "offset," the affirmative defense would encompass claims

for both recoupment and setoff.

Therefore, the court will permit the defendants to again amend their answer to

allege that the plaintiffs' claims for damages are subject to both setoff and recoupment.

## 2.2. Breach of 2012 Management Agreement

Sand Hospitality seeks to again amend its answer to add a counterclaim against

R&W for R&W's alleged breach of the 2012 Management Agreement. Sand pled this

counterclaim in state court before the action was removed to federal court. (ECF Nos. 107

at 3; 109-6, ¶¶ 41-43.) It also pled counterclaims for tortious interference with contract,

civil conspiracy, and unjust enrichment. (ECF No. 109-6.) But when the plaintiffs

threatened to seek sanctions for filing these counterclaims on the ground that they

violated the court's order precluding claims against R&W by its creditors (ECF No. 109-

7), Sand Hospitality moved to withdraw them. In May 2015, the state court dismissed the

counterclaims without prejudice. (ECF No. 109-9.)

In the amended answer the defendants filed in this court over two years later (and

now nearly two years ago) (ECF No. 48), Sand Hospitality re-asserted its counterclaims

for tortious interference with contract and unjust enrichment. (ECF No. 48 at 36-37.)

Conspicuously omitted was a counterclaim for R&W's alleged breach of the 2012 Management Agreement. And in the roughly four years since the state court's dismissal of that claim without prejudice (ECF No. 109-9), Sand Hospitality has not (until now) sought to re-assert such a counterclaim. Sand Hospitality argues that the delay was really only about 30 months, counting from when the receiver was discharged and Sand Hospitality was able to file its counterclaim. (ECF No. 117 at 4.)

Whether 30 or 48 months, the delay was still extraordinarily long. And there was no good reason for it. Sand Hospitality obviously recognized the claim as of April 2015. (ECF No. 109-6.) Its only explanation for seeking to bring the counterclaim now is that, after summary judgment, "it became clear that R&W could prevail on one or more of [its] claims and have assets from which a judgment in favor of Wendel Enterprises or Sand Hospitality could be paid." (ECF No. 117 at 3.) In other words, Sand Hospitality is asking the court to believe that it was not until after summary judgment that it first recognized that R&W might actually prevail on one of its claims and thus have assets to satisfy a judgment. But that should have been apparent from the moment R&W brought this lawsuit.

Having said that, "delay by itself is normally an insufficient reason to deny a motion for leave to amend. Delay must be coupled with some other reason. Typically, that reason ... is prejudice to the non-moving party." *Liebhart*, 917 F.3d at 965 (quoting *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004)). R&W asserts it will

be prejudiced because it will not be able to pursue discovery or file a dispositive motion on the claim, the deadlines for doing so having passed. But it never explains on what basis it would have sought summary judgment, nor does it articulate what additional discovery it would seek. Actually, there is good reason to believe that additional discovery would be unnecessary.

As discussed above, the defendants have always alleged the affirmative defense of setoff as to all of the plaintiffs' claims. The difference between the affirmative defense and the breach of contract counterclaim is one of scope rather than substance. Whereas setoff is limited to the amount Sand Hospitality is ordered to pay to R&W, a counterclaim would effectively enable Sand Hospitality to reach any assets R&W might have, which here is limited to what it might obtain as a result of a judgment against another defendant. But at the core of each is the claim that R&W owes Sand Hospitality money because R&W breached the 2012 management agreement. The discovery needed to defend against Sand Hospitality's breach of contract counterclaim would be the same discovery needed to defend against the set-off affirmative defense. R&W certainly has not explained why that is not the case.

Therefore, although Sand Hospitality's delay was long and without good reason, there is no evidence that R&W will be prejudiced by this tardy amendment. To the contrary, there is reason to believe that no discovery and preparation necessary to defend against the breach of contract counterclaim is needed above and beyond that necessary

to defend against the set-off affirmative defense. And given that R&W did not file a dispositive motion relating to the set-off affirmative defense, there is no reason to believe that any aspect of the breach of contract counterclaim would have been subject to a dispositive motion.

Consequently, the court finds it must grant Sand Hospitality's motion to file a second amended complaint adding a counterclaim against R&W for breach of the 2012 Management Agreement.

### 2.3. Loans

"Wendel Enterprises seeks leave to file a counterclaim against R&W for repayment of loans made by Wendel Enterprises to R&W." (ECF No. 107 at 1.) Wendel included this counterclaim in state court before this action was removed to federal court. (ECF Nos. 107 at 3; 109-5.)

The court's analysis regarding Sand Hospitality applies with equal force to Wendel Enterprises' motion. The delay was extraordinary and inexplicable. But Wendel Enterprises' setoff affirmative defense would have led R&W to do all discovery necessary to defend against a counterclaim for repayment of loans made by Wendel Enterprises to R&W. Thus, R&W will not be prejudiced by the amendment. Therefore, the court will grant Wendel Enterprises' motion to file a second amended answer adding a counterclaim against R&W for reimbursement of operating loan payments.

**2.4. Receivership**

R&W asks that, if the court grants the defendants' motion, it "be allowed to introduce arguments regarding other notices of claims filed in the Chapter 128 receivership, including Raab's claims, and the order of priority of such claims." (ECF No. 112 at 9.) However, aside from noting that Wis. Stat. § 128.17 outlines a priority of distribution of the assets of a debtor in receivership, R&W offers no authority for the application of the statute outside of a receivership action.

Having failed to present any authority for the relief it requests, R&W's request will be denied.

**3.  Defendants' Motion for Reconsideration**

One of Sand Hospitality's counterclaims alleged that Raab tortiously interfered with Sand Hospitality's contract with R&W—specifically, the 2012 Management Agreement. The court granted Raab's motion for summary judgment on the claim, noting that there was no evidence that Raab was acting outside of his role as a member of R&W when he allegedly interfered with the contract. *Raab*, 2019 U.S. Dist. LEXIS 35843, at *78-81. Sand Hospitality asks the court to reconsider that decision (ECF No. 105), arguing that Raab never made that argument. In any event, it contends, the tortious interference counterclaim contains allegations sufficient to support the conclusion that Raab *was* acting outside his role as a member of R&W.

Raab's summary judgment argument was imprecise but sufficient. Raab argued

that, when he terminated R&W's agreement with Sand Hospitality, he was exercising his

right as an owner and manager of R&W and could not be held personally liable as a

result. (ECF No. 76 at 15-16 ("In fact, the Operating Agreement gave Rudolph Raab equal

management power. Moreover, Rudolph Raab was to be indemnified and held harmless

for exercising his rights as an 80% owner. Similarly, any debt or liability to any creditor,

such as Sands, was not to be the personal obligation of the members and they were to be

indemnified by R&W and relieved of such financial obligation." (citations omitted).) Sand

Hospitality understood the implications of Raab's argument when, in responding to

Raab's motion for summary judgment, it stated:

> Raab argues that he is not responsible to Sand Hospitality for its losses.
> (ECF No. 76 at 15–16.) The Sand Hospitality Counterclaim alleges that
> Raab's personal conduct interfered with Sand Hospitality's contract with
> R&W. (ECF No. 48 ¶¶ 8–26.) Raab is personally responsible for damages
> resulting from his own tortious conduct, whether or not he was acting as
> R&W's agent.

(ECF No. 84 at 23.)

Thus, Sand Hospitality recognized that the issue of whether Raab was personally

liable for his actions was before the court. The court concluded that "[n]o reasonable

finder of fact could conclude that Raab was acting 'other than as a member' of R&W when

he allegedly interfered with the purported contract between R&W and Sand Hospitality.

He had no ability to impact, influence, or interfere with the alleged contract except as a

member of R&W." *Raab*, 2019 U.S. Dist. LEXIS 35843, at *81.

*Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736 (7th Cir. 2006), the case on which

Sand Hospitality primarily relies, is distinguishable. There the court said, "As a general

matter, if the moving party does not raise an issue in support of its motion for summary

judgment, the nonmoving party is not required to present evidence on that point, and the

district court should not rely on that ground in its decision." *Id.* at 736 (citing *Edwards v.*

*Honeywell*, 960 F.2d 673, 674 (7th Cir. 1992) ("When a party moves for summary judgment

on ground A, his opponent is not required to respond to ground B--a ground the movant

might have presented but did not."). The plaintiff in *Sublett* argued that the defendant

employer sought summary judgment only on the ground that her claim of race

discrimination was untimely. *Id.* at 735. The district court granted summary judgment on

the ground that the plaintiff failed to produce evidence that the defendant's proffered

reason for the plaintiff's termination was pretextual. On appeal, the plaintiff argued that

this switch in grounds "deprived her of the opportunity to argue the issue of pretext

before the district court." *Id.*

Thus, the court of appeals in *Sublett* was referring to instances where a court

resolves motions for summary judgment based on wholly different grounds than those

raised by the movant—for example, on the merits as opposed to on the statute of

limitations. Here, Raab raised the argument that he was not personally liable for any

tortious interference. The court granted summary judgment on that ground, albeit on a

modestly different iteration of the legal theory raised by Raab as to *why* he was not personally liable.

More importantly, the court of appeals in *Sublett* ultimately rejected the plaintiff's argument, noting that she *did* address the pretext argument in her response to the summary judgment motion. *Sublett*, 463 F.3d at 736. Sand Hospitality likewise responded to Raab's contention that, as a member of R&W, he was not liable for tortious interference.

But the issue of whether the court should reconsider its prior decision proves inconsequential. Even if the court were to reconsider its prior decision and consider the arguments Sand Hospitality says it would have made (ECF No. 105), the court still would grant Raab summary judgment. Sand Hospitality relies on the allegations in its tortious interference counterclaim to demonstrate that evidence exists that Raab was acting outside his scope as a member of R&W when he cancelled the contract with Sand Hospitality. Of course, allegations in a counterclaim are not sufficient to defeat a motion for summary judgment. After Raab pointed out this defect (ECF No. 113 at 2), Sand Hospitality stated in reply that "the Defendants would have easily been able to respond by obtaining affidavits that mirrored the allegations in paragraphs 7 through 13 of Sand Hospitality's Counterclaims." (ECF No. 116 at 4.) Sand Hospitality does not explain why it has not produced any such affidavit or other evidence in conjunction with its motion for reconsideration.

Nonetheless, even pretending the allegations in Sand Hospitality's tortious interference counterclaim were adequately supported by appropriate proposed findings of fact, they would be insufficient to lead a reasonable finder of fact to conclude that Raab was acting other than as a member of R&W when he allegedly interfered with Sand Hospitality's contract. The allegations demonstrate only that Raab intervened to prevent Sand Hospitality from continuing to manage the hotel. If such allegations were sufficient, limited liability would be a nullity; every member of a limited liability company who directs the company to breach or disavow a contract would be liable to sue for tortious interference. Sand Hospitality offers no authority supporting such an abrogation of the principle of limited liability.

Therefore, Sand Hospitality's motion for reconsideration (ECF No. 104) is **denied**.

4. **Plaintiffs' Motion for Reconsideration**

"In their eleventh cause of action plaintiffs allege that 'Wendel Investments, [The Wendel Group Inc.], and/or Michael ha[d] a fiduciary duty to act in the best interests of R&W and Raab.' (ECF No. 17, ¶ 149.)" *Raab*, 2019 U.S. Dist. LEXIS 35843, at *45-46. The defendants moved for summary judgment on this claim. In response the plaintiffs argued that certain defendants owed them fiduciary duties based on the 1998 Operating Agreement, the 1998 Management Agreement, the 2012 Management Agreement, Wis. Stat. § 183.0402, and Wisconsin common law. (ECF No. 87 at 8-15.) In granting the defendants' motion for summary judgment, the court noted that the plaintiffs' contract

13

arguments were based on an apparent conflation of the duty of good faith and fair dealing with a fiduciary duty. The plaintiffs' statutory argument failed because no such claim was included in the plaintiffs' amended complaint. And the common law claim failed because members of a limited liability company do not owe each other fiduciary duties.

Roughly a month after this court's decision the Wisconsin Supreme Court issued its decision in *Marx v. Morris*, 2019 WI 34, 386 Wis. 2d 122, 925 N.W.2d 112. The case presented this relevant question: "Does the Wisconsin Limited Liability Company Law, Wis. Stat. ch. 183, preempt common law claims by one member of an LLC against another member based on the second member's alleged self-dealing?" *Marx*, 2019 WI 34, ¶3. According to the court, "[t]he answer to this question depends on the specific common law claims a member brings and the facts attendant to those claims." *Marx*, 2019 WI 34, ¶47.

In that case, North Star, LLC was a Wisconsin limited liability company whose members were six other limited liability companies. In simplistic terms, the case involved allegations that one member improperly purchased assets from North Star. Two other members sued the member that purchased the assets, alleging a "violation of Wis. Stat. § 183.0402, breach of fiduciary duty, breach of fiduciary duty as corporate counsel, unjust enrichment, and breach of implied covenant of good faith and fair dealing." *Marx*, 2019 WI 34, ¶17.

With respect to the plaintiffs' breach of fiduciary duty claim, the court rejected the defendants' argument that the common law claim had been displaced by Wis. Stat. § 183.0402. *Marx*, 2019 WI 34, ¶50. Finding the defendants' argument undeveloped, the court said it could not determine the full scope of the plaintiffs' claim and, therefore, could not "determine if they include only allegations that come within the ambit of § 183.0402 or something more." *Id.* It concluded, "On remand, the circuit court will decide whether a genuine dispute exists as to any material facts regarding Marx and Murray's common law claims, with the clarification that § 183.0402 does not eliminate them at this time." *Marx*, 2019 WI 34, ¶57.

The court understands the Wisconsin Supreme Court to have concluded that common law breach of fiduciary duty claims are not categorically precluded by Wis. Stat. § 183.0402. However, depending on the facts and nature of any particular claim, the "allegations [may] … come within the ambit of § 183.0402," in which case the plaintiff's claim is under the statute rather than under the common law.

The decision in *Marx* garnered only a bare majority of the court. One of the justices in the majority (and the author of the decision) was Chief Justice Roggensack, whose concurrence in *Gottsacker v. Monnier*, 2005 WI 69, ¶45 n.13, 281 Wis. 2d 361, 697 N.W.2d 436, was the primary basis for this court's statement that, "if presented with the question, the Wisconsin Supreme Court would … conclude that a minority member of a limited liability company does not owe a common law fiduciary duty to a majority member."

15

*Raab*, 2019 U.S. Dist. LEXIS 35843, at *58. In her *Gottsacker* concurrence, Justice Roggensack had said, "The court of appeals improperly engrafted a common law fiduciary duty on Julie and Paul's status as members. Members' obligations are set by statute."

Thus, it appears that Justice Roggensack has changed her opinion. Consequently, the court finds that it, too, must reverse course. To the extent that this court held that one member of a limited liability company can never bring a common law breach of fiduciary duty claim against another member of an LLC, that decision cannot stand in light of *Marx*. However, merely because a common law breach of fiduciary duty claim is not categorically precluded does not mean that the defendants are not entitled to summary judgment in light of the facts presented. Thus, the court turns to the question of whether, in light of *Marx*, summary judgment in favor of the defendants should now be denied.

The plaintiffs' brief in support of his motion to reconsider goes no further than to argue that *Marx* requires a reversal of this court's conclusion that one member of a limited liability company can never bring a common law breach of fiduciary duty claim against another member of a limited liability company. (ECF No. 115.) They do not argue that a genuine issue of material fact exists as to whether the defendants breached a fiduciary duty that they owed to Raab.

The defendants noted in response to the plaintiffs' motion to reconsider that "*Marx* did nothing to elucidate under what circumstances such a duty may exist," and argued

that a minority member should not owe a fiduciary duty to a majority member. (ECF No.

119.) In reply, the plaintiffs argued:

> Significantly, the *Marx* Court did not distinguish between minority or majority members, but rather determined that **members** of a limited liability company—without qualification—could owe common law fiduciary duties to all other members. *See Marx*, 2019 WI 34, ¶ 53. Thus, similar to the *Marx* Defendant, Wendel Investments, The Wendel Group and/or Michael Wendel had a common law fiduciary duty to act in the best interests of R&W and its other member, Raab. (See ECF No. 17 at ¶ 149.)

(ECF No. 120 at 2 (emphasis in original).)

The court notes a number of problems with the plaintiffs' argument. First, as they

note so emphatically, *Marx* addressed fiduciary duties as between the members of a

limited liability company. The defendants identified with respect to the plaintiffs' breach

of fiduciary duty claim—"Wendel Investments, [Wendel Group, Inc.] and/or Michael

[Wendel]" (ECF No. 17, ¶¶ 149, 151-52)—were not members of R&W at the relevant time,

if ever. But the defendants never raised as a ground for relief the plaintiffs' persistent

imprecision as to who the defendants actually were on this claim. And the defendants

seem to concede that, when the plaintiffs refer to Wendel Investments, they really mean

Wendel Enterprises. (ECF No. 107 at 6, fn. 2.) The defendants state, "The Second

Amended Complaint names Wendel Investments, LLC [sic[1]], but it is now undisputed

---

[1] The second amended complaint actually names Wendel Investments, *Inc.* as the original member of R&W. (ECF No. 17, ¶ 2.) And it is "Wendel Investments, Inc." to which the plaintiffs refer when stating "Wendel Investments" in the second amended complaint. (ECF No. 17, ¶ 2.) "Wendel Investments, LLC" is named in the second amended complaint as a "d/b/a" of Michael C. Wendel, but not named as a defendant. *Raab*, 2019 U.S. Dist. LEXIS 35843, at *9.

that Wendel Enterprises was the successor member of R&W. (Document 91 ¶¶ 1, 2; Document 103 at 2). Wendel Enterprises is a proper defendant in this action and remains a defendant in some of Plaintiffs' claims. (Document 103 at 6, 9)." Second, although the court in *Marx* did not distinguish between minority and majority members, its silence should not be understood as suggesting that fact is irrelevant. To the contrary, it left it to lower courts to sort out whether the facts of any particular case supported a breach of fiduciary duty claim. Because whether a party stands in a position of "dependence and inequality" as to another is relevant in assessing whether a fiduciary relationship exists, *Marx*, 2019 WI 34, ¶103 (Kelly, J., dissenting) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Boeck*, 127 Wis. 2d 127, 136, 377 N.W.2d 605 (1985)), a party's status as a minority member obviously would be a relevant fact. Moreover, the analogy to corporations on this question is apt, and it is well-established that a minority shareholder does not owe a fiduciary duty to a majority shareholder. *Estate of Sheppard v. Specht*, 2012 WI App 124, ¶7, 344 Wis. 2d 696, 824 N.W.2d 907. Therefore, the court finds that, even following *Marx*, a majority member of a limited liability company does not have a common law breach of fiduciary duty claim against a minority member.

Third, even reconsidering in light of *Marx* the arguments the plaintiffs offered in their response to the defendants' motion for summary judgment, the defendants would still be entitled to summary judgment. The plaintiffs did not offer any specific argument as to how any particular conduct violated the common law fiduciary duties that may exist

between members of a limited liability company. Even now, in arguing that the court

should reconsider its decision, the plaintiffs do not point to any specific arguments that

they presented which, in light of *Marx*, warrant denying the defendants' summary

judgment motion. Therefore, although the court recognizes that *Marx* upset the court's

conclusion that limited liability company members never owe each other common law

fiduciary duties, the defendants are still entitled to summary judgment as to the plaintiffs'

claim.

**IT IS THEREFORE ORDERED** that the defendants' motion to file a second

amended answer (ECF No. 106) is **granted**.

**IT IS FURTHER ORDERED** that the defendants' motion for reconsideration (ECF

No. 104) is **denied**.

**IT IS FURTHER ORDERED** that the plaintiffs' motion for reconsideration (ECF

No. 114) is **denied**.

Dated at Milwaukee, Wisconsin this 10th day of July, 2019.

WILLIAM E. DUFFIN
U.S. Magistrate Judge